04-109
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMEREX GROUP, INC. and ) | CASE NUMBER: |
| AMEREX USA INC, ) | 07 CV 3259 (HB) |
| ) | |
| ) | **AMENDED** |
| Plaintiffs, ) | **COMPLAINT** |
| ) | |
| - against - ) | |
| ) | |
| LEXINGTON INSURANCE COMPANY AND ) | JURY TRIAL DEMANDED |
| WESTCHESTER SURPLUS LINES ) | |
| INSURANCE COMPANY, ) | MAY 1 8 2007 |
| ) | |
| Defendants. ) | U.S.D.C. S.D. N.Y. |
| | CASHIERS |

Plaintiffs AMEREX GROUP, INC., and AMEREX USA INC, by its attorneys, WEG

and MYERS, P.C., as for its Complaint herein alleges as follows:

### THE PARTIES

1.      At all times hereinafter mentioned, Plaintiff AMEREX GROUP, INC.,

("AMEREX GROUP") was and is a domestic corporation duly organized and existing under

and by virtue of the laws of the State of New York with a principal place of business located in

the State and County of New York, having its principal place of business in New York, New

York.

2.      At all times hereinafter mentioned, Plaintiff AMEREX USA INC ("AMEREX

USA") was a domestic corporation duly organized and existing under and by virtue of the laws

of the State of New York with a principal place of business located in the State and County of

New York, having its principal place of business in New York, New York.

3.      Pursuant to a Certificate of Amendment filed on December 17, 1999 AMEREX

USA INC changed its name to AMEREX GROUP, INC.

4.      At all times hereinafter mentioned, AMEREX USA was the named insured on an excess property policy of insurance issued by Defendant LEXINGTON INSURANCE COMPANY in connection with AMEREX USA's personal business property, business income and contents situated in Avenel, New Jersey and Mercer Island, Washington.

5.      At all times hereinafter mentioned, AMEREX GROUP was the named insured on an excess property policy of insurance issued by Defendant WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("WESTCHESTER") in connection with the AMEREX GROUP personal business property, business income and contents situated in Avenel, New Jersey and Mercer Island, Washington.

6.      The Plaintiffs AMEREX GROUP and AMEREX USA are collectively referred to herein as "AMEREX".

7.      At all times hereinafter mentioned Defendant LEXINGTON INSURANCE COMPANY ("LEXINGTON") was and is a foreign corporation organized under and by virtue of laws of the State of Delaware with its principal place of business in Boston, Massachusetts.

8.      At all times hereinafter mentioned Defendant LEXINGTON was and is licensed as an insurer in the State of New York, duly authorized by the Superintendent of Insurance of the State of New York to issue policies of insurance in this State.

9.      At all times hereinafter mentioned, Defendant WESTCHESTER was and is a foreign corporation organized under and by virtue of the laws of State of Georgia with its principal place of business in Atlanta, Georgia.

2

10.     At all times hereinafter mentioned Defendant WESTCHESTER was and is

licensed as an insurer in the State of New York, duly authorized by the Superintendent of

Insurance of the State of New York to issue policies of insurance in this State.

## JURISDICTION

11.     This action is brought for claims for breach of contract. The Court has

jurisdiction over this action pursuant to 28 U.S.C. §1332, as the parties are diverse in citizenship

and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## VENUE

12.     Venue is proper in this district, pursuant to U.S.C. §1391(a), because Plaintiff

Amerex maintains a place of business in this District and a substantial part of the events and

omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

### GARMENT BUSINESS OF AMEREX

13.     AMEREX is a garment distributor of mens', ladies', and childrens' outwear,

distributing garments in the United States manufactured in Italy, Asia and Europe.

14.     The merchandise shipped to Plaintiffs from manufacturers arrive on either

hangers or ropes. These garments are then placed on Plaintiffs' rack system and are organized

by style color and size. At the time that the merchandise is ready to be shipped, the garments on

hangers are removed from different locations on the rack system and are boxed.

15.     Heretofore and prior to August 3, 2001, merchandise in AMEREX's

Avenel warehouse was stored on racks. This merchandise constituted orders that had been

placed by customers. Once an order for merchandise was received from a customer a start and

3

end date for shipment would be established in order to ensure that the merchandise would arrive within the proper season.

## RACK COLLAPSE

16.    On August 3, 2001, a significant portion of Plaintiffs' racks collapsed. The collapsed racks were approximately 28 feet in height, 30-40 feet long and contained approximately 46 layers. The rack collapse activated the warehouse's sprinkler system which resulted in flooding of the warehouse causing damage to garments scheduled to be shipped to customers.

17.    The activated sprinkler system also caused an electrical power outage in the Avenel warehouse, which consequently rendered the computer systems at the Avenel and Mercer Island warehouses inoperable for approximately one to three weeks, crippling the operations of Plaintiffs business until after the computer systems were up and running. When the computer system became inoperable it was virtually impossible to locate and identify the merchandise to be shipped.

18.    Approximately sixty percent (60%) of the Plaintiff's sales contracts are based upon firm orders before the products are shipped to the Plaintiffs' warehouses. Prior to shipment all merchandise has to meet specifications of size, color and category.

19.    The entire rack system was damaged and had to be removed before it could be replaced by a new racking system. This resulted in, among other things, the inability of AMEREX to timely ship its goods to its customers, resulting in the incurring of late delivery charges and penalties from its customers; cancellation of orders from customers because of the late delivery of goods; cancellation of orders from customers due to goods being damaged; loss

4

of reorders of goods; profit reductions due to having to mark down goods in the warehouse in order to sell them.

## INSURANCE POLICIES

20.    Heretofore and prior to on or about August 3, 2001, Fireman's Fund Insurance Company issued to AMEREX  GROUP a certain policy of insurance bearing the policy numbered OC-95272000 (hereinafter referred to as the "Fireman's Policy"), with limits of liability in the amount of $2,500,000.00 with effective dates of coverage from June 15, 2001 to June 15, 2002 wherein and whereby Fireman's fund insured AMEREX GROUP for building, business personal property, business income, and extra expense located in Avenel, New Jersey against all risks of loss.

21.    Heretofore and prior to on or about August 3, 2001, LEXINGTON, for good and valuable consideration, made and issued to AMEREX USA an excess commercial property policy of insurance bearing the policy numbered 8525713 ("Lexington Policy"), with limits of liability of $5,000,000.00 in excess of the $2,500,000.00 policy written by Fireman's Fund, with effective dates June 15, 2001 to June 15, 2002, wherein and whereby LEXINGTON insured AMEREX GROUP for buildings, business personal property, contents, business income and extra expense against all risks of loss, including rack collapse.

22.    Heretofore and prior to on or about August 3, 2001, WESTCHESTER, for good and valuable consideration, made and issued to AMEREX GROUP an excess commercial property policy of insurance bearing the policy numbered WXA-662980-0/000 ("Westchester Policy"), with limits of $5,000,000.00 in excess of the $2,500,000.00 policy written by Fireman's Fund, with effective dates June 15, 2001 to June 15, 2002, wherein and whereby

5

WESTCHESTER did insure AMEREX GROUP buildings, business personal property,
contents, business income and extra expense against all risks of loss, including rack collapse.

23.    Plaintiffs timely submitted a claim to Fireman's Fund as well as Defendants
LEXINGTON and WESTCHESTER for property damage and business income loss in the
amount of $7,851,000.00 and an extra expense claim in the amount of $961,000.00, for a total
loss of $8,812,000.00.

24.    After investigation of the claim, Fireman's Fund paid its entire policy limits of
$2,500,000.00.  However, to date neither LEXINGTON nor WESTCHESTER has paid
AMEREX any money in connection with its claim.

## AS AND FOR A FIRST CLAIM AGAINST LEXINGTON

25.             Plaintiffs repeat, reallege and reiterate each and every contained in
paragraphs "1" through "24", inclusively, with the same force and effect as though more fully
set forth herein at length.

26.    On or about August 3, 2001 while the LEXINGTON policy was in full force and
effect AMEREX sustained property, business income and extra expense losses as a result of the
rack collapse as set forth above.

27.    The damage suffered by AMEREX totaled $8,812,000.00.

28.    In connection with the AMEREX claim, Fireman's Fund tendered the limits of
its property policy totaling $2,500,000.00.

29.    Although AMEREX timely submitted a claim to LEXINGTON under its policy
of insurance LEXINGTON has failed to pay any amount of this loss, although duly demanded.

30.    Defendant LEXINGTON's failure to indemnify AMEREX for its loss constitutes
a breach of contract.

6

31.    As a result of the breach of contract by Defendant LEXINGTON AMEREX has suffered unreimbursed damages in an amount exceeding the LEXINGTON policy limit of $5 Million Dollars.

## AS AND FOR A SECOND CLAIM AGAINST WESTCHESTER

32.    Plaintiffs repeat, reallege and reiterate each and every contained in paragraphs "1" through "31", inclusively, with the same force and effect as though more fully set forth herein at length.

33.    On or about August 3, 2001 while the WESTCHESTER policy was in full force and effect AMEREX sustained property, business income and extra expense losses as a result of the rack collapse as set forth above.

34.    The damage suffered by AMEREX totaled $8,812,000.00.

35.    In connection with the AMEREX claim, Fireman's Fund tendered the limits of its property policy totaling $2,500,000.00.

36.    Although AMEREX timely submitted a claim to WESTCHESTER under it's policy of insurance WESTCHESTER has failed to pay any amount of this loss, although duly demanded.

37.    Defendant WESTCHESTER's failure to indemnify AMEREX for its loss constitutes a breach of contract.

38.    As a result of the breach of contract by Defendant WESTCHESTER AMEREX has suffered unreimbursed damages in an amount exceeding the WESTCHESTER policy limit of $5 Million.

7

## AS AND FOR A THIRD CLAIM AGAINST LEXINGTON
Reformation

39.     Plaintiffs repeat, reallege and reiterate each and every contained in paragraphs "1" through "38", inclusively, with the same force and effect as though more fully set forth herein at length.

40.     At all relevant times it was the intention of AMEREX GROUP and LEXINGTON to insure the buildings, business personal property, business income, contents and extra expense of AMEREX GROUP in excess of the property policy of insurance issued by Fireman's Fund at its locations in Avenel, New Jersey and Mercer Island, Washington against all risk of loss.

41.     Pursuant to a Certificate of Amendment filed on December 17, 1999 AMEREX USA INC changed its name to AMEREX GROUP, INC.

42.     However, AMEREX USA was inadvertently listed as the named insured listed on the LEXINGTON policy.

43.     Notwithstanding same, AMEREX GROUP has the insurable interest in the property and contents located in the property and contents in Avenel, New Jersey.

44.     In the event the LEXINGTON Policy of insurance does not correctly identify AMEREX GROUP as the named insured, this failure was due to a mutual mistake on the part of both parties.

45.     Accordingly, Plaintiff AMEREX GROUP seeks reformation of the LEXINGTON policy of insurance so as to name AMEREX GROUP as the named insured under the policy.

WHEREFORE, Plaintiffs demand judgment in its favor and against Defendants as follows:

8

a.    On the First Claim against Defendant LEXINGTON for unreimbursed damages in the amount of $5 Million;

b.    On the Second Claim against Defendant LEXINGTON for unreimbursed damages in the amount of $5 Million;

c.    On the Third Claim for reformation of the LEXINGTON policy of insurance so as to name AMEREX GROUP as the named insured under said policy; and

d.    Together with prejudgment interest on any damage award from on or about August 3, 2001, plus the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       May 18, 2007

                                    WEG AND MYERS, P.C.

                    By:    _____
                           Dennis D'Antonio (DD 0973)
                           Janese N. Thompson (JT 7714)
                           Attorneys for Plaintiff
                           Amerex Group, Inc.
                           52 Duane Street
                           New York, New York 10007
                           (212) 227-4210

9

Docket No. 07 CV 3259 (HB)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

AMEREX GROUP, INC. and AMEREX USA INC.,

Plaintiffs

v.

LEXINGTON INSURANCE COMPANY AND
WESTCHESTER SURPLUS LINES INSURANCE
COMPANY,

Defendants

AMENDED SUMMONS AND AMENDED COMPLAINT

*Wegg and Myers, P.C.*
Attorney for Plaintiff

Office and Post office Address, Telephone
Federal plaza
52 Duane Street
NEW YORK, NEW YORK 10007
(212) 227-4210