## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

GENNET, KALLMANN, ANTIN & ROBINSON, P.C.
45 Broadway
New York, New York 10006
(212) 406-1919

-----------------------------------------------------------------X

AMEREX GROUP, INC. and                        07 cv 3259 (HB)
AMEREX USA, INC.,

               Plaintiffs,            **DEFENDANTS'**
                                              **MOTION FOR PARTIAL**
       -against-               **SUMMARY JUDGMENT**
                                              **COMPELLING APPRAISAL**

LEXINGTON INSURANCE COMPANY and
WESTCHESTER SURPLUS LINES                     **ORAL ARGUMENT**
INSURANCE COMPANY,                            **REQUESTED**

             Defendants.

-----------------------------------------------------------------X

     PLEASE TAKE NOTICE that upon the annexed Brief in Support of Motion, Local Civil

Rule 56.1 Statement of Material Facts, Declaration of Mark L. Antin, Esq., the exhibits annexed

thereto, and the pleadings heretofore had herein, defendants will move this Court at the U.S.

Courthouse, 500 Pearl Street, New York, New York on the 3rd day of August, 2007, and at such

time thereafter as the Court may grant for oral argument, for an order: granting defendant partial

summary judgment, pursuant to Fed. R. Civ. P. 56(b), compelling enforcement of the appraisal

clauses of the insurance policies at issue, which shall resolve the dispute between the parties as to

the amount of the plaintiffs' loss, if any, subject to remaining coverage issues.

PLEASE TAKE FURTHER NOTICE, that opposition to the motion is due, pursuant to agreement between the parties, by July 27, 2007.

Dated: New York, New York
July 6, 2007

<div style="margin-left: 40%;">

Gennet, Kallmann, Antin & Robinson, P.C.
Attorneys for Defendants

By: _____
    Mark L. Antin (MA0427)
    Michael S. Leavy (ML6150)
    Litman Suite
    45 Broadway Atrium
    New York, New York 10006
    (212) 406-1919

</div>

To:    Janese Thompson, Esq.
       Weg and Myers, P.C.
       Attorneys for Plaintiff
       52 Duane Street
       New York, New York 10007
       (212) 227-4210

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

AMEREX GROUP, INC. and                          07 cv 3259 (HB)
AMEREX USA, INC.,

               Plaintiffs,            **DEFENDANTS' STATEMENT**
                                                **OF UNDISPUTED**
          -against-                 **MATERIAL FACTS**

LEXINGTON INSURANCE COMPANY and
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

               Defendants.

-----------------------------------------------------------------X

     As and for their Statement of Undisputed Material Facts, defendants Lexington Insurance

Company and Westchester Surplus Lines Insurance Company state as follows pursuant to Local

Civil Rule 56.1:

     1.     This suit concerns claims by plaintiffs (collectively "Amerex") of physical loss and

business interruption arising from a rack collapse at its New Jersey warehouse on August 3, 2001.

Complaint at 14-16.

     2.     Amerex's primary insurance policy in effect on August 3, 2001 was underwritten by

Fireman's Fund Insurance Company ("FFIC"), with policy limits of $2,500,000. Complaint at 20.

     3.     A true and correct copy of the FFIC policy is annexed hereto as Exhibit "1."

     4.     The Lexington Insurance Company ("LIC") was an excess insurer with policy limits

of $5,000,000 in excess of $2,500,000 on August 3, 2001. Complaint at 21, LIC excess policy,

Exhibit "2."

5.      Westchester Surplus Lines Insurance Company ("WSLIC") was also an excess insurer with policy limits of $5,000,000 in excess of $2,500,000 on August 3, 2001.  Complaint at 22, WSLIC excess policy, Exhibit "3."

6.      A claim was first submitted to LIC and WSLIC on June 12, 2003.  Proof of Loss, Exhibit "4."

7.      The total amount of loss claimed by Amerex is $8,812,000.  Complaint at 27.

8.      Fireman's Fund Insurance Company paid Amerex $2,500,000 for its claim. Complaint at 24.

9.      Amerex's claim against Lexington Insurance Company and Westchester Surplus Lines Insurance Company is for $6,312,000.  Complaint at 27, 34.

10.      Amerex's claim was initially denied by LIC and WSLIC on February 21, 2006. February 21, 2006 letter, Exhibit "8."

11.      Following the initial denial of the claim, Amerex, LIC and WSLIC met with each other on a number of occasions in the ensuing 14 months to attempt to resolve the claim.  Antin Declaration at 15-19.

12.      The parties submitted the claim to a mediator, John Adams Kerns, Jr., Esq. of Hartly, Delaware. Antin Declaration at 17.

13.      In connection with the mediation, in April 2007, LIC and WSLIC made an offer to Amerex to resolve the claim.  Antin Declaration at 19.

14.      That offer was substantial and was made in good faith. Antin Declaration at 19.

15.     While the offer was pending, Amerex commenced this suit without any response to the offer being communicated to defendants.  Antin Declaration at 20.

16.     By letter dated June 4, 2007, LIC and WSLIC demanded appraisal pursuant to the terms and conditions of the pertinent insurance policies.  Exhibit "9."

17.     In their Answer, LIC and WSLIC asserted their right to appraisal.  Answer of defendants, Exhibit "10," at 47.

18.     By letter dated June 21, 2007, LIC and WSLIC appointed Peter Fogarty, CPA, of Hagen, Streiff, Newton & Oshiro, P.C., as their appraiser.  June 21, 2007 letter, Exhibit "11."

19.     Amerex has since refused to participate in the appraisal process.  June 22, 2007 letter, Exhibit "10."

Dated:  New York, New York
        July 6, 2007

                                   By:  _____
                                        Michael S. Leavy (ML6150)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

AMEREX GROUP, INC. and                              07 cv 3259 (HB)
AMEREX USA, INC.,

                Plaintiffs,

        -against-                              **DECLARATION OF**
                                    **MARK L. ANTIN**
LEXINGTON INSURANCE COMPANY and                     **IN SUPPORT OF MOTION**
WESTCHESTER SURPLUS LINES                           **FOR PARTIAL**
INSURANCE COMPANY,                                  **SUMMARY JUDGMENT**

                Defendants.

---------------------------------------------------------------X

      Mark L. Antin states under penalty of perjury that the following is true and correct:

      1.     I am a member of the law firm Gennet, Kallmann, Antin & Robinson, P.C.,

attorneys in the within action for Lexington Insurance Company and Westchester Surplus Lines

Insurance Company (the "Excess Insurers"). I make this declaration based on my personal

knowledge and a review of the file maintained by my office.

      2.     According to its Amended Complaint, Amerex Group, Inc. and Amerex USA, Inc.

(collectively "Amerex"), engaged in business as a garment distributor with warehouse operations

at Avenel, NJ and Mercer Island, Washington.

      3.     The Excess Insurers jointly provided insurance coverage excess to Amerex's

primary insurance policy with Fireman's Fund Insurance Company (Exhibit "1"), which insured

Amerex up to $2,500,000, all of which insurance was effective on August 3, 2001. The

Lexington Insurance Company excess policy (Exhibit "2") and the Westchester Surplus Lines

Insurance Company excess policy (Exhibit "3") are both excess to the Fireman's Fund policy.

4.      Amerex submitted a claim to the Excess Insurers on or about June 12, 2003 for an alleged loss of $8,812,000 arising from an August 3, 2001 rack collapse in its warehouse in New Jersey by submission of a sworn statement in proof of loss submitted that day (Exhibit "4").

5.      While the loss occurred in August 2001, Amerex refused to deal directly with Excess Insurers until June 2003, when the primary insurer on the risk, Fireman's Fund Insurance Company, paid its claim for the full amount of the $2,500,000 primary policy.

6.      At that time, the Excess Insurers commenced an investigation into the facts, circumstances and amount of the claimed loss.

7.      As permitted by the terms of the insurance contracts, the insurers demanded examinations under oath of Amerex representatives, and preparatory thereto, they demanded the production of a substantial number of financial and other records, many of which had not been requested or obtained by the primary insurer (Exhibit "5").

8.      Amerex did not produce the documents requested by the insurers until on or about July 26, 2004 (Exhibit "6").

9.      The Notice of Examination under Oath originally called for testimony to be provided on March 11, 2004.  However, because production of the documents was necessary before meaningful testimony could proceed, the examinations were adjourned.  *See*, for example, letter of the undersigned dated August 19, 2004 (Exhibit "7").

10.     Examinations under oath of representatives of Amerex commenced on December 6, 2004, and they continued.  Additional document requests arose from the testimony, and additional time was needed for Amerex to search for and obtain the documents. Continuation of examinations under oath was held in abeyance until compliance with the additional document

2

requests. Some of the documents were provided, and some were not. It was learned that a number of documents critical to the Amerex claim were destroyed or not maintained by Amerex. As a result, the insurers were limited in their investigation to the documents Amerex decided to maintain.

11.    During the course of their investigation, the insurers requested information as to the whereabouts of certain former Amerex employees who are expected to have knowledge regarding the reasons for the alleged loss of sales experienced by Amerex during the last quarter of 2001. Amerex refused to provide this information. As a result, the insurers were limited to the information Amerex principals or cooperative former employees were willing to provide.

12.    Examinations under oath were completed on October 25, 2005.

13.    The extensive documentation and testimony was then analyzed by the insurers' counsel and the forensic accountant. The claim was reviewed, certain decisions were made, and it was ultimately determined that the demonstrated loss of income experienced by Amerex during the loss period it identified was less than the coverage limits of the primary policy. Amerex could not establish through its business documents that the losses it experienced were attributable to the rack collapse on August 3, 2001.

14.    A denial letter dated February 21, 2006 (Exhibit "7") was written to advise Amerex of the decisions made with respect to its claim. As indicated therein, the denial offered Amerex the opportunity to listen to a presentation by the insurers' consultants, critique their conclusions and provide different or additional analyses for consideration of the insurers.  In the February 21, 2006 letter, the following appears:

>    Based upon the documentation, testimony and information which the

3

excess insurers have been able to obtain through their investigation to this point, they are unable to conclude that Amerex's covered financial losses due to the August 3, 2001 rack collapse, exceed the limit of Amerex's primary insurance coverage. Accordingly, Amerex's claim for benefits under the excess insurers' policies is hereby respectfully declined. . . .

The nature of the claims submitted and the analysis of it by the excess insurers' consultants does not lend itself to a more detailed discussion of every basis for the conclusion that the insured has failed to demonstrate covered losses in excess of primary limits. For these and other reasons, the

Excess insurers seek the opportunity to meet with the insured and its representatives to explain their determination in more detail. This would also afford the insured an opportunity to respond to the claim analysis, and, should it so choose, to provide or highlight any information which it claims has not been properly considered or not given sufficient weight. If you are interested in such an offer, please contact me to arrange a meeting. We will take no further action with respect to the claim, pending a reasonable time to explore a meeting to discuss the claim and the excess insurers' findings with respect thereto.

15.    The offer contained in the denial letters was accepted by Amerex. As a result, a meeting was held on April 19, 2006, attended by principals of Amerex, a claims adjuster for the insurers, forensic accountants on both sides, and counsel. Information, views about the claim, its factual basis, and supporting documentation and claim calculation methodology were discussed. Additional discussion and negotiations ensued.

16.    Inability to bridge the substantial gap between the Amerex position and that of the insurers led counsel to suggest that an independent mediator might be able to assist the parties in better understanding their differences and narrowing the amount in dispute so that the parties might be able to reach an agreement regarding the damages claimed. Additional discussion and negotiations ensued.

17.    The parties agreed to appoint John Kerns as their mediator. There were then

4

meetings between Mr. Kerns and representatives of Amerex, followed by a meeting with representatives of the insurers. Then, Mr. Kerns met with the forensic accountants, without anyone else present. This meeting occurred on or about November 1, 2006. Thereafter, the mediator conferred with the accountants and the parties for an extended period.

18.    In or about April, 2007, I conferred with the mediator in an effort to determine whether sufficient progress had been made to enable the parties to reach an agreement as to the amount of the loss.

19.    During the course of these discussions, I made a substantial, good faith and final offer to the mediator which he agreed to present to counsel for Amerex. I assume he did so, and I awaited a response, either from the mediator or directly from counsel for Amerex.

20.    A "response" of a different nature than I expected was received when our clients reported being served with the complaint in this matter in May 2007. At that point, and not before, it became clear that Amerex had no further interest in trying to resolve the dispute.

21.    Promptly upon receiving notice of the instant suit, and by letter dated June 4, 2007 (Exhibit "9"), Excess Insurers demanded appraisal pursuant to the terms and conditions of the pertinent insurance policies.

22.    In their Answer (Exhibit "10") Excess Insurers asserted their right to appraisal.

23.    By letter dated June 21, 2007 (Exhibit "11"), Excess Insurers appointed Peter Fogarty, CPA, of Hagen, Streiff, Newton & Oshiro, P.C., as their appraiser.

24.    By letter dated June 22, 2007 (Exhibit "12"), Amerex, through counsel, indicated that it refused to participate in the appraisal process.

25.    Based on the undiputed facts, the provision of the insurance contracts and the law applicable hereto, Excess Insurers make the within motion for an order compelling Amerex to appraise the dispute as to the amount of loss.

Dated: New York, New York
      July 6, 2007

By: _____
          MARK L. ANTIN

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

AMEREX GROUP, INC. and                                07 cv 3259 (HB)
AMEREX USA, INC.,

                              Plaintiffs,

                    -against-

LEXINGTON INSURANCE COMPANY and
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

                              Defendants.

------------------------------------------------------------------X

## BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR
## PARTIAL SUMMARY JUDGMENT COMPELLING APPRAISAL

<div style="text-align: center;">

Gennet, Kallmann, Antin & Robinson, P.C.
Attorneys for Defendants
45 Broadway Atrium
Litman Suite
New York, New York 10006
(212) 406-1919

</div>

Mark L. Antin (MA0427)
Michael S. Leavy (ML6150)
On the Brief

## PRELIMINARY STATEMENT

This brief is respectfully submitted on behalf of the defendants in further support of their motion pursuant to Fed. R. Civ. P. 56(b) granting defendant partial summary judgment specifically enforcing the appraisal clause of the insurance policy.

The facts upon which the motion is based are set forth in the accompanying Statement of Undisputed Material Facts, and the accompanying Declaration of Mark L. Antin dated July 6, 2007, and will not be repeated herein except for purposes of clarification or amplification.

## ARGUMENT

## DEFENDANTS ARE ENTITLED TO COMPEL APPRAISAL

**A.**   **Appraisal Is Appropriate to Determine Valuation Issues,**
   **Leaving Coverage And Other Issues For This Plenary Action**

According to their Amended Complaint, plaintiffs (collectively "Amerex") commenced this breach of contract action to recover damages in the amount of $6,312,000.00 from its excess insurers Lexington Insurance Company ("LIC") and Westchester Surplus Lines Insurance Company ("WSLIC") as a result of property damage allegedly sustained on August 3, 2001.

Defendants, in their Answer, assert as their Second Affirmative Defense that

> Defendants have duly demanded appraisal proceedings to determine the amount of loss, which would resolve all issues in controversy, and bar this suit.

The applicable policies of insurance contain clauses providing for the determination, by appraisal, of any dispute concerning the amount of damages.  The 165 lines of the standard fire

2

insurance policy, which are codified in New York at Insurance Law 3404(e) and in New Jersey at

NJSA 17:36-5.20, states:

> Appraisal.    In case the insured and this Company shall fail to agree as
> to the actual cash value or the amount of loss, then, on the written demand
> of either, each shall select a competent and disinterested appraiser and
> notify the other of the appraiser selected within twenty days of such
> demand.  The appraisers shall first select a competent and disinterested
> umpire; and failing for fifteen days to agree upon such umpire, then, on
> request of the insured or this Company, such umpire shall be selected by a
> judge of a court of record in the state in which the property covered is
> located.  The appraisers shall then appraise the loss, stating separately
> actual cash value and loss to each item; and, failing to agree, shall submit
> their differences, only, to the umpire.  An award in writing, so itemized, by
> any two when filed with this company shall determine the amount of
> actual cash value and loss.  Each appraiser shall be paid by the party
> selecting him and the expenses of appraisal and umpire shall be paid by
> the parties equally.

This Court should order the appraisal proceeding to be conducted.  Where there are issues

concerning the value of property and the amount of a loss, and where one of the parties has duly

demanded appraisal pursuant to applicable policy provisions, an appraisal proceeding under the

policy is the appropriate and exclusive means to resolve that dispute.  Even where, as here, other

issues remain pertaining to coverage, the appraisal proceeding is to go forward, reserving those

other remaining issues for the litigation.

New York's Court of Appeals has had several occasions to discuss the propriety and

extent of appraisal provisions.  In *Buchholz v. United States Fire Ins. Co.*, 293 N.Y. 82, 85, 56

N.E.2d 43 (1944), the insured suffered a fire loss to its inventory.  The policy of insurance

contained a rider that the adjustment of inventory losses for stock sold but not delivered was to

be on a selling price basis.  Nonetheless, the insurer demanded appraisal.

3

> On the record, the plaintiff seems to be right in his contention that the
> appraisal agreement did not displace the provision we have quoted from
> the rider. But it did not follow that the loss was to be paid without
> performance by the insured of the appraisal agreement. There was a
> dispute as to whether the property had been sold by the insured.
> Consequently **the defendant insurer was justified in insisting that the
> value of the property be fixed by the appraisers prior to litigation of
> the issues,** including the dispute as to whether there had been a sale.
> [emphasis added]

In *Matter of Delmar Box Co. (Aetna Ins. Co.)*, 309 N.Y.60, 63, 127 N.E.2d 808 (1955),

the Court considered the case of a fire loss occurring to the property of the insured. The insured

plaintiff demanded appraisal pursuant to an identical provision as in the case at bar, and the

insurers refused. The insurers asserted coverage defenses of material misrepresentation, false

swearing, and lack of insurable interest. In analyzing whether the insured could compel appraisal

under the then-extant provision for compelling arbitration, a Civil Practice Act provision which

was the predecessor to CPLR 7601, the Court noted that:

> A number of basic distinctions have long prevailed between an
> appraisement under the standard fire policy and a statutory arbitration. An
> agreement for arbitration ordinarily encompasses the disposition of the
> entire controversy between the parties, upon which judgment may be
> entered after judicial confirmation of the arbitration award (Civ. Prac. Act
> § 1464), while **the agreement for appraisal extends merely to the
> resolution of the specific issues of actual cash value and the amount of
> loss, all other issues being reserved for determination in a plenary
> action.** [emphasis added]

Other Courts examining this issue have agreed that, notwithstanding such issues as might

exist in a litigation, those issues amenable to appraisal must be so resolved, reserving the

remaining disputes for litigation. In *Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co.*, 279

F.Supp.2d 235, 241-242 (S.D.N.Y. 2003), this Court considered the issue of whether an appraisal

agreement could be enforced, and determined that it could.

4

> Turning to St. Paul's motion to have the Policy-provided appraisers
> (as opposed to the Court or a jury) determine the duration (in years
> and months) of the Restoration Period, the Court agrees with St.
> Paul that such calculation falls within the appraisers' purview.
> Pursuant to the parties' agreement, and as a general matter under
> New York law, **questions concerning valuation of the loss, as
> opposed to coverage under the Policy, must be submitted to
> appraisal.** [citations omitted]  Although defining what was meant
> by the Restoration Period was a coverage issue, *see Duane Reade,
> Inc. v. St. Paul Fire & Marine Ins. Co.,* 261 F.Supp.2d 293
> (S.D.N.Y.2003), now that that has been accomplished, **the
> estimation of that period in order to help value the loss is a
> matter of valuation, not coverage.  Indeed, it is part of the kind
> of appraising that real estate, business, and insurance
> appraisers regularly undertake.** [emphasis added]

*See, also, Clark v. Kraftco Corp.*, 323 F.Supp. 359, 361 (S.D.N.Y. 1971) ("the agreement for

appraisal extends merely to the resolution of the specific issues of actual cash value and the

amount of loss, all other issues being reserved for a plenary action."); *Matter of Penn. Cent.*

*Corp. (Consolidated Rail Corp.)*, 56 N.Y.2d 120, 451 N.Y.S.2d 62 (1982) ("appraisal resolves

only a valuation question leaving all other issues for resolution at a plenary trial").

The law of New Jersey is no different.  In *Hala Cleaners, Inc. v. Sussex Mut. Ins. Co.*,

115 N.J.Super. 11, 277 A.2d 897 (N.J.Super.Ch. 1971), liability under the policy was disputed by

the insurer, yet the Court compelled it to name an appraiser and participate in the process, solely

to determine the amount of loss, leaving the coverage issues to be resolved in the litigation.  The

Court likewise compelled the insurer to participate in appraisal in *Drescher v. Excelsior*

*Insurance Co. of New York*, 188 F.Supp. 158, 159 (D.C.N.J. 1960) stating that

> The very purpose of the appraisal clause is to avoid delay and confusion at
> trial on the issue as to the amount of damage, as distinguished from the
> issue of whether defendants are liable for such damage.

*See, also, Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.*, 77 N.J. 1, 389 A.2d 439 (1978) ("It is not in the public interest to encourage litigation over procedures which were designed to resolve disputes without litigation.")

Accordingly, it is respectfully submitted that the Court should compel an appraisal, limited to the valuation and amount of loss, in this matter.

**B.    Appraisal Has Not Been Waived**

Amerex has asserted (Exhibit "10" to Antin Decl.) that because appraisal was not demanded until they commenced suit, it has been waived. Defendants could not have waived their right to appraisal when, they thought, efforts to resolve the damages dispute were ongoing. As it turned out, these efforts were not ongoing, but only Amerex knew it.

The issue of appraisal has not, as plaintiff has asserted, been waived. In a case involving the coverage litigation between the World Trade Center leaseholder and its property insurers arising from the September 11, 2001 losses, *SR International Bus. Ins. Co. Ltd., v. World Trade Center Properties LLC*, 2002 WL 1905968 (S.D.N.Y.), Judge Martin declined to follow this precise argument, holding:

> The Silverstein Parties' contention that Allianz has waited too long to enforce its rights is based on the argument that one can waive rights to arbitration or appraisal by participating in litigation without asserting those rights. *See Sherill v. Grayco Builders, Inc.*, 64 N.Y.2d 261, 273-74 (1985). Here, however, Allianz reserved its right to demand appraisal in its Reply to the Silverstein Parties' Counterclaim, and spent a substantial portion of the time between the filing of that pleading and the filing of its present motion attempting to negotiate an agreement for an appraisal process with the various insurers and the insured. Thus, by its conduct, Allianz did not waive its appraisal rights.

6

Just as in the SR case, defendants asserted in their Answer their entitlement to appraisal.

Other federal and state courts have considered, and rejected, this argument as well. In *McCord v. Horace Mann Ins. Co.*, 390 F.3d 138, 143-144 (1st Cir. 2004) (Massachusetts law), the Court found that even where the insurer denied any liability for the loss and rejected the insured's proof of loss, where it asserted the appraisal provision as an affirmative defense in its answer, it had not waived the provision. In *Terra Industries, Inc. v. Commonwealth Ins. Co. of America*, 981 F.Supp. 581 (N.D.Iowa 1997), the insurer's right to appraisal, so long as the demand is made within a "reasonable" time, was not pre-empted merely by the filing of a suit, and, moreover, since the discussions among the parties continued up until the time the suit was filed, the delay was reasonable. *See, also, Society of St. Vincent De Paul in Archdiocese of Detroit v. Mt. Hawley Ins. Co.*, 49 F.Supp.2d 1011, (E.D.Mich. 1999)

In *School Dist. No. 1 of Silver Bow County v. Globe & Republic Ins. Co. of America*, 146 Mont. 208, 215-216, 404 P.2d 889, 893-894 (1965), the insurer demanded appraisal 6 days after commencement of a suit on the action, and the insured argued that appraisal had been waived. The Montana Supreme Court held that:

> When a policy of insurance containing an appraisal clause does not expressly or impliedly limit the time within which a demand for appraisal must be made, it is inferred that the parties contemplated that such demand must be made within a reasonable time after disagreement has arisen as to the amount of loss. 6 Appleman, Insurance Law and Practice § 3926 (1942); 14 Couch on Insurance 2d § 50.76. . . .

> Whether a demand for appraisal has been made within a reasonable time depends upon the circumstances of each case. [citations omitted]. An examination of the cases involving this issue reveals that principally two factors have been decisive; **prejudice resulting from the delay**, and the **breakdown of good-faith negotiations** concerning the amount of loss. . .

7

> **[I]t is not disputed that prior to the initiation of the action there had been no cessation of good-faith negotiations,** nor has the insured seriously contended that it was handicapped by the insurers' delay in demanding appraisal. . .
>
> [T]he inconvenience of bringing suit is just one circumstance to be considered in determining whether a delay in demanding appraisal was unreasonable, that is, whether the inconvenience suffered was sufficient to justify a refusal to proceed under the appraisal provision of the policy. . . .
>
> Considering all of the circumstances of this case, we are of the opinion that the insured's delay in demanding appraisal was not unreasonable. [emphasis added]

In *Hanby v. Maryland Cas. Co.*, 265 A.2d 28 (Del. 1970), the Delaware Supreme Court held that where plaintiff refused a pending good faith offer and commenced suit within two months thereafter, the insurer's appraisal demand following commencement of litigation was proper and enforceable.

In *Keesling v. Western Fire Ins. Co. of Fort Scott, Kan.*, 10 Wash.App. 841, 520 P.2d 622 (Wash.App. 1974), two months passed between the inception of litigation and the insurer's demand for appraisal. The court found that:

> The demand for an appraisal by the insurer was made timely under the circumstances. The timeliness of a demand for an appraisal in each case depends upon the circumstances as they existed at the time the demand was made. Annot., 14 A.L.R.3d 674 (1967).

This determination was based on the fact that:

> The items of loss and the amounts attributable to each item were still unresolved [at the time of the insurer's last offer]. This is a factor justifying delay in the demand for appraisal. Mizrahi v. National Ben Franklin Fire Ins. Co., 37 N.Y.S.2d 698 (N.Y. City Ct. 1942). Further, insofar as the record shows, until the insured filed suit, the frame of mind of both parties welcomed additional communications and negotiations rather than confrontation. The election of the insured to file suit could not deprive the insurer of its right to appraisal under the policy. Hanby v. Maryland Cas. Co., 265 A.2d 28 (Del.1970).

8

Moreover, there is no showing that the insured would have been prejudiced if an appraisal of the loss had been made even though 8 months had passed since the filing of the proof of loss and litigation had been commenced. This factor is likewise entitled to consideration in determining if the demand for appraisal was timely. . . . [T]wo factors have been decisive: prejudice resulting from the delay, and the breakdown of good-faith negotiations concerning the amount of loss.

In *Monroe Guar. Ins. Co. v. Backstage, Inc.*, 537 N.E.2d 528 (Ind.App. 3 Dist. 1989), an appraisal demand made 8 months after the end of good faith negotiations, and 2 months after suit was commenced, was nonetheless enforceable in the absence of any prejudice to the insured.

It is respectfully submitted that there has been no such waiver here, where the insured's commencement of suit was the first indication to the insurer that good faith negotiations had concluded, and no prejudice has been or can be shown.

## Conclusion

Accordingly, defendants respectfully submit that all damages issues are required, by virtue of defendants' demand, to be resolved by appraisal under the terms and conditions of the policy, with any issues of the interpretation of or application of said determination, and any coverage issues, to be resolved in this plenary action.

Dated: New York, New York
      July 6, 2007

Respectfully submitted,
Gennet, Kallmann, Antin & Robinson, P.C.

By: _____

Mark L. Antin (MA0427
Michael S. Leavy (ML6150)

9

## DECLARATION OF SERVICE

MARK L. ANTIN, an attorney admitted to practice before the courts of the State of New York and the U.S. District Court for the Southern District of New York, hereby affirms the truth of the following under the penalties of perjury:

I am a shareholder in the law firm of Gennet, Kallmann, Antin & Robinson, P.C., attorneys of record for the Defendants, Lexington Insurance Company and Westchester Surplus Lines Insurance Company.

That on July 6, 2007, I served a true copy of the annexed Motion for Partial Summary Judgment, Declaration of Mark L. Antin, Statement of Undisputed Facts, and Brief in Support of Motion, placing same in a sealed envelope with postage prepaid thereon in a Post Office or an official depository of the US Postal Service, addressed to the last known address of the addressees set forth below:

Janese N. Thompson
Weg and Myers, P.C.
52 Duane Street
New York, NY 10007

MARK L. ANTIN (MA 0427)