

# Fireman's Fund

### FIREMAN'S FUND McGEE
**MARINE UNDERWRITERS**
NEW YORK, NY

================================================================

## FIREMAN'S FUND INSURANCE COMPANY
### NOVATO, CA
New York Office

Ocean Marine Cargo Policy Number OC- 95272000

Issued to

## Amerex Group Inc.
## 1500 Rahway Av.
## Avenel, NJ 07001

Producer

**FOA & SON CORP.**
**333 EARLE OVINGTON BLVD.**
**MITCHELL FIELD, NY 11553-3644**
Producer No. 11838

## INDEX OF POLICY CLAUSES

| Subject | Clause Number |
|---|---|
| Account | 2 |
| Accumulation | 15 |
| Assured | 1 |
| Attachment and Cancellation | 5 |
| Authority to Issue Certificates or Special Policies | 21 |
| Bill of Lading | 19 |
| Both to Blame | 25 |
| Brands or Trademarks | 37 |
| Carrier | 20 |
| Concealed Damage | 42 |
| Conditions of Coverage | 32 |
| Consolidation, Deconsolidation and Forwarding | 39 |
| Constructive Total Loss | 54 |
| Contingency Insurance for Assured as Consignee | 44 |
| Contingency Insurance for Unpaid Vendor | 43 |
| Conveyances, Craft, etc. | 14 |
| Coverages Purchased | 6 |
| Debris Removal | 33 |
| Deductible | 32 |
| Delay and Inherent Vice | 49 |
| Deliberate Damage - Pollution Hazard | 34 |
| Deliberate Damage - U.S. Customs Service | 35 |
| Demurrage Charges | 58 |
| Difference in Conditions/Increased Value/Guarantee of Collectability | 45 |
| Domestic Transit | Section II |
| Errors and Omissions | 10 |
| Explosion | 27 |
| Fraudulent Bill of Lading | 41 |
| Free of Capture & Seizure | 46 |
| Free of Particular Average | 31 |
| Full Value Reporting | 15 |
| Fumigation | 30 |
| General Average | 24 |
| Geographic Limits | 13 |
| Goods Insured | 4 |
| Guarantee of Collectability | 45 |
| Impairment of Subrogation & Released Value Contracts of Carriage | 57 |
| Import Duty | 38 |
| Inchmaree | 26 |

| | |
|---|---|
| Increased Value | 45 |
| Infidelity | 50 |
| Inspection of Records | 9 |
| Insurance Broker | 7 |
| Interest | 12 |
| Labels, Capsules, Wrappers or Cartons | 36 |
| Limits of Liability, Accumulation and Full Value Reporting | 15 |
| Loss Payable | 3 |
| Machinery | 59 |
| Notice of Loss | 52 |
| Nuclear Exclusion Clause - Cargo | 47 |
| Other Insurance | 51 |
| Packages Lost in Loading | 29 |
| Partial Loss | 55 |
| Payment of Loss | 53 |
| Perils | 22 |
| Procedures in Case of Loss or Damage | Page 3 |
| Refused Shipments | 18 |
| Reporting and Payment of Premiums | 8 |
| Schedule of Rates | 11 |
| Shore Perils | 23 |
| Strikes, Riots & Civil Commotions Endorsement | End. 1 |
| Strikes, Riots & Civil Commotions Warranty | 48 |
| Subrogation | 56 |
| Sue and Labor | 28 |
| Terms of Average | 32 |
| Time for Suit | 60 |
| Unexplained Shortage | 40 |
| Valuation | 16 |
| Vessel Classification and Schedule of Rates | 11 |
| Warehouse Coverage | Section III |
| Warehouse to Warehouse and Marine Extension | 17 |
| Warehousing and Forwarding Charges, Packages Lost in Loading | 29 |
| Other: | |

# PROCEDURES IN CASE OF LOSS

If there is any loss or damage, which may become a claim under your policy, follow these procedures to protect your insurance claim and facilitate its adjustment.

## 1) PROMPTLY REPORT LOSS OR DAMAGE

    **A.**   **Within the United States** to your insurance agent or broker or to the nearest office of Fireman's Fund McGee Marine Underwriters to permit them to assign a surveyor to take whatever action that might be necessary.

    **B.**   **Outside the United States** to the nearest office of Fireman's Fund McGee Marine Underwriters or to the nearest settling agent or surveyor of this Company and request the surveyor to conduct the survey. Invite the delivery carrier's representative to attend the survey. If loss or damage is discovered on the dock, have the survey conducted there without delay. If there is no agent nearby, request the nearest correspondent of the American Institute of Marine Underwriters or Lloyd's Agent to conduct a survey.

## 2) MAKE IMMEDIATE INSPECTION OF EACH PACKAGE

## 3) TAKE PROPER EXCEPTIONS on the delivery receipt when any loss or damage is apparent at the time of taking

delivery. It is most important that exact exceptions are taken in writing on the delivery receipt as to the condition of the shipment and a copy of the delivery receipt must be retained by the Assured for the claim file. When delivery is made by intermodal container, the container and its seals must be closely examined. If the container is delivered damaged or with seals broken or with seal numbers other than as stated on the shipping document, the consignee must write the exact exception on the delivery receipt and retain all defective or irregular seals for subsequent identification. Have the driver open the container prior to signing a receipt. If any damage is noted, call for an immediate survey.

## 4) TAKE STEPS TO PREVENT FURTHER DAMAGE

## 5) IMMEDIATELY FILE CLAIM IN WRITING against the delivering carrier, holding the carrier responsible as

soon as loss or damage is discovered even though the full extent of damage is not known. Details can be furnished later. If more than one carrier (Ocean, Truck, etc.) is involved, claim must be filed against all of them. As the actual amount of loss or damage in most cases cannot be determined at the outset, the phrase "**$100 more or less**" should be used as the amount claimed against the carriers, unless a higher amount is obvious. This phrase is *extremely important* especially in the case of inland carriers and air carriers, as the law provides that the claim, to be valid, must specify some amount.

## 6) COLLECT COMPLETE DOCUMENTS in support of your insurance claim and promptly forward them to your

insurance agent or broker, the settling agent or surveyor or to the nearest office of Fireman's Fund McGee Marine Underwriters. Preserve packing for examination by the surveyor.

    A.   Original or certified copies of all ocean and inland bills of lading and air waybills covering the entire shipment insured, including transshipment bills of lading, freight notes and one-way bills when applicable. All bills of lading and air waybills are to include both front and back sides and contain all terms and conditions of the contract of affreightment.

    B.   Certified copy of shipper's commercial invoices covering the entire shipment insured.

    C.   Copy of packing list.

    D.   Duty Consumption Entry Report, if import duty is insured. In the United States, submit Customs Form 5931 on duty losses involving non-delivery.

    E.   Copies of all delivery receipts with proper exceptions of loss or damage noted, and any other exception or bad order slips which may substantiate the loss or damage.

    F.   On non-delivery claims, written confirmation by the carrier attesting to their inability to make delivery and all three (3) original bills of lading evidencing receipt and/or title to the shipment.

    G.   Copies of written claims against transporting carriers or other parties with their reply, when available.





H.  Assured's Statement of claim.

I.  Original or Duplicate of Special Cargo Policy or Certificate of Insurance, if issued, properly endorsed by the payee. In case of import shipments not covered by a Special Cargo Policy or Certificate of Insurance, please identify the declaration or monthly report on which the shipment has been declared to underwriters.

J.  Bills for repairs, reconditioning or other expenditures and any other proofs of loss that may be required in each specific case.

K.  Surveyor's certificate or survey report.

L.  Any other correspondence or reports or information relevant to the transit, loss, or damage.

## GENERAL AVERAGE

In a general average situation, the vessel owner has a lien on the cargo for cargo's ultimate contribution to the general average sacrifices or expenditures. In order to secure this lien prior to release of cargo, the procedure generally will be as follows:

An average agreement or bond will be sent to the consignee named in the bill of lading by the average adjuster appointed by the vessel owner or it local agent. This agreement or bond must be signed by a corporate officer or party having power of attorney in the consignee's firm and promptly returned, together with certified copies of the commercial invoice, to the party designated.

As further security of the lien, a cash deposit may be required. This deposit will be the estimated General Average Contribution due from the particular shipment. However, no deposit should be made without this Company's approval, as the adjuster will normally accept our guarantee in lieu thereof. In the event a cash deposit must be made, apply to this Company for refund, enclosing the deposit receipt endorsed to this Company.

In order to avoid delay in obtaining release of cargo, the consignee should immediately notify this Company's Marine Claims Department or, in the case of an export shipment, this Company's nearest claims agent and submit the following documents:

1.  Copy of the commercial invoice(s)
2.  Copy of the ocean bill(s) of lading
3.  Copy of the insurance certificate or special policy, if one was issued.

# FIREMAN'S FUND INSURANCE COMPANY
## NOVATO, CA

### Open Marine Policy Number OC- 95272000

### GENERAL DECLARATIONS

The FIREMAN'S FUND INSURANCE COMPANY, hereinafter referred to as the Company, in consideration of premiums as agreed to be paid, does insure:-

**1. ASSURED**

**Amerex Group Inc.**
**1500 Rahway Av.**
**Avenel, NJ 07001**

hereinafter referred to as the Assured.

**2. ACCOUNT**

For the account of whom it may concern.

**3. LOSS PAYABLE**

Loss, if any, payable to the Assured or order.

**4. GOODS INSURED**

Upon all lawful goods consisting principally of Outerwear Garments.

**5. ATTACHMENT and CANCELLATION**

This insurance shall attach on shipments made on and after **June 15, 2001**, and with respect to Section III if purchased, on **June 15, 2001** at **12:01 A.M.**, Standard Time where the goods are located. This Policy is continuous and shall cover as herein provided unless canceled by either party as specified herein.

**This Policy may be canceled in either of the following ways:**

A. Either party may give **Thirty (30)** days written notice to the other party.

B. Willful failure by the Assured either to make Declarations or to pay premiums when due shall (at the option of this Company) render this Policy null and void as of and from the date of such willful failure.

The Company will mail or deliver its notice of cancellation to the Assured at the address shown in this policy or to the Assured's insurance broker, at the company's option.Such cancellation shall not affect any shipment on which this insurance attached prior to the date of cancellation, but all coverage on goods insured on a time or location basis shall terminate at the effective date of the cancellation.

**6. COVERAGES PURCHASED**

This Ocean Marine Cargo Policy is comprised of General Declarations and only those Sections, shown below, as having been "Purchased" by the Assured on the attachment date:

| | | |
|---|---|---|
| Section I: | Marine Cargo | Purchased |
| Section II: | Domestic Transit | Purchased |
| Section III: | Storage Coverage | Purchased |
| War Risks Only Open Cargo Policy | | Purchased |

## 7. INSURANCE BROKER

**FOA & SON CORP.**
333 EARLE OVINGTON BLVD.
MITCHELL FIELD, NY 11553-3644

It is a condition of this Policy that the Assured's insurance broker, or any substituted broker, shall be deemed to be exclusively agents of the Assured and not of this Company in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of this Company to the broker in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to the Assured, and shall be binding on the Assured.

## 8. REPORTING AND PAYMENT OF PREMIUMS

This policy is issued in consideration of a deposit premium of $186,166.00 which shall be payable as per the following schedule while this policy is in force.

| | | |
|------|-------------|------------|
| Due | June 15 | $46,541.50 |
| Due | September 15 | $46,541.50 |
| Due | December 15 | $46,541.50 |
| Due | March 15 | $46,541.50 |

The Assured agrees to declare to their insurance broker for transmittal to the Company all Gross sales coming within the terms and conditions of this policy during the policy year.

Commencing at inception and annually thereafter, the Assured shall pay the Assurers a deposit premium, based on an agreed rate on estimated total annual gross sales for the ensuing year.

Reports of total gross sales shall be made as soon as practicable after the end of each policy year. Premium earned shall be calculated in accordance with rates and terms of this policy and shall be applied to this deposit. Any additional premium shall be due and payable at the rates of this Company. In the event such premiums are less than this deposit at the end of the policy year, eighty percent (80%) of the deposit is considered fully earned and any unearned deposit in excess of that amount shall be returned to the Assured.

Wilful failure to so declare or to pay premiums when due shall (at the option of this Company) render this policy null and void as of and from the date of such failure.

## 9. INSPECTION OF RECORDS

This Company or its duly appointed representative shall be permitted at any time during business hours while this Policy is in force, or within one year after its termination, to inspect the records of the Assured as respects goods insured within the terms of this Policy.

## 10. ERRORS AND OMISSIONS

Provided notice be given this Company as soon as practicable after the facts become known to the Assured and deficiency of premium, if any, made good, this Policy shall not be prejudiced by any unintentional:

    A. delay or omission in the transmission of declarations required;
    B. error in the quantity, value or description of the goods;
    C. error in the description of the vessel or voyage.

## 11. VESSEL CLASSIFICATION CLAUSE and SCHEDULE OF RATES

Shipped on:

(1) metal-hulled, self-propelled vessels which are not over 20 years of age nor less than 1000 net registered tons and which are classed A1 American Record or equivalent by a Member of the International Association of Classification Societies; or

(2) vessels over 20 years of age which are approved by this Company, and which are not less than 1000 net registered tons and classed as in (1) above, but only while operating in their regular trades; but in either case excluding vessels built:

a)    for service on the Great Lakes;
b)    solely for military or naval service; or
c)    for the carriage of dry bulk or liquid bulk cargoes, and which are more than 15 years of age, unless specifically approved by this company.

(3) ocean going barges which are classed A1 American Record or equivalent by a Member of the International Association of Classification Societies.

For Shipments of Outerwear Garments

|         |       | Steamer | Air    |
|---------|-------|---------|--------|
| World   | World | .1035%  | .1035% |

Domestic Transit per Section II is included in Marine rate.

Storage per Section III is Included in Marine rate.

Import Duty at 1/3 the Marine Rate;

Contingency Insurance for Unpaid Vendor at 1/3 the Marine Rate;

Contingency Insurance for Consignee at 1/3 the Marine Rate;

DIC/Guarantee of Collectability at Rates to be agreed;

All rates are per $100.00 of Annual Gross Sales. Shipments of other goods or by other vessels and/or between other places, or all shipments on deck, at rates to be arranged.

It is hereby understood and agreed that the War Risks Only Open Cargo Policy attached hereto is written in consideration of premiums at a rate of **$0.01** per $100.00 of Annual Gross Sales declared in accordance with this policy.

This rate shall apply from places in the World to places in the World, **EXCEPT** *on shipments to or from areas where rates for War, Strikes, Riots and Civil Commotion are ON APPLICATION.* Such shipments are held covered and shall be separately declared and premium paid at rates of this Company current on date of shipment.

# SECTION I:  OCEAN MARINE CARGO

## GENERAL PROVISIONS

**12. INTEREST**

This insurance is to cover all shipments by or to the Assured for their account as Principals or as Agents for others, or for account of others with orders to insure, provided such orders are given in writing prior to the attachment of risk hereunder and prior to any known loss or damage; excluding, unless otherwise provided herein, goods sold under instructions not to insure and goods purchased by the Assured on C.I.F. or on other terms including insurance.

**13. GEOGRAPHIC LIMITS**

Shipments are insured at and from places in the world to places in the world, except that there is no coverage for shipments to or from countries which are the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

This policy excludes domestic shipments originating and terminating wholly within the 48 contiguous States of the United States except for waterborne shipments.

**14. CONVEYANCES, CRAFT, ETC.**

A. Attaching on shipments by the conveyance specified and, in all cases, including connecting conveyances:

> (1) Iron or steel vessels propelled solely by mechanical power.
> (2) Aircraft.
> (3) Metal barges.
> (4) Rail and/or truck.

B. Including transit by craft and/or lighter to and from the vessel. Each craft and/or lighter to be deemed a separate insurance. The Assured is not to be prejudiced by any agreement exempting lightermen from liability.

**NOTE: Wherever the words "ship" or "vessel" appear in this Policy, they are deemed to include any conveyance.  Wherever the words "seaworthiness" or "ship or vessel owner" appear in this Policy, they are deemed to include also the words "conveyance-worthiness" or "conveyance-owner".**

**15. LIMITS OF LIABILITY, ACCUMULATION, AND FULL VALUE REPORTING**

A. This Company is not to be liable for more than

> (1)     **$3,000,000** any one vessel or connecting conveyance or in any one place at any one time except as otherwise provided by this policy;
>
> (2)     **$3,000,000** any one aircraft or connecting conveyance;
>
> (3)     **Nil** any one metal barge or any one tow (other than as a connecting conveyance).
>
> (4)     **$25,000** any one package shipped by government or private mail or parcel post or parcel delivery service;
>
> (5)     **$3,000,000** any one truck or railroad car;

B.  Should there be an accumulation of goods insured beyond the limits expressed in this policy by reason of an interruption of transit, or by reason of a casualty or other occurrence, or at a transhipping point, or on a connecting conveyance, this Company shall hold covered such excess amount and shall be liable for the full amount at risk (but in no event to exceed twice the applicable limit of liability) provided said accumulation is beyond the control of the Assured and provided the Assured notifies this Company of the accumulation as soon as it is known to them.

C.  If the total value at risk exceeds the applicable limit of liability provided by this policy, this Company shall in no event be liable for more than the full amount of loss up to but not exceeding the applicable limit of liability.  If the premium provision for this policy requires the Assured to report values at risk, the Assured shall nevertheless report to this Company the full amount at risk and shall pay full premium thereon.

### 16. VALUATION

Valued at Assured's Selling Price, less any unincurred expenses.

Foreign currency is to be converted into US Dollars at Banker's Sight Rate of Exchange current in New York on the day of the invoice.

### 17. WAREHOUSE TO WAREHOUSE AND MARINE EXTENSION

A.  This insurance attaches from the time the goods leave the warehouse at the place named in the certificate, special policy, or declaration for the commencement of transit and continues during the ordinary course of transit, including customary transshipment, if any, until the goods are delivered to the final warehouse at the destination named in the certificate, special policy, or declaration, or a substituted destination, as provided in paragraph C. hereunder.

B.  This insurance specifically to cover the goods for perils insured against during:

> 1) deviation, delay, forced discharge, re-shipment and transhipment;
> 2) any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

C.  In the event of the exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the original insured destination, the insurance continues until the goods are sold and delivered at such port or place; or, if the goods be not sold but are forwarded to the original destination or to any other destination, this insurance continues until the goods have arrived at the final warehouse.

D.  If while this insurance is still in force and before the expiry of 15 days from midnight of the day on which the discharge overside of the goods insured from the overseas vessel at the final port of discharge is completed, the goods are resold (not being a sale within the terms of paragraph C) and are to be forwarded to a destination other than that covered by this insurance, the goods are covered hereunder while deposited at such port of discharge until again in transit or until expiry of the aforementioned 15 days, whichever shall first occur. If a sale is effected after the expiry of the aforementioned 15 days and this insurance is still in force, by virtue of a "held covered" provision, the protection afforded hereunder shall cease as from the time of sale.

E.  Held covered at a premium to be arranged in case of change of voyage or any omission or error in the description of the goods insured, vessel or voyage.

F.  It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the Assured.

All other terms and conditions of the Ocean Marine Cargo policy not in conflict with the foregoing remain unchanged, it being particularly understood and agreed that the Free of Capture & Seizure clause remains in full force and effect, and that nothing in the foregoing shall be construed as extending this insurance to cover any risks of war or consequences of hostilities.

## 18. REFUSED SHIPMENTS

Goods shipped by the Assured and refused by the consignee, or which remain at the risk of the Assured beyond the normal course of transit, are held covered until disposed of by the Assured by return to the port of shipment or to the intended alternate destination. In no event shall this insurance inure to the benefit of the consignee.

## 19. BILL OF LADING, ETC.

The Assured is not to be prejudiced by the presence of the "Negligence" Clause and/or "Latent Defect" Clause in the Bills of Lading and/or Charter Party. The seaworthiness of the vessel as between the Assured and this Company is hereby admitted and the wrongful act or misconduct of the shipowner or his servants causing a loss is not to defeat the recovery by an innocent Assured if the loss in absence of such wrongful act or misconduct would have been a loss recoverable under this policy. With leave to sail with or without pilots, and to tow and assist vessels or craft in all situations, and to be towed.

## 20. CARRIER

Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.

## 21. AUTHORITY TO ISSUE CERTIFICATES OR SPECIAL POLICIES

A. Authority is hereby granted the Assured to issue this Company's certificates or special policies hereunder, provided such certificates or special policies shall conform to the terms and conditions of this open policy. All such certificates or special policies issued shall be countersigned by a duly authorized representative of the Assured.

B. Subject to approval of this Company prior to issuance or amendment, the Assured may issue certificates or special policies incorporating London Institute Cargo Clauses.

C. In the event certificates or special policies are spoiled or voided, the original and duplicate are to be returned promptly to this Company. If this Policy is cancelled, all unused certificates or special policies are to be returned promptly to this Company.

D. By using this Company's certificates or special policies, the Assured agrees to reimburse the Company if, by reason of any omission or insertions made by the Assured or their representative upon such certificate or special policy, this Company is obliged to pay a claim not covered by this Open Cargo Policy, or any amount in excess of the amount this Ocean Marine Cargo Policy undertakes to pay.

# INSURING CLAUSES

## 22. PERILS

Touching the adventures and perils which this Company is content to bear and take upon itself, they are of the Seas, Fires, Assailing Thieves, Jettisons, Barratry of the Master and Mariners, and all other like perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the goods insured or any part thereof.

## 23. SHORE PERILS

Notwithstanding any average warranty contained herein, shipments while in transit or otherwise on land are insured against loss and/or damage, irrespective of percentage, caused by, or reasonably attributed to fire, smoke, lightning, earthquake, volcanic action, typhoon, hurricane, cyclone, windstorm, landslide, flood, rising waters, sprinkler leakage, collision, upset, overturn, derailment or other accident to the land conveyance, aircraft damage, falling objects, vehicular damage, collapse and/or subsidence of docks, bridges, culverts and/or other structures. However, shipments insured "All Risks" while waterborne are insured "All Risks" while in transit or otherwise on land.

## 24. GENERAL AVERAGE

Subject always to the applicable limit of liability, General Average and Salvage Charges are payable in full irrespective of insured and contributory values, in accordance with United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

## 25. BOTH TO BLAME

When the goods are shipped under a bill of lading containing the so-called 'Both to Blame Collision' Clause, this Company agrees as to all losses covered under this policy, to indemnify the Assured for this policy's proportion of any amount which the Assured may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted, the Assured agrees to notify this Company which shall have the right at its own cost and expense to defend the Assured against such claim.

**In no event, however, shall this Company be liable for more than the insured value of the goods.**

## 26. INCHMAREE

This insurance is also specifically to cover, irrespective of percentage, any loss of or damage to the goods insured hereunder through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation or management of the vessel by the master, mariners, mates, engineers, and pilots.

## 27. EXPLOSION

This insurance is also specifically to cover, irrespective of percentage, loss, damage or expense resulting from explosion howsoever or wheresoever occurring. It is especially understood and agreed, however, that this wording is not intended to cover any of the risks excluded by the Free of Capture & Seizure and/or Strikes, Riots & Civil Commotions warranties set forth elsewhere in this policy.

## 28. SUE AND LABOR

In case of any imminent or actual loss or misfortune, it shall be lawful and necessary for the Assured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard, and recovery of the goods insured, or any part thereof, without prejudice to this insurance. Subject always to the applicable limit of liability, sue and labor charges are payable irrespective of percentage. The acts of the Assured or this Company in recovering, saving, or preserving the goods insured, in case of loss, shall not be deemed a waiver or acceptance of abandonment.

## 29. WAREHOUSING AND FORWARDING CHARGES, PACKAGES LOST IN LOADING, ETC.

A. . Despite any average warranty contained in this Policy, this Company will pay any reasonable landing, warehousing, forwarding, and special charges for which this Policy would be liable, as well as the insured value of any package, piece, or unit totally lost in loading, transhipment or discharge.

B.  This Company will also pay any reasonable landing, warehousing, forwarding, and special charges which result from insolvency or financial default of the owners, charterers, managers, or operators of the vessel. In no event, however, shall this insurance provide coverage for such charges if at the time of loading of the insured subject matter on board the vessel, the Assured is aware or in the ordinary course of business should be aware that such insolvency or financial default could prevent the normal continuation of the voyage.

## 30. FUMIGATION

This insurance is also specially to cover, irrespective of percentage, damage to the goods insured arising out of the vessel, wharf, warehouse or other goods being fumigated by order of properly constituted authority.

# AVERAGE CLAUSES

## 31. FREE OF PARTICULAR AVERAGE

Warranted free from particular average unless the vessel or craft be stranded, sunk or burnt, but notwithstanding this warranty, this Company shall pay for any loss or damage to the goods insured which may reasonably be attributed to fire, collision or contact of the vessel or craft with any external substance (ice included) other than water, or the discharge of the goods insured at a port of distress; also including the risks of jettison and washing overboard irrespective of percentage. This warranty, however, shall not apply where broader terms of average are provided by or endorsed to this Policy.

## 32. Shipments of Outerwear Garments sufficiently packed to withstand the intended voyage covered by this Section are insured against all risks of physical loss or damage from any external cause, except as noted below (and excepting such risks as are excluded by the Paramount Warranties in this Policy).

Warranted that transits within, between and from Russia/Commonwealth of Independant States must be by Common Carriers, traveling in Convoys of two or more vehicles, with two drivers per vehicle, one of which is an armed guard. Failure to comply with the warranty will result in all losses or damages caused by or resulting from Theft, Pilferage, Non delivery, and/or hijacking to be excluded.

### DEDUCTIBLE:

Each claim for loss or damage covered under this Section shall be adjusted separately and from the amount of each claim as adjusted shall be deducted $3,000,000.

### A. VESSEL - ON DECK, Subject To An On-Deck Bill Of Lading

Shipments On Deck subject to an On-Deck Bill of Lading are warranted free from particular average unless directly resulting from the vessel or craft being stranded, sunk or burnt, but notwithstanding this warranty, this Company shall pay for any loss or damage to the goods insured which may reasonably be attributed to fire, collision or contact of the vessel or craft with any external substance (ice included) other than water, or to discharge of the goods insured at a port of distress; also including the risks of jettison and washing overboard irrespective of percentage.

### B. BARGE - UNDER DECK

Shipments by barge (other than as a connecting conveyance) Under Deck are warranted free from particular average unless the vessel or craft be stranded, sunk or burnt, but notwithstanding this warranty, this Company shall pay for any loss or damage to the goods insured which may reasonably be attributed to fire, collision or contact of the vessel or craft with any external substance (ice included) other than water, or the discharge of the goods insured at a port of distress.

### C. BARGE - ON DECK

Shipments by barge (other than as a connecting conveyance) On Deck are warranted free from particular average unless directly resulting from the vessel or craft being stranded, sunk, or burnt, but notwithstanding this warranty, this Company shall pay for any loss or damage to the goods insured which may reasonably be attributed to fire, collision or contact of the vessel or craft with any external substance (ice included) other than water, or to discharge of the goods insured at a port of distress; also including the risks of jettison and washing overboard irrespective of percentage.

# ADDITIONAL COVERAGES

Subject always to the applicable terms of average:-

### 33. DEBRIS REMOVAL
This insurance is extended to indemnify, in addition to any other amount recoverable under this insurance, expense reasonably incurred by the Assured for the removal and disposal of debris of the subject matter insured, by reason of damage thereto caused by an insured peril, but excluding absolutely:

    1. Any expenses incurred in consequence of or to prevent or mitigate pollution or contamination, or any threat or liability therefor.
    2. The cost of removal of cargo from any vessel or connecting watercraft.

In no case shall this company be liable under this clause for more than **10.00%** of the insured value of the damaged merchandise or **$300,000**, whichever is less, any one occurrence.

### 34. DELIBERATE DAMAGE - POLLUTION HAZARD
This insurance is also specifically to cover, but only while the goods insured are on board a conveyance, loss of or damage to the goods directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided the accident or occurrence (which required governmental action) constituted a peril insured against.

**This coverage shall not increase the applicable limit of liability provided for in this Policy.**

### 35. DELIBERATE DAMAGE - U.S. CUSTOMS SERVICE
This insurance is also specifically to cover (notwithstanding the Free of Capture & Seizure warranty contained herein) physical loss of or damage to the goods insured arising out of the performance of inspection duties by the U.S. Customs Service or another duly constituted governmental agency of the United States who are performing inspection duties of or for the U.S. Customs Service.

### 36. LABELS, CAPSULES, WRAPPERS OR CARTONS
If an insured peril causes damage to labels, capsules, wrappers or cartons, this Company shall pay no more than an amount sufficient to pay the cost of new labels, capsules, wrappers or cartons, and the cost of reconditioning and/or relabeling the goods. In no event, however, shall this Company be liable for more than the insured value of the damaged goods.

### 37. BRANDS OR TRADEMARKS
At the option of the Assured, in case of damage to goods bearing a brand or trademark, or the sale of which carries or implies a guarantee of the supplier or the Assured, the salvage value of such damaged goods shall be determined after the removal, in the customary manner, of all brands or trademarks. On packages where the brand or trademark cannot be removed, the contents shall be transferred to plain packages. With respect to any goods and/or packages where it is impractical to destroy all evidence of the Assured's connection therewith, this Company agrees to consult and cooperate with the Assured with respect to the disposition of said goods and/or packages. Should it become necessary to destroy the goods and/or packages, the Assured shall give this Company the opportunity to have a representative in attendance. All reasonable expenses incidental to removal of brands or trademarks, or destruction of the goods or packages, if necessary, shall be part of the claim.

In no event, however, shall this Company be liable for more than the insured value of the damaged goods.

## 38. IMPORT DUTY

This insurance is also specially to cover the risk of partial loss on the duties imposed on goods insured. However, when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, shall attach as an additional insurance upon the goods. Any limit of liability expressed in this policy shall be applied separately to such increased value. The Assured shall, in all cases, use reasonable efforts to obtain abatement or refund of duties paid or claimed on goods lost, damaged or destroyed. It is further agreed that the Assured shall, when this Company elects, surrender the goods to the customs authorities and recover duties thereon as provided by law, in which event the claim under this policy shall be only for a total loss of the goods so surrendered, and expenses.

## 39. CONSOLIDATION, DECONSOLIDATION AND FORWARDING

Notwithstanding anything contained elsewhere herein to the contrary, (particularly the Warehouse to Warehouse and Marine Extension Clause), this Policy shall cover, subject to its terms and conditions, the goods prior to their arrival at the final destination (except at any premises owned, leased, or operated by the Assured) while temporarily detained during the ordinary course of transit for purposes of consolidation, deconsolidation, containerization, decontainerization, and forwarding, anywhere in the world whether prior to loading or after discharge from the overseas vessel for a period not exceeding **Thirty (30)** days after arrival at the consolidation point. Held covered in excess of this time period provided the Assured gives prompt written notice to this Company as soon as this fact is known to the Assured and pays additional premium at rates to be agreed.

It is especially understood and agreed that in no event shall this clause be deemed to cover insured goods while at any location solely for the purpose of storage.

## 40. UNEXPLAINED SHORTAGE

This insurance is also specifically to cover shortage of goods insured from intermodal container(s), meaning (a) the difference between the number of packages as per shippers and/or suppliers invoice and/or packing list which were loaded and (b) the count of the packages removed taken by the Assured and/or their agent at the time of discharge from the container upon arrival at the final insured destination, provided that:

    A. the coverage for the shipment includes loss caused by theft; AND
    B. the Assured makes every attempt to recover the loss from anyone who may have been responsible for the shortage through involvement in stuffing the container; AND
    C. this clause excludes liability for any such loss which can be attributed to forcible entry into the container which occured after its delivery to the store, warehouse, factory or other premises to which the goods are insured.

**It is a condition precedent to this coverage that the Assured shall not divulge the existence of this coverage to any party. Such disclosure shall void coverage provided by this clause.**

## 41. FRAUDULENT BILL OF LADING

This Policy covers physical loss or damage occasioned through the acceptance by the Assured or their agents or shippers of fraudulent Bills of Lading and/or shipping receipts and/or messenger receipts, or by the use of legitimate bills of lading and/or other shipping documents without the authorization of the Assured or their agents, all provided that:

    A. the coverage for the shipment includes loss caused by theft; AND
    B. in no event does this policy cover loss or damage arising from the shipper's fraud or misstatement.

## 42. CONCEALED DAMAGE

This insurance is also specially to cover (provided that notice of loss is given to this Company within 90 days from the arrival of the goods insured at the final destination) concealed damage which may be reasonably attributed to having occurred during the insured voyage.

**It is a condition precedent to the coverage for concealed damage that notice of loss must be given to this Company immediately upon discovery of packages or freight units that show evidence of external damage at the time of arrival at the final destination; failure to do so voids the coverage for concealed damage.**

### 43. CONTINGENCY INSURANCE FOR UNPAID VENDOR

This insurance is also specifically to cover goods sold by the Assured on terms which do not obligate them to provide insurance, if there is loss or damage from a peril insured herein, and the Assured cannot collect from the consignee or other party because of refusal or inability to pay.

This Company shall advance to the Assured, as a loan, the amount of loss as provided herein. Such loss to be repayable upon remittance of the purchase price by the buyer or otherwise. Goods insured under this coverage shall be valued at the amount of the Assured's invoice, plus freight and other charges (if not included in the invoice). This insurance is for the sole account of the Assured and in no event is it to inure to the benefit of buyers, consignees or any other party.

**It is a condition precedent to this coverage that the Assured shall not divulge the existence of this coverage to any party. Such disclosure shall void coverage provided by this clause.**

The Assured shall preserve their rights against the buyer or other parties and, upon receipt of payment from this Company, shall subrogate to this Company all such rights and shall give all assistance, other than pecuniary, in enforcing them.

### 44. CONTINGENCY INSURANCE FOR ASSURED AS CONSIGNEE

This insurance is also specially to cover goods purchased and paid for by the Assured on terms which do not obligate them to provide insurance, if there is loss or damage from a peril insured herein, and the Assured cannot collect from the seller, insurance provided by the seller, or other party, because of refusal or inability to pay.

This Company shall advance to the Assured, as a loan, the amount of loss as provided herein. Such loss to be repayable upon remittance of the sum due the Assured by the seller, the insurance provided by the seller or otherwise.

Goods insured under this coverage shall be valued at the amount of the seller's invoice, plus freight and other charges (if not included in the invoice). This insurance is for the sole account of the Assured and in no event is it to inure to the benefit of sellers, their insurers or any other party.

**It is a condition precedent to this coverage that the Assured shall not divulge the existence of this coverage to any party. Such disclosure shall void coverage provided by this clause.**

The assured shall preserve their rights against the seller and the insurance provided by the seller or other parties and, upon receipt of payment from this Company, shall subrogate to this Company all such rights and shall give assistance, other than pecuniary, in enforcing them.

### 45. DIFFERENCE IN CONDITIONS/INCREASED VALUE/GUARANTEE OF COLLECTABILITY

If any goods insured hereunder are covered by other insurance, this insurance is also specifically to cover:-

    1. **Difference In Conditions:**
    Any perils not covered by other insurance but which are covered under the terms of this Policy.

    2. **Increased Value:**
    Any difference between the value insured by other insurance and the value in accordance with the applicable valuation clause of this Policy.

    3. **Guarantee of Collectability:**
    If the Assured cannot collect under other insurance for loss and/or damage by perils covered under the terms of this Policy, this Company shall advance, as a loan, the amount of loss as provided herein. Such loss is to be repayable upon remittance of any sum due from other insurance.

# PARAMOUNT WARRANTIES

The following warranties shall be paramount and shall not be modified or superseded by any other provision contained in this Policy or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by these Warranties and expressly assumes the said risks.

## 46. FREE OF CAPTURE & SEIZURE
Notwithstanding anything contained in this Policy to the contrary this insurance is warranted free from:

A. capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise:

B. all loss, damage or expense, whether in time of peace or war, caused by
   (i) any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter or
   (ii) any mine or torpedo;

C. all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, or with rockets or similar missiles (other than weapons of war) or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power;

D. the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom; or from the consequences of the imposition of martial law, military or usurped power; or piracy.

## 47. NUCLEAR EXCLUSION CLAUSE - CARGO (April 1, 1991)
Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation, or radioactive contamination, regardless of how it was caused. However, subject to all provisions of this policy, if this policy insured against fire, then direct physical damage to the property insured located within the United States or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C.&S. Warranty of this policy. Nothing in this clause shall be construed to cover any loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the fire mentioned above.

## 48. STRIKES, RIOTS & CIVIL COMMOTIONS
Notwithstanding anything contained in this Policy to the contrary, this insurance is warranted free from loss, damage or expense caused by or resulting from:

A. strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrences or disorders;

B. vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

## 49. DELAY AND INHERENT VICE
Warranted free of claim for loss of market or for loss, damage, deterioration, or expense arising from delay, whether caused by a peril insured against or otherwise, or from inherent vice or nature of the goods insured.

## 50. INFIDELITY
In no case shall this insurance cover loss or damage caused by or resulting from misappropriation, secretion, conversion, infidelity or any dishonest act done by or at the instigation of the Assured or other party of interest to the underlying purchase or sale transaction, or their employees or agents (carriers for hire excepted).

# LOSS CLAUSES

## 51. OTHER INSURANCE

A. If any goods insured hereunder are covered by other insurance which attached prior to the date of attachment of this Policy, this Company shall be liable only for the amount in excess of such prior insurance and shall return to the Assured premium to be agreed after determination of the terms of the other insurance.

B. If any goods insured hereunder are covered by other insurance which attached subsequent to the date of attachment of this Policy, this Company shall nevertheless pay to the full extent of its liability under this insurance without right to claim contribution from the subsequent insurers.

C. If any goods insured hereunder are covered by other insurance which attached on the same date of attachment of this Policy, such other insurance shall be deemed to be simultaneous, and this Company will be liable only for a pro-rata contribution to the loss or damage in proportion to the amount that the insurance under this Policy bears to the total amount of insurance placed on the goods from all sources and will return to the Assured an amount of premium proportionate to such reduction of liability.

D. It is agreed that nothing in this clause shall alter the intent or operation of the Interest Clause of this Policy.

## 52. NOTICE OF LOSS

In case of actual or expected loss or damage to the goods insured, it shall be reported to this Company or its claims representatives as soon as practicable upon knowledge by the Assured of the actual or expected loss.

## 53. PAYMENT OF LOSS

Loss, if any, is to be paid within thirty (30) days of interest in the goods insured and loss thereto being established.

## 54. CONSTRUCTIVE TOTAL LOSS

The goods insured shall not be deemed a Constructive Total Loss unless they are reasonably abandoned on account of their actual total loss appearing to be unavoidable, or because the goods cannot be preserved from actual total loss without an expenditure which would exceed their value if the expenditure had been incurred.

## 55. PARTIAL LOSS

In case of partial loss by perils insured against, and notwithstanding any applicable statute to the contrary, there shall be a separation of sound and damaged goods insured and the amount of recoverable loss shall be determined by :

(a) an agreed percentage of depreciation, in which event the Assured shall receive the agreed percentage of the insured value of the damaged goods insured, or, if there is no agreement,

(b) sale of the damaged goods insured, in which event the Assured shall receive the difference between the insured value of the goods sold and the proceeds of the sale.

## 56. SUBROGATION

It is agreed that, on payment of any loss, the Assured shall assign and subrogate to this Company all their rights against third parties to the extent of such payments and shall permit suit to be brought in their name but at this Company's expense. The Assured further agrees to render all reasonable assistance in the prosecution of any suit. However, except in General Average, this Company shall not be subrogated to any rights and/or claims against the Assured's affiliates or subsidiaries.

## 57. IMPAIRMENT OF RECOVERY & RELEASED VALUE CONTRACTS OF CARRIAGE

A.. In case of any agreement, act or omission of the Assured, prior to or subsequent to loss, whereby any right of recovery against any Carrier or Bailee is released, impaired or lost, which would on acceptance of abandonment or payment of loss by this Company have inured to its benefit, this Company shall pay for the loss only to the extent its right of recovery was not released, impaired or lost.

B. Notwithstanding the preceding paragraph, the Assured may accept from Carriers bills of lading, receipts or contracts of transportation containing a release or limitation of liability as to the value of the goods, without prejudice to this insurance.

## 58. DEMURRAGE CHARGES

If the Assured is instructed by this Company to hold an intermodal container, and if the Assured is assessed a late penalty and/or demurrage charge for holding the intermodal container past the return date, this Company will pay the late penalties and/or demurrage charges. The amount this Company will pay shall be the charges assessed from the time this Company directs the Assured to hold the container until the time this Company informs the Assured that the container can be released.

## 59. MACHINERY

At the option of the Assured, in case of loss or damage to any part of a machine, this Company will pay the proportion that the part lost or damaged bears to the insured value; or, this Company will pay for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part. Loss, if any, sustained by payment of additional duty on replacement parts shipped for damaged machinery shall only be recoverable if duty was insured with the original shipment of machinery.

**In no event, however, shall this Company be liable for more than the insured value of the complete machine.**

## 60. TIME FOR SUIT

No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless commenced within one (1) year from the time loss occurred. Provided, however, that if by the laws of the place where this Policy is issued, such limitation is invalid, then any such claim shall be void unless such suit, action or proceeding be commenced within the shortest limit of time permitted by the laws of such place.

## Endorsement No. 7

Attached to and made part of Policy No. OC-95272000 of the FIREMAN'S FUND INSURANCE COMPANY issued to **Amerex Group Inc.**

Effective: September 1, 2001

Effective September 1, 2001 it is understood and agreed that the DEDUCTIBLE CLAUSE of SECTION II: DOMESTIC TRANSIT is amended to read:

From each adjusted claim for loss or damage covered under this Section shall be deducted $1,000., each Bill of Lading seperately insured, unless such loss or damage be caused by accident, burning, or collision of the conveyance.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

By: _____

DATED: 08/08/2001
BROKER: FOA & SON CORP.

## Endorsement No. 6

Attached to and made part of Policy No. OC-95272000 of the FIREMAN'S FUND INSURANCE COMPANY issued to **Amerex Group Inc.**

Effective:  September 1, 2001

Effective September 1, 2001 it is understood and agreed that the DEDUCTIBLE CLAUSE of SECTION III: STORAGE COVERAGE is amended to read:

From each claim for loss or damage covered under this Section shall be deducted $1,000. each Bill of Lading seperately insured, unless such loss or damage be caused by fire.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

By: _____

DATED: 08/08/2001
BROKER: FOA & SON CORP.

Endorsement No. 5

Attached to and made part of Policy No. OC-95272000 of the FIREMAN'S FUND INSURANCE COMPANY issued to **Amerex Group Inc.**

Effective: September 1, 2001

Effective September 1, 2001 it is understood and agreed that the International Transit deductible Clause No. 32 is reduced from $3,000,000. to $1,000., each Bill of Lading seperately insured, unless such loss or damage be caused by stranding, sinking, burning, or collision, or General Average, or Salvage Charges.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

By: _Brian P. Fryer_

DATED: 08/07/2001
BROKER: FOA & SON CORP.

Endorsement No. 2

Attached to and made part of Policy No. OC-95272000 of the FIREMAN'S FUND INSURANCE COMPANY
issued to Amerex Group Inc.

Effective: June 15, 2001

## CONSEQUENTIAL DAMAGE COVERAGE

It is hereby understood and agreed that if any parts or parts of insured property (provided such part or parts clearly
identifiable as being a component part or parts of a single order, shipment or consignment), are physically lost or
damaged within the coverage of this policy thereby rendering the remaining undamaged part or parts
unmerchantable, then this Company will pay subject to the liability limits stated herein, the difference between (a)
the amount for which it would be liable according to the Valuation Clause contained herein if all parts of such
property had been physically lost or damaged and (b) the realizable value of the remaining undamaged part or parts
of said property, and meaning further that if in consequence of any direct physical loss or damage insured hereunder
a full lot or range of sizes or colors (provided such property is customarily sold by the Assured in lots or ranges of
sizes or colors and provided such lots or ranges of sizes of colors are clearly identifiable as being component part or
parts of a single order, shipment or consignment) is broken so as to reduce t..e value of the undamaged property
remaining in such lot or range, then this Company will pay (subject to the liability limits stated herein and provided
the Assured is unable to reassemble said lots or ranges of sizes or colors from the remaining undamaged property or
from any other source) the difference between (a) the amount for which it would be liable according to the Valuation
Clauses contained herein if all property in said lots or ranges of sizes or colors had been physically lost or damaged,
and (b) the realizable value of the undamaged property remaining in said broken lot or range of sizes or colors.

No claim shall be payable for Consequential Damage unless the Assured has, for a period of 21 days from the date
he has knowledge of the physical loss or damage, made a bona fide effort to replace the lost or damage property and
to refill or complete the lots or range of sizes or colors, which effort the Assured hereby agrees to make. This
Company may at its option require the Assured to surrender to it the remaining property damaged or undamaged,
upon paying or offering to pay any loss in accordance herewith. This Company shall not be liable for more than the
insured value with respect to any one loss, disaster or casualty involving consequential damage nor for more than
the applicable limit of liability, specified elsewhere in the policy for direct physical loss, with respect to any one loss,
disaster or casualty involving both consequential damage and direct physical loss.

In consideration of the foregoing coverage, it is understood and agreed that rates for this coverage is included in the
rates shown on the rate schedule attached to this policy.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

By: _Brian P. Foster_

DATED: 08/07/2001
BROKER: FOA & SON CORP.

Endorsement No. 3

Attached to and made part of Policy No. OC-95272000 of the FIREMAN'S FUND INSURANCE COMPANY issued to **Amerex Group Inc.**

Effective: June 15, 2001

## CONTROL OF DAMAGED GOODS

In case of damage to goods insured hereunder, the Assured and/or their representative are to retain control of all damaged goods which shall not be sold or otherwise disposed of without their consent. The Assured agrees whenever practicable to recondition and sell such goods after removal of all brands and/or trade marks.

Any recovery as a result of subrogation proceedings, after expenses incurred in such subrogation proceedings, shall accrue to the Assured in proportion that the amount of the deductible bears to the amount of the entire loss.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

By: _Brian P. Fagan_

DATED: 08/07/2001
BROKER: FOA & SON CORP.

## Endorsement No. 4

Attached to and made part of Policy No. OC-95272000 of the FIREMAN'S FUND INSURANCE COMPANY issued to **Amerex Group Inc.**

Effective:  June 15, 2001

Effective June 15, 2001 it is understood and agreed that Clause 4. COINSURANCE of SECTION III: STORAGE COVERAGE is deleted.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

By: _Brian P. Fogan_

DATED: 08/07/2001
BROKER: FOA & SON CORP.

## Section I: Ocean Marine Cargo - Endorsement No. 1

**Attached to and made part of Policy No. OC- 95272000 of the FIREMAN'S FUND INSURANCE COMPANY issued to Amerex Group Inc.**

**Effective: June 15, 2001**

### S.R.& C.C. ENDORSEMENT (FORM NO. 10)

It is hereby agreed that all shipments insured under this Policy are covered against Strikes, Riots and Civil Commotions risks upon the terms and conditions set forth in the following clauses:

This insurance also covers:

(1) physical loss of or damage to the property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions; and,

(2) physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this sub-section (2) be not excluded by the FC&S warranty in the policy to which this endorsement is attached.

While the property insured is at risk under the terms and conditions of this Insurance within the United States of America, the Commonwealth of Puerto Rico, the U. S. Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

a. change in temperature or humidity;
b. the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;
c. loss of market or loss, damage or deterioration arising from delay;
d. hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above;
e. nuclear reaction, radiation or radioactive contamination;

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefor at the rates established by the Company from time to time.

This endorsement may be canceled by either party upon forty-eight hours written or telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

BY: _____

# SECTION II: DOMESTIC TRANSIT

## 1. GEOGRAPHIC LIMITS
This policy is extended to cover, subject to its terms and conditions, transit within and between the States of the United States (excepting Alaska and Hawaii) and the District of Columbia.

## 2. CONVEYANCES
Attaching on shipments by any conveyance and, in all cases, including connecting conveyances.

## 3. LIMITS OF LIABILITY
This Company is not liable for more than **$3,000,000** per any one truck or truck/trailer or rail car or aircraft or waterborne conveyance or in any one place at any one time, but in no event for more than **$25,000** per any one package shipped by government or private mail or parcel post or parcel delivery service.

## 4. VALUATION
    A. Valued at Assured's selling price, less any unincurred expenses.

## 5. PERILS
Shipments of Outerwear Garments covered by this Section are insured against all risks of physical loss or damage from any external cause.

## DEDUCTIBLE
From each adjusted claim for loss or damage covered under this Section shall be deducted $3,000,000, each Bill of Lading separately insured.

## 6. REPORTING AND PAYMENT OF PREMIUM
Reporting and payment of premiums shall be in accordance with provisions of Clause 8 of Section I of this Policy.

# SECTION III: STORAGE COVERAGE

## 1. INTEREST
This Policy is extended to cover, subject to its terms and conditions, all goods held in storage (whether or not insured elsewhere in this Policy) by the Assured for their account as principals or as Agents for others, or for account of others with orders to insure, provided such orders are given in writing prior to the attachment of risk hereunder and prior to any known loss or damage.

## 2. GEOGRAPHIC LIMITS
Goods held in storage are insured worldwide at locations specified in this Section, except that there is no coverage for goods held in storage in countries which are the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

## 3. LIMITS OF LIABILITY
This Company is not liable for more than the amount set opposite each specified location in any one loss, disaster or casualty.

| Location Name and Address | Limit of Liability |
|---|---|
| 1500 Rahway Avenue<br>Avenel, NJ 07001 | $10,000,000<br>$5,000,000 Earthquake and Flood Annual Aggregate |
| M&L<br>1302 29th Street NW<br>Auburn, WA 98001 | $10,000,000<br>$5,000,000 Earthquake and Flood Annual Aggregate |
| Unnamed Domestic Locations | $3,000,000 for Locations with Central Station Burglary and Fire Alarms,Sprinklered, Masonry, Non-Combustible Locations, Reported within 60 days.<br>$500,000 All other locations |
| Named Russian Locations<br>On File with Company | $500,00 per Occurrence<br>$250,000 Earthquake and Flood Annual Aggregate |
| Unnamed Foreign Locations | $250,000 per Occurrence<br>$125,000 Earthquake and Flood Annual Aggregate |

## 4. COINSURANCE
In the event of loss, if the total value at risk at any location exceeds the applicable limit of liability provided by this Section, this Company shall be liable for no greater proportion of such loss than the applicable limit of liability bears to the total value at risk at the time such loss occurs.

## 5. VALUATION
Valued at:  the Assured's selling price, less unincurred expenses.

# INSURING CONDITIONS

## 6. PERILS

Outerwear Garments covered by this Section are insured against all risks of physical loss or damage from any external cause.

## DEDUCTIBLE

From each adjusted claim for loss or damage covered under this Section shall be deducted $5,000,000 for Unnamed locations, $1,000,000 for Russian locations, and $1,000 all other losses.

## 7. PERILS EXCLUDED

A. In no case shall this insurance cover loss or damage caused by or resulting from unexplained loss, mysterious disappearance or shortage disclosed upon taking inventory (except when in the custody of a bailee).

B. In no case shall this insurance cover loss or damage caused by or resulting from misappropriation, secretion, conversion, infidelity or any dishonest act done by or at the instigation of the Assured or other party of interest to the underlying purchase or sale transaction, or their employees or agents (bailees excepted).

C. In no case shall this insurance cover loss or damage caused by or resulting from processing of the goods, whether caused by a peril insured against or otherwise.

## ENDORSEMENT No. 2

Attached to and made part of War Risks Only Open Policy No. OCW95272000 of the FIREMAN'S FUND INSURANCE COMPANY issued to **Amerex Group Inc.**

Effective:  September 1, 2001

Effective September 1, 2001 it is understood and agreed that Policy OCW95272000 follows the Deductible structure of Marine Policy OC95272000.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

By: _____

DATED: 08/08/2001
BROKER: FOA & SON CORP.

# ENDORSEMENT No. 1

Attached to and made part of War Risks Only Open Policy No. CCW95272000 of the FIREMAN'S FUND INSURANCE COMPANY issued to **Amerex Group Inc.**

Effective:  June 15, 2001

Effective June 15, 2001 it is understood and agreed that Policy No. OCW95272000 follows the deductible structure of Marine Policy OC95272000.

All other terms and conditions remain unchanged.

Fireman's Fund McGee Marine Underwriters

By: _____

DATED: 08/08/2001
BROKER: FOA & SON CORP.

American Institute War Clauses (January 1994)

# FIREMAN'S FUND INSURANCE COMPANY
## NOVATO, CA

## WAR RISKS ONLY
## OPEN CARGO POLICY NO. OCW 95272000

### ASSURED
The FIREMAN'S FUND INSURANCE COMPANY, hereinafter referred to as this Company, in consideration of premiums as agreed to be paid, does insure, lost or not lost,

Amerex Group Inc.
1500 Rahway Av.
Avenel, NJ 07001

for account of whom it may concern, against **WAR RISKS ONLY**, in accordance with the terms and conditions hereinafter set forth.

### LOSS PAYABLE
Any loss payable hereunder shall be payable in funds current in the United States of America, to the order of the Assured, thirty days after full proofs of loss and proofs of interest have been filed with this Company.

### ATTACHMENT
This insurance shall attach as provided in Clause 4, upon all those shipments made on and after June 15, 2001 which are insured against marine risks under Policy No. OC- 95272000 of this Company, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas Vessel (which shall be construed to include aircraft if included under the marine policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under the said Policy against marine risks, shall be deemed incorporated herein. Notwithstanding the foregoing, this policy shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

### LIMIT OF LIABILITY
This Company shall not be liable hereunder for more than the applicable limit set forth in the marine policy.

In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this Policy, the Assured agrees, nevertheless, to report to the Company full value(s) at risk and to pay premium thereon at agreed rates. The Assured further agrees that acceptance of such reports and premium by the Company shall not serve to revoke or to overrule the limit of liability set forth in this Policy; however, subject to the limit of liability, the Company in accepting these reports does agree to pay partial losses covered by this Policy without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

Subject to the provisions of Clause 4 of this Policy, should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the Assured or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port or place by another Vessel, and/or on the on-carrying overseas Vessel, this Policy shall attach for the full amount at risk (but in no event for more than twice the Policy limit which would be applicable to any one Vessel) provided written notice be given to this Company as soon as known to the Assured.

1.    (a) This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. Warranted not to abandon (on any ground other than physical damage to ship and cargo) until after condemnation of the property insured.

(b) This insurance also covers, but only while the property is on board a waterborne conveyance, loss or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical damage as a result of such accident or occurrence.

2. Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

3. This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following whether due to a peril insured against or otherwise:

(a) Commandeering, preemption, requisition or nationalization by the government (de facto or otherwise) of the country to or from which the goods are insured.
(b) Seizure or destruction under quarantine, environmental or customs regulations.
(c) Delay, deterioration and/or loss of market.
(d) Nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

4.  (a) The insurance against the risks enumerated in Clause 1, except the risk of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof

> (i) prior to being on board an overseas Vessel (for the purpose of this Clause 4 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel).
> (ii) after being discharged overside from an overseas Vessel at the intended port or place of discharge, or after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port or place of discharge, whichever shall first occur.
> (iii) after expiry of 15 days from midnight of the day of arrival of the overseas Vessel at an intermediate port or place to discharge the interest for on-carriage from that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying overseas Vessel. During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between overseas Vessels.
> (iv) For the purposes of this Clause 4, arrival at the intended port or place of discharge shall be deemed to mean that time when the overseas Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

(b)  The insurance against the risks of floating or stationary mines or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouse at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

(c)  If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 4.

(d)  Shipments by mail, if covered by this Policy, are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

(e)  Shipments by air (other than as air mail), if covered by this Policy are insured subject to the same terms and conditions as shipments by overseas Vessel.

(f)  It is a condition of this insurance that the Assured shall act with reasonable dispatch in all circumstances within their control.

(g)  If anything contained in this Policy shall be inconsistent with Clause 4 it shall to the extent of such inconsistency be null and void.

5.  This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, vessel or voyage, provided the same be communicated to the Company as soon as known to the Assured and an additional premium paid if required.

6.      And in case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants and assigns to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or Company, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of abandonment; and to the charges whereof, the said Company will contribute according to the rate and quantity of the sum hereby insured.

7.      General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

8.      It is agreed that the reports of shipments made under the Policy against marine risks mentioned above shall be deemed to be reports under this Policy also, and the Assured agrees to pay premiums on all shipments insured under this Policy at the war risk rates of the Company as fixed from time to time.

9.      No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of the paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

10.      No recovery for a Constructive Total Loss shall be had hereunder unless the property is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

11.      It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms and conditions shall have been expressly incorporated herein by reference.

12.      This insurance may be canceled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 4 hereof prior to the effective date of such notice. Shipments on which this insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and (in the case of exports) Certificates or special policies have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 4, at the rates of the Company, provided that, prior to said effective date, such shipments were at risk of the Assured and were covered under the said Policy against marine risks.

In the event of loss which may give rise to a claim under this Policy, prompt notice shall be given to this Company.

Dated at <u>New York</u> this <u>7th</u> of <u>August, 2001</u>.

In witness hereof, this Company has caused this Policy to be signed by its duly authorized officers but this Policy shall not be valid unless countersigned by an authorized representative of the Company.

SECRETARY

PRESIDENT

Countersigned By:

Fireman's Fund McGee Marine Underwriters

# COMMERCIAL OUTPUT POLICY – DECLARATIONS

The Company issuing this policy is indicated by the Company Code (first letter or number) in the POLICY NUMBER, as follows:
**A STOCK COMPANY**

| POLICY NUMBER | | |
|---|---|---|
| Co. Code | Prefix | Number |
| **01** | **MXI-97121154** | |

**01 - Fireman's Fund Insurance Company**
**11 - Fireman's Fund Insurance Company of Georgia**
**12 - Fireman's Fund Insurance Company of Hawaii**
**13 - Fireman's Fund Insurance Company of Louisiana**
**14 - Fireman's Fund Insurance Company Wisconsin**
**15 - Fireman's Fund Insurance Company Ohio**
**16 - Fireman's Fund Indemnity Corporation**

Renewal of Policy Number

<u>NEW</u>

**Fireman's Fund McGee**
**Marine Underwriters**
2 WORLD TRADE CENTER, NEW YORK, NY 10048
TEL: 212-524-8600 FAX: 212-524-9362

Insureds Name & Address

Producer's or Agent's Name & Address

**AMEREX GROUP, INC. ET AL**
**1500 RAHWAY AVENUE**
**AVENEL, NJ 07001**

**FOA & SON CORP.**
**60 EAST 42ND STREET, SUITE 2300**
**NEW YORK, NY 10165-2399**

**Policy Period.** Coverage under this policy is in effect from <u>06/15/2001</u> (12:01 A.M. Standard Time) to <u>06/15/2002</u> (12:01 AM, Standard Time) for <u>1</u> year(s).

Secretary

President

Countersigned at     NEW YORK, NY

bt

AUGUST 6, 2001
Date

Authorized Signature

COP – 100B (7/96)
Page 1 of 2

**COMMERCIAL OUTPUT POLICY – DECLARATIONS**

| POLICY NUMBER | | |
|---|---|---|
| Co. Code | Prefix | Number |
| 01 | MXI-97121154 | |

**BUILDING PROPERTY AND BUSINESS PERSONAL PROPERTY COVERAGES**

☐ Property Covered at any one location $
☒ Refer to Scheduled Locations Endorsement
☐ Replacement Cost applies

**TIME ELEMENT COVERAGES**

☐ Blanket Total Income Coverage Limits $
☐ Extra Expense Coverage $
☒ Refer to Schedule of Locations Endorsement

**INCOME COVERAGE OPTIONS (check one)**          **Period of Loss Extension**

☐ Earnings, rents and extra expense                      **Total Days**
☒ Earnings and extra expense
☐ Rents and extra expense

**DEDUCTIBLE AMOUNT $**See COP-234

**OTHER** ·

**OTHER ENDORSEMENTS MADE A PART OF THIS POLICY AT TIME OF ISSUE**
COP100 Ed. 2.0, CL100 Ed. 2.0, CL0146 Ed. 10/98, COP101 Ed. 2.0, COP220 Ed. 2.0, COP221 Ed. 2.0,
COP222 Ed. 2.0, COP223 Ed. 2.0, COP226 Ed. 2.0, COP227 Ed. 2.0, COP228 Ed. 2.1, COP229 Ed. 2.1,
COP234 Ed. 2.0, COP243 Ed. 1.0, COP244 Ed. 1.0, Endorsement No. 1, Endorsement No. 2

**MORTGAGE HOLDER NAME AND ADDRESS**              **LOCATION**

**PREMIUM PAYABLE AT INCEPTION $ 34,000.**

**Commission Rate:   15%**

Policy Number:    MXI-97121154          Named Insured:    AMEREX GROUP, INC. ET AL

## Endorsement No. 1

### NAMED INSURED

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

#### COMMERCIAL OUTPUT POLICY DECLARATIONS

**EFFECTIVE:  June 15, 2001**

**The Named Insured:**
Aero Sports Inc.
Amerex Children Wear Inc.
Amerex Childrenswear
Amerex Group Inc.
Amerex Industries, Ltd.
Amerex Intercontinental, Inc.
Amerex International (H.K.) Ltd.
Amerex of California
Amerex of California Corp.
Amerex of California Mens
Daddy's Fashions of California Inc.
Daddy's Fashions, Inc.
General Granite Marble Corp.
Gerry Sportswear Company, LLC
Globex Corp.
Globex Sportswear Ltd.
Harper Hale Corp.
J.C. Amerport Inc.
K & R Kids LLC
Knitted Products Ltd.
M&L International (HK) Limited
M&L International Group LLC
M&L International Inc.
Mulberry Street Casuals, Ltd.
Not Just Coats Inc.
Regal Accessories Inc.
Regal Menswear
Regal of California Inc.
Sino Development Corp.
Stream Design/a Division of Amerex of California
Trail Designs/a Division of Amerex of California
Woodbridge Enterprises L.P.
Woodbridge Enterprises Ltd.

All other terms and conditions remaining unchanged.

Attached to and forming part of **Policy No. 01 MXI 97121154**
of the **FIREMAN'S FUND INSURANCE COMPANY**

bt

Policy Number:    MXI-97121154        Named Insured:    AMEREX GROUP, INC. ET AL

# Endorsement No. 2

## CANCELLATION

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMON POLICY CONDITIONS/
AMENDATORY ENDORSEMENT – NEW JERSEY

**EFFECTIVE:  June 15, 2001**

**The change is made to COMMON POLICY CONDITIONS - form CL100 as follows:**

2.    **Cancellation ( 3rd Paragraph)**

If "we" cancel this policy for nonpanyment of premium, "we" will give "you" notice at least ten days before the cancellation is effective.  If "we" cancel this policy for any other reason, "we" will give "you" notice at least 90 days in advance of cancellation.  The notice will state the time that the cancellation is to take effect.

**The change is made to AMERDATORY ENDORSEMENT – NEW JERSEY (CL0146) as follows:**

All the number "30" (days) in this endorsement are changed to read:  **90 (days)**.

All other terms and conditions remaining unchanged.

Attached to and forming part of **Policy No. 01 MXI 97121154**
of the **FIREMAN'S FUND INSURANCE COMPANY**

bt

AAIS
CL-100  Ed 2.0
Page 1 of 1

# COMMON POLICY CONDITIONS

1. **Assignment** -- This policy may not be assigned without "our" written consent.

2. **Cancellation** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

   "We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If "we" cancel this policy for nonpayment of premium, "we" will give "you" notice at least ten days before the cancellation is effective. If "we" cancel this policy for any other reason, "we" will give "you" notice at least 30 days in advance of cancellation. The notice will state the time that the cancellation is to take effect.

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification, or Waiver of Policy Terms** -- A waiver or change of the "terms" of this policy must be issued by "us" in writing to be valid.

4. **Inspections** -- "We" have the right, but are not obligated, to inspect "your" property and operations at any time. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for "our" benefit only.

5. **Examination of Books and Records** -- "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

CL-100  Ed 2.0
Copyright MCMXCIV
American Association of Insurance Services

# COMMERCIAL OUTPUT PROGRAM -- PROPERTY COVERAGE PART

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Commercial Output Program. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Computers" means:

   a. "hardware" owned by "you" or in "your" care, custody, or control; or

   b. "software".

4. "Covered locations" means any location or premises where "you" have buildings, structures, or business personal property covered under this coverage.

5. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

6. "Fine arts" means paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit.

7. "Hardware" means a network of electronic machine components capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

8. "Limit" means the amount of coverage that applies.

9. "Mobile equipment" means:

   a. contractors' equipment or similar equipment of a mobile or floating nature;

   b. self-propelled vehicles designed and used primarily to carry mounted equipment; or

   c. vehicles designed for highway use that are unlicensed and not operated on public roads.

10. "Pollutant" means:

   a. any solid, liquid, gaseous or thermal irritant, or contaminant;

   b. electromagnetic (visible or invisible) or sound emission; or

   c. waste, including materials to be disposed of as well as recycled, reclaimed, or reconditioned.

11. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

12. "Software" means:

    a. processing, recording, or storage media used for electronic data processing operations. This includes films, tapes, cards, discs, drums, cartridges, or cells.

    b. data, including instructions or information, stored on processing, recording, or storage media used for electronic data processing operations.

13. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

    Falling objects does not include loss to business personal property in the open, to the interior of buildings or structures, or business personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

    Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

14. "Terms" are all provisions, limitations, exclusions, conditions, and definitions that apply.

15. "Valuable papers and records" means inscribed, printed, or written documents; manuscripts; or records. This includes abstracts, books, deeds, drawings, films, maps, or mortgages.

16. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

"We" cover direct physical loss to covered property at "covered locations" caused by a covered peril. "We" cover the following types of property.

### BUILDING PROPERTY

This means buildings and structures including:

1. completed additions;

2. fixtures, machinery, and equipment which are a permanent part of a covered building or structure;

3. outdoor fixtures;

4. personal property owned by "you" and used to maintain or service a covered building or structure or its premises. This includes air-conditioning equipment; fire extinguishing apparatus; floor coverings; and appliances for refrigerating, cooking, dish washing, and laundering;

5. if not covered by other insurance:

    a. buildings and additions to buildings under construction, alteration, and repair;

b.  materials, equipment, supplies, and temporary structures, on or within 1,000 feet of "covered locations", used for the construction, alteration, and repair of buildings or additions to buildings;

6.  building glass;

7.  the following property if it is located on or within 1,000 feet of a covered building or structure:

    a.  radio and television towers, antennas, satellite dishes, masts, lead-in wiring, and guy wires. This includes foundations and any other property that is permanently attached to any of these types of property;

    b.  awnings or canopies; and

    c.  fences.

8.  signs, whether or not they are attached to covered buildings, or structures.

## BUSINESS PERSONAL PROPERTY

This means "your" business personal property in buildings or structures at "covered locations" or in the open (or in vehicles) on or within 1,000 feet of "covered locations". This includes:

1.  "your" use interest as a tenant in improvements to the buildings or structures. Improvements are fixtures, alterations, installations, or additions:

    a.  to a building or structure "you" occupy but do not own; and

    b.  made or acquired at "your" expense and which cannot be legally removed by "you".

2.  leased personal property which "you" have a contractual responsibility to insure.

3.  "your" interest in personal property of others to the extent of "your" labor, material, and services.

4.  "computers", if not covered by other insurance.

5.  personal property which will become a part of "your" installation, fabrication, or erection project while:

    a.  at the site of installation, fabrication, or erection; or

    b.  while in temporary storage awaiting installation, fabrication, or erection.

    Coverage under this provision is not restricted to buildings or structures at "covered locations" or within 1,000 feet of "covered locations".

6.  "mobile equipment", if not covered by other insurance. Coverage under this provision is not restricted to buildings or structures at "covered locations" or within 1,000 feet of "covered locations".

7.  personal property of others. This means personal property of others that is in "your" care, custody, or control.

    Personal property of others includes property that is sold under an installation agreement where "your" responsibility continues until the property is accepted by the buyer.

    "Our" payment for loss to personal property of others will only be for the benefit of the owners of the personal property.

AAIS
COP-100  Ed 2.0
Page 4 of 21

## PROPERTY NOT COVERED

1.  **Airborne or Waterborne Property --** "We" do not cover airborne or waterborne personal property unless the property is being transported by regularly scheduled airlines or ferry service.

2.  **Aircraft or Watercraft --** "We" do not cover aircraft or watercraft (including their motors, equipment, and accessories) that are operated principally away from "covered locations". However, "we" do cover:

    a.  aircraft or watercraft (including their motors, equipment, and accessories) that "you" manufacture, process, warehouse, or hold for sale; and

    b.  rowboats or canoes out of water at "covered locations".

3.  **Animals --** "We" do not cover animals, including birds and fish, unless owned by others and boarded by "you". "We" do cover animals "you" own and hold for sale.

4.  **Automobiles and Vehicles --** "We" do not cover automobiles, motor trucks, tractors, trailers, and similar conveyances designed and used for over-the-road transportation of people or cargo.

    "We" do cover:

    a.  "mobile equipment" described as Business Personal Property; and

    b.  automobiles and vehicles that "you" manufacture, process, or warehouse. However, "we" do not cover automobiles or vehicles held for sale.

5.  **Contraband --** "We" do not cover contraband or property in the course of illegal transportation or trade.

6.  **Crops --** "We" do not cover grain, hay, straw, or other crops when outdoors.

7.  **Exports and Imports --** "We" do not cover exported or imported property that is covered under any ocean marine cargo insurance policy or any similar policy that anyone has obtained covering exports and imports.

8.  **Land, Water, or Cost of Excavation --** "We" do not cover:

    a.  land, including land on which the covered property is located;

    b.  underground or surface water; or

    c.  cost of excavations, grading, or filling.

9.  **Money and Securities --** "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

10. **Property More Specifically Insured --** "We" do not cover property which is more specifically insured in whole or in part by any other insurance. "We" do cover the amount in excess of the amount due from the more specific insurance.

11. **Property of Others --** "We" do not cover property of others for which "you" are responsible as:

    a.  a carrier for hire; or

    b.  an arranger of transportation. This includes carloaders, consolidators, brokers, freight forwarders, or shipping associations.

12. **Property You Have Sold --** "We" do not cover property that "you" have sold after it has been delivered. This does not include property which "you" have sold under an installation agreement.

AAIS
COP-100 Ed 2.0
Page 5 of 21

## ADDITIONAL COVERAGES

1. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

   a. extract "pollutants" from land or water; or

   b. remove, restore, or replace polluted land or water.

   "We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

   However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

   "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Emergency Removal** -- "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" will pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

3. **Fire Department Service Charges** -- "We" pay up to $5,000 to cover "your" liability, assumed by contract or agreement prior to the loss, for fire department service charges.

   This coverage is limited to charges incurred when the fire department is called to save or protect covered property from a covered peril.

   No deductible applies.

4. **Pollutant Cleanup and Removal** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

   "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

   The most "we" pay for each site or location is $25,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

5. **Recharge of Fire Protection Equipment** -- "We" pay up to $10,000 to cover "your" incurred expenses to recharge automatic fire protection equipment when the equipment is discharged to fight a fire or as a result of a covered peril.

## SUPPLEMENTAL COVERAGES

"We" provide the following supplemental coverages and unless otherwise stated, each supplemental coverage:

   a.   applies to loss caused by a covered peril;

   b.   applies to covered property in or on buildings or structures at "covered locations" or in the open (or in vehicles) within 1,000 feet of the "covered locations"; and

   c.   is not subject to and not considered in applying coinsurance when coinsurance conditions are added to this coverage.

1. **Arson Reward** -- "We" pay up to $5,000 as reward for information that leads to an arson conviction. The conviction must be for a covered fire loss. The amount "we" pay is not increased by the number of persons involved in providing the information.

2. **Brands or Labels Expense** -- If covered business personal property is damaged, "we" have the option to take all or any part of the damaged business personal property at the agreed or appraised value. "You" may stamp salvage or remove any brands or labels from the property or its containers. "You" must not damage the property or containers when "you" remove the brands or labels. "You" must relabel the merchandise or its containers if required by law.

   "We" pay up to $50,000 for "your" expenses for stamping or removing brands or labels.

3. **Consequential Loss** -- "We" pay up to $10,000 for the consequential loss of undamaged business personal property. Consequential loss means the loss of value of an undamaged part or parts of a product which becomes unmarketable. It must be unmarketable due to a physical loss to another part or parts of the product caused by a covered peril.

4. **Foundations of Buildings, Pilings, and Underground Pipes** -- "We" pay up to $250,000 or 10% of the "limit" shown on the "declarations" for covered property at any one "covered location", whichever is less for loss to:

   a.   foundations of buildings, structures, machinery, or boilers if their foundations are below:

      1)   the lowest basement floor; or
      2)   the surface of the ground, if there is no basement;

   b.   pilings, piers, wharves, docks, or retaining walls;

   c.   underground pipes, flues, or drains.

5. **Inventory and Appraisals Expenses** -- "We" pay up to $50,000 for reasonable expenses, for the taking of inventory and appraisals, incurred by "you" at "our" request to assist "us" in the determination of the amount of a covered loss.

   "We" do not pay for:

   a.   any expenses incurred under the Other Conditions, Appraisal section of this coverage; or

   b.   any public adjusters' fees.

AAIS
COP-100 Ed 2.0
Page 8 of 21

1)  of like kind, and quality;
2)  of the same height, floor area, and style; and
3)  used for the same purpose; or

b.  $50,000.

8.  **Personal Effects** -- "We" pay up to $10,000 at each "covered location" for personal effects owned by "you", "your" officers, "your" partners, or "your" employees.

9.  **Personal Property - Acquired Locations** -- When the Locations and Scheduled Locations Endorsements are attached to this coverage, "we" cover "your" business personal property at locations that "you" acquire during the policy period. "We" do not cover personal property at fairs or exhibitions except as provided under Property On Exhibition.

This coverage applies for 90 days from the date "you" acquire the location or until "you" report the acquired location to "us" whichever occurs first. This coverage does not go beyond the end of the policy period.

"You" must pay any additional premium due from the date "you" acquire the location.

"We" pay up to $250,000 for loss to business personal property at acquired locations in any one occurrence.

10.  **Trees, Shrubs, and Plants** -- "We" pay up to $50,000 including debris removal expenses, for "your" outdoor trees, shrubs, plants, and lawns except for those held for sale. "We" only cover loss caused by:

a.  fire;

b.  lightning;

c.  explosion;

d.  riot or civil commotion; or

e.  falling objects.

## SUPPLEMENTAL MARINE COVERAGES

"We" provide the following Supplemental Marine Coverages and unless otherwise stated, each supplemental marine coverage:

a.  applies to loss caused by a covered peril; and

b.  is not subject to and not considered in applying coinsurance when coinsurance conditions are added to this coverage.

1.  **Accounts Receivable** -- "We" pay up to $50,000 to cover losses and expenses that "you" incur as a result of loss or damage to "your" records of accounts receivable.

Losses and expenses under this coverage means:

a.  all sums due "you" from customers, provided "you" are unable to effect collection;

b.  interest charges on any loan used to offset impaired collections pending prepayment of such sums made uncollectible by loss or damage;

c.  collection expenses in excess of normal collection costs made necessary because of loss or damage;

d.  other reasonable expenses incurred by "you" in recreating records of accounts receivable following such loss or damage.

2.  **Fine Arts** -- "We" pay up to $50,000 for "your" "fine arts" at "covered locations".

6. **Newly Acquired Buildings** -- When the Locations and Scheduled Locations Endorsements are attached to this coverage, "we" cover "your" buildings or structures being built or that "you" acquire during the policy period.

This coverage applies for 90 days from the date "you" acquire or begin to construct the building or structure or until "you" report the newly acquired property to "us", whichever occurs first. This coverage does not go beyond the end of the policy period.

"You" must pay additional premium due from the date construction is started or "you" acquire the property.

"We" pay up to $500,000 for loss to each building or structure in any one occurrence.

7. **Ordinance or Law** -- When a covered peril occurs to covered buildings or structures, "we" cover:

   a. loss caused by the enforcement of any ordinance, law, or decree that:

      1) requires the demolition of undamaged parts of covered buildings or structures that are damaged or destroyed by a covered peril;

      2) regulates the construction or repair of buildings or structures, or establishes building, zoning, or land use requirements at "covered locations"; and

      3) is in force at the time of loss.

   b. the increased cost to repair, rebuild, or construct covered buildings or structures as a result of the enforcement of building, zoning or land use ordinance, law, or decree. If covered buildings or structures are repaired or rebuilt, they must be intended for similar

occupancy as the current property, unless otherwise required by building, zoning or land use ordinance, law, or decree.

   c. the cost to demolish and clear the site of undamaged parts of covered buildings or structures that are damaged or destroyed by a covered peril as a result of the enforcement of the building, zoning or land use ordinance, law, or decree.

"We" do not cover the costs associated with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants".

"We" do not cover the increased cost of construction until the covered building or structure is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

If the covered building or structure is repaired or replaced, "we" pay the lesser of:

   a. the amount "you" actually spend to demolish and clear the site, plus the amount "you" actually spend to repair, rebuild, or construct the property but not for more than buildings or structures of the same height, floor area, and style; or

   b. $50,000.

If the covered building or structure is not repaired or replaced, "we" pay the lesser of:

   a. the amount "you" actually spend to demolish and clear the site, plus the cost to replace the damaged or destroyed property with other property:

3. **Property on Exhibition** -- "We" pay up to $50,000 for covered business personal property while temporarily on display or exhibit at locations "you" do not regularly occupy.

4. **Property in Transit** -- "We" pay up to $50,000 in any one occurrence for covered business personal property (other than property in the care, custody, or control of "your" sales representatives) while in transit, regardless if the loss involves one or more vehicles, conveyances, containers, trailers, or any combination of these.

5. **Sales Representative Samples** -- "We" pay up to $50,000 for samples of "your" stock in trade (including containers) and similar property of others.

   "We" cover samples of "your" stock in trade while the property is:

   a. in the custody of "your" sales representatives and agents;

   b. in "your" custody while acting as a sales representative; or

   c. in transit between "your" "covered locations" and "your" sales representatives.

6. **Valuable Papers and Records - Cost of Research** -- "We" pay up to $50,000 for the cost of research or other expenses necessary to reproduce, replace, or restore lost information on lost or damaged "valuable papers and records". This includes those "valuable papers and records" which exist on electronic or magnetic media for which duplicates do not exist.

## PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Ordinance or Law** -- Except as provided under Supplemental Coverages, "we" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

   b. **Earth Movement or Volcanic Eruption** -- "We" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to: earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

"We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either earth movement or eruption, explosion, or effusion of a volcano.

All volcanic eruptions that occur within a 168 hour period shall be considered a single loss.

This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

c. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Utility Failure** -- "We" do not pay for loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the "covered locations". Interruption includes reduced or increased voltage, low or high pressure, or other interruptions of normal services.

"We" do cover the direct loss by a covered peril which occurs at "covered locations" as a result of any power interruption.

This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

f. **War** -- "We" do not pay for loss caused by war. This means:

1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
2) a warlike act by a military force or by military personnel;
3) the destruction, seizure, or use of the property for a military purpose; or
4) the discharge of a nuclear weapon even if it is accidental.

g. **Water** -- "We" do not pay for loss caused by water. This means:

1) flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not;
2) water that backs up through a sewer or drain; and
3) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building or structure, sidewalk, driveway, foundation, swimming pool, or other structure.

If fire, explosion, or sprinkler leakage results, "we" do cover the resulting loss.

This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

a. **Animals** -- "We" do not pay for loss caused by animals, including birds, insects, or vermin. "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

b. **Collapse** -- "We" do not pay for loss caused by collapse, except as provided under the Other Coverages, Collapse. If loss caused by a covered peril results at the "covered locations" "we" will pay for that resulting loss.

   This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

c. **Contamination or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in covered property that causes it to damage or destroy itself. "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

   However, "we" do cover loss caused by corrosion, decay, fungus, mildew, mold, rot, or rust to "computers" that results from direct physical damage by a covered peril to the air conditioning system that services "your" "computers".

d. **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

   1) "you";
   2) others who have an interest in the property;

   3) others to whom "you" entrust the property;
   4) "your" partners, officers, directors, trustees, joint adventurers; or
   5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

   This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

   This exclusion does not apply to covered property in the custody of a carrier for hire.

e. **Defects, Errors, and Omissions** -- "We" do not pay for loss which results from one or more of the following:

   1) an act, error, or omission (negligent or not) relating to:

      a) land use;
      b) the design, specification, construction, workmanship, installation, or maintenance of property;
      c) planning, zoning, development, siting, surveying, grading, or compaction; or
      d) maintenance of property (including land, structures, or improvements);

      whether on or off the "covered locations";

   2) a defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair, whether on or off the "covered locations";
   3) the cost to make good an error in design; or
   4) a data processing error or omission in programming or giving improper instructions.

In addition, "we" do not pay for loss to business personal property caused by deficiencies or defects in design, specifications, materials, or workmanship, or caused by latent or inherent defects.

"We" do cover any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

f.  **Electrical Currents** -- "We" do not pay for loss caused by arcing or by electrical currents other than lightning. If a fire results, "we" cover only the loss caused by fire.

"We" do cover the direct loss by a covered peril which occurs at "covered locations" as a result of any power interruption or other utility services.

g.  **Explosion** -- "We" do not pay for loss caused by explosion of steam boilers, steam pipes, steam turbines, or steam engines that "you" own or lease or that are operated under "your" control. If a fire or combustion explosion results, "we" do cover the resulting loss. "We" also cover loss caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

h.  **Freezing** -- "We" do not pay for loss caused by water; other liquids; powder; or molten material that leaks or flows from plumbing, heating, air-conditioning systems, or appliances other than fire protective systems caused by freezing. This does not apply if "you" use reasonable care to maintain heat in the building or structure; or "you" drain the equipment and turn off the supply if the heat is not maintained.

i.  **Increased Hazard** -- "We" do not pay for loss occurring while the hazard has been materially increased by any means within "your" knowledge or "your" control.

j.  **Loss of Use** -- "We" do not pay for loss caused by loss of use, business interruption, delay, or loss of market.

k.  **Mechanical Breakdown** -- "We" do not pay for loss caused by mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force. "We" do cover any resulting loss caused by a "specified peril", breakage of building glass, or elevator collision.

This exclusion does not apply to "computers".

l.  **Neglect** -- "We" do not pay for loss caused by "your" neglect to use all reasonable means to save covered property at and after the time of loss.

"We" do not pay for loss caused by "your" neglect to use all reasonable means to save and preserve covered property when endangered by a covered peril.

m.  **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

n.  **Seepage** -- "We" do not pay for loss caused by continuous or repeated seepage or leakage of water or steam that occurs over a period of 14 days or more.

o.  **Settling, Cracking, Shrinking, Bulging, or Expanding** -- "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs. "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

This exclusion does not apply to "computers" and "mobile equipment".

p.  **Smog, Smoke, Vapor, or Gas** -- "We" do not pay for loss caused by smog, smoke, vapor, or gas from agricultural smudging or industrial operations.

This exclusion does not apply to "computers" and "mobile equipment".

q.  **Temperature/Humidity** -- "We" do not pay for loss to personal property caused by humidity or changes in or extremes of temperature. "We" will cover any resulting loss caused by "specified perils" or breakage of building glass.

However, "we" do pay for loss to "computers" that results from direct physical damage by a covered peril to the air conditioning system that services "your" "computers".

r.  **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

s.  **Wear and Tear** -- "We" do not pay for loss caused by wear and tear, marring, or scratching.

"We" do pay for any resulting loss caused by a "specified peril" or breakage of building glass.

t.  **Weather** -- "We" do not pay for loss caused by weather conditions if the weather conditions contribute in any way with a cause or event excluded in paragraph 1. above.

"We" do pay for any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

## ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS

1.  **Accounts Receivable** -- "We" do not cover loss to accounts receivables that is a result of:

a.  an error or omission in bookkeeping, accounting, or billing;

b.  "your" discovery of a discrepancy in "your" books or records if an audit or inventory computation is necessary to prove the factual existence of the discrepancy.

2.  **Animals** -- "We" do not cover loss to animals, including birds and fish, except death or destruction of animals held for sale caused by "specified perils" or breakage of building glass.

3.  **Boilers** -- "We" do not cover loss to steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment. "We" do cover loss to such equipment caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

"We" do not cover loss to hot water boilers or heaters caused by any condition or occurrence within such equipment other than explosion. This exclusion includes bursting, cracking, or rupturing.

AAIS
COP-100  Ed 2.0
Page 14 of 21

4. **Furs** -- "We" do not cover furs or fur garments for loss by theft for more than $10,000 total in any one occurrence.

5. **Glassware/Fragile Articles** -- "We" do not cover breakage of fragile articles such as glassware, statuary, porcelains and bric-a-brac, except as a result of "specified perils" or breakage of building glass. This does not apply to glass that is a part of a building or structure, bottles or other containers held for sale, or lenses of photographic and scientific instruments.

6. **Gutters and Downspouts** -- "We" do not cover loss to gutters and downspouts caused by the weight of ice, sleet, or snow.

7. **Interior of Buildings** -- "We" do not cover loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain, snow, sleet, ice, sand, or dust, unless:

   a. entering through openings made by a "specified peril"; or

   b. the loss is caused by the thawing of snow, sleet, or ice on the building or structure.

8. **Jewelry, Watches, Jewels, Pearls, Precious Stones, and Metals** -- "We" do not cover more than $10,000 total in any one occurrence for loss by theft of jewelry; watches; watch movements; jewels; pearls; precious or semi-precious stones; gold, silver, or other precious metals; or items consisting primarily of precious metals. This limitation does not apply to items of jewelry or watches worth $100 or less.

9. **Missing Property** -- "We" do not cover missing property when the only proof of loss is unexplained or mysterious disappearance, or shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property.

This exclusion does not apply to property in the custody of carriers for hire.

10. **Personal Property in the Open** -- "We" do not cover loss to personal property in the open caused by rain, snow, ice, or sleet.

This exclusion does not apply to "mobile equipment" or to property in the custody of carriers for hire.

11. **Stamps, Tickets, and/or Letters of Credit** -- "We" do not cover more than $5,000 total in any one occurrence for loss to stamps, tickets (including lottery tickets held for sale), or letters of credit by theft.

12. **Transferred Property** -- "We" do not cover loss to property that has been transferred to a person or to a place away from the "covered locations" on the basis of unauthorized instructions.

13. **Valuable Papers and Records** -- "We" do not cover loss to "valuable papers and records" caused by errors or omissions in processing or copying except as a result of "specified perils" or breakage of building glass.

## OTHER COVERAGES

1. **Collapse** -- "We" pay for loss caused by direct physical loss involving collapse of a covered building or structure or any part of a building or structure caused only by one or more of the following:

   a. "specified perils"; all only as covered in Commercial Output Program Coverages;

   b. hidden decay;

   c. hidden insect or vermin damage;

d.   weight of people or business personal property;

e.   weight of rain that collects on a roof; or

f.   the use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

"We" do not pay for loss to the following types of property, if otherwise covered under Commercial Output Program Coverage, under items a. through f. above, unless the loss is a direct result of the collapse of a building or structure:

outdoor awnings or canopies or their supports; fences; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves, and docks; beach or diving platforms or appurtenances; retaining walls; foundations; walks, roadways, and other paved surfaces.

2.   **Tearing Out and Replacing** -- When "we" cover buildings or structures and a loss caused by:

a.   water;

b.   other liquids;

c.   powder; or

d.   molten material

is covered, "we" also pay the cost of tearing out and replacing any part of the covered building or structure to repair damage to the system or appliance from which the water or other substance escapes.

"We" do not pay for damage to the system or appliance from which the water or other substance escapes. However, "we" pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system; or is directly caused by freezing.

## WHAT MUST BE DONE IN CASE OF LOSS

1.   **Notice** -- In case of a loss, "you" must:

a.   give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice);

b.   give notice to the police when the act that causes the loss is a crime; and

c.   give notice to the credit card company if the loss involves a credit card.

2.   **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs. or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However "we" will not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3.  **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a.  the time, place, and circumstances of the loss;

   b.  other policies of insurance that may cover the loss;

   c.  "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d.  changes in title or occupancy of the covered property during the policy period;

   e.  detailed estimates for repair or replacement of covered property;

   f.  an inventory of damaged and undamaged covered property showing in detail the quantity, description, cost, actual cash value, and amount of the loss. "You" must attach to the inventory copies of all bills, receipts, and related documents that substantiate the inventory.

4.  **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5.  **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6.  **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7.  **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8.  **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9.  **Cooperation** -- "You" must cooperate with "us" in performing all acts required by the Commercial Output Program Coverages.

## VALUATION

1.  **Actual Cash Value** -- When replacement cost is not shown on the "declarations" for covered property, the value of covered property will be based on the actual cash value at the time of the loss (with a deduction for depreciation) except as provided in paragraphs 3. through 9. below.

2.  **Replacement Cost** -- When replacement cost is shown on the "declarations" for covered property, the value of covered property will be based on the replacement cost without any deduction for depreciation.

   The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

This replacement cost provision does not apply to paragraphs 3. through 9. below.

3.  **Fine Arts** -- The value of "fine arts" will be based on actual cash value at the time of loss (without a deduction for depreciation).

4.  **Glass** -- The value of glass will be based on the cost of safety glazing material where required by code, ordinance, or law.

5.  **Merchandise Sold** -- The value of merchandise that "you" have sold but not delivered will be based on the selling price less all discounts and unincurred expenses.

6.  **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

7.  **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

8.  **Tenant's Improvements** -- The value of tenant's improvements losses will be based on the actual cash value if repaired or replaced at "your" expense within a reasonable time.

    The value of tenant's improvements losses will be based on a portion of "your" original cost if not repaired or replaced within a reasonable time. This portion is determined as follows:

a.  divide the number of days from the date of the loss to the expiration date of the lease by the number of days from the date of installation to the expiration date of the lease; and

b.  multiply the figure determined in 8.a. above by the original cost.

If "your" lease contains a renewal option, the expiration of the lease in this procedure will be replaced by the expiration of the renewal option period.

Tenant's improvements losses are not covered if repaired or replaced at another's expense.

9.  **Valuable Papers and Records** -- The value of "valuable papers and records", including those which exist on electronic or magnetic media, is based on the cost of blank materials for reproducing the records, and the labor to transcribe or copy the records when there is a duplicate.

## HOW MUCH WE PAY

1.  **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2.  **Deductible** -- "We" pay only that part of "your" loss over the deductible amount stated on the "declarations" in any one occurrence.

    The deductible applies to the loss before application of any coinsurance or reporting provisions.

3.  **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., and 5. under How Much We Pay and coinsurance provisions (if applicable), "we" pay the lesser of:

a.  the amount determined under Valuation;

b.  the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

c.  the "limit" that applies to covered property.

For accounts receivable, "we" will pay the lesser of:

a.  the sum of all accounts receivable due (with reasonable deductions);

b.  the reasonable cost to reconstruct "your" accounts receivable records; or

c.  the applicable "limit".

4.  **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

5.  **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same plan, terms, conditions, and provisions as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" will pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" will not pay more than the applicable "limit".

## LOSS PAYMENT

1.  **Our Options** -- "We" have the following options:

a.  pay the value of the loss;

b.  pay the cost of repairing or replacing the loss;

c.  rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

d.  take all or any part of the damaged property at the agreed or appraised value.

"We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2.  **Your Losses** -- "We" will adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3.  **Property of Others** -- Losses to property of others may be adjusted with and paid to:

a.  "you" on behalf of the owner; or

b.  the owner.

If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

In addition to the "terms" which are contained in other sections of the Commercial Output Program Coverages the following conditions apply.

1.  **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determine_ by appraisal.

    If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

    The appraisers will then determine and state separately the amount of each loss.

    The appraisers will also determine the value of covered property items at the time of the loss, if requested.

    If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

    Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2.  **Benefit to Others** -- Insurance under the Commercial Output Program Coverages shall not directly or indirectly benefit anyone having custody of "your" property.

3.  **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4.  **Control of Property** -- The Commercial Output Policy Coverages are not affected by any act or neglect beyond "your" control.

5.  **Death** -- If "you" die, "your" rights and duties will pass to "your" legal representative but only while acting within the scope of duties as "your" legal representative. Until "your" legal representative is appointed, anyone having proper temporary custody of "your" property will have "your" rights and duties but only with respect to that property.

6.  **Liberalization** -- If a revision of a form or endorsement which broadens Commercial Output Program Coverages without additional premium is adopted during the policy period, or within six months before this coverage is effective, the broadened coverage will apply.

7.  **Misrepresentation, Concealment, or Fraud** -- These Commercial Output Program Coverages are void as to "you" and any other insured if, before or after a loss:

    a.  "you" or any other insured have willfully concealed or misrepresented:

        1)  a material fact or circumstance that relates to this insurance or the subject thereof; or
        2)  "your" interest herein; or

    b.  there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

8. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

9. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment.

   b. "we" must notify "you" promptly if "we" recover property or receive payment.

   c. any recovery expenses incurred by either are reimbursed first.

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree.

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on our respective interest in the loss.

10. **Restoration of Limits** -- Any loss "we" pay under the Commercial Output Program Coverages does not reduce the "limits" applying to a later loss.

11. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" will not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

12. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

   a. all of the "terms" of the Commercial Output Program Coverages have been complied with; and

   b. the suit has been brought within two years after "you" first have knowledge of the loss.

   If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

13. **Territorial Limits** -- "We" cover property while in the United States of America, its territories and possessions, Canada, and Puerto Rico.

14. **Mortgage Provisions** -- If a mortgagee (mortgage holder) is named in this policy, loss to building property shall be paid to the mortgagee and "you" as their interest appears. If more than one mortgagee is named, they shall be paid in order of precedence.

   The insurance for the mortgagee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify "us".

   If "we" cancel this policy, "we" will notify the mortgagee at least ten days before the effective date of cancellation if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason.

   "We" may request payment of the premium from the mortgagee, if "you" fail to pay the premium.

   If "we" pay the mortgagee for a loss where "your" insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from "you" then belongs to "us". This does not affect the mortgagee's right to collect the remainder of the mortgage debt from "you".

AAIS
COP-100 Ed 2.0
Page 21 of 21

As an alternative, "we" may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

If "we" choose not to renew this policy, "we" will give written notice to the mortgagee at least ten days before the expiration date of this policy.

15. **Vacancy - Unoccupancy -- "We"** do not pay for loss caused by attempted theft; breakage of building glass; sprinkler leakage (unless "you" have protected the system against freezing); theft; vandalism; or water damage occurring while the building or structure has been:

a. vacant for more than 60 consecutive days; or

b. unoccupied for more than:

1) 60 consecutive days; or
2) the usual or incidental unoccupancy period for the "covered locations".

whichever is longer.

The amount "we" will pay for any loss that is not otherwise excluded will be reduced by 15%.

Unoccupied means that the customary activities or operations at the "covered location" are suspended, but business personal property has not been removed. The building or structure shall be considered vacant and not unoccupied when the occupants have moved, leaving the building or structure empty or containing only limited business personal property. Buildings or structures under construction are not considered vacant or unoccupied.

COP-100 Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

AAIS
COP-101  Ed 2.0
Page 1 of 4

# COMMERCIAL OUTPUT PROGRAM -- INCOME COVERAGE PART

Coverage is provided for one or more of the Coverage Options when shown by a "limit" on the "declarations". If a "limit" is shown for more than one of the Coverage Options, the provisions under the Commercial Output Program Coverage apply separately to each.

## ADDITIONAL DEFINITIONS

1. "Business" means normal business activities occurring at "covered locations" including the tenantability of "covered locations" when the selected coverage option includes "rents".

2. "Restoration period" means the time it should reasonably take to resume "your" "business" starting from the date of loss to "covered locations" caused by a covered peril, and ending on the date the property should be rebuilt, repaired, or replaced. This is not limited by the expiration date of the policy.

   This does not include any increase in time due to the enforcement of any ordinance, law, or decree that:

   a. regulates the construction, use, repair, or demolition of any property; or

   b. requires the testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

3. "Rents" means "your" actual loss of:

   a. rental income of "covered locations" as furnished or equipped less any expenses that do not continue;

   b. the rental value of any part of "covered locations" that "you" occupy less any expenses that do not continue; and

   c. other charges for which a tenant is legally obligated and which "you" would otherwise be obligated.

## COVERAGE OPTIONS

1. Earnings, "rents", and extra expense.

2. Earnings and extra expense.

3. "Rents" and extra expense.

Earnings includes "rents" when option 1. is selected. Earnings means only "rents" when option 3. is selected.

"We" provide the coverages shown below during the "restoration period" when "your" "business" is necessarily interrupted by loss to building property or business personal property as a result of a covered peril. This coverage applies only when the loss to building property or business personal property is at "covered locations" or in the open (or in vehicles) within 1,000 feet thereof.

### EARNINGS

"We" cover "your" actual loss of net income (net profit or loss before income taxes), payroll expense, interest, and other continuing operating expenses normally earned or incurred by "your" "business".

"We" cover only the expenses that are necessary during the "restoration period". Consideration is given to continuation of payroll and other expenses to the extent necessary to resume "your" "business" with the same quality of service that existed before the loss.

### EXTRA EXPENSE

"We" cover the necessary extra expenses that "you" incur to resume or continue "your" "business" as nearly as practicable.

"We" cover only the extra expenses that are necessary during the "restoration period".

"We" cover extra expenses to repair, replace, or restore any property, but only to the extent that they reduce the loss otherwise payable under this Coverage Part.

"We" cover extra expenses to research, replace, or restore information on damaged "valuable papers and records", but only to the extent that they reduce the loss otherwise payable under this Coverage Part.

## EXCLUSIONS AND LIMITATIONS

1.  **Finished Stock** -- "We" do not cover loss of earnings caused by loss to stock manufactured by "you" which is ready to pack, ship, or sell. This does not apply to stock manufactured for retail outlets that "you" own.

2.  **Fire Extinguishment** -- "We" do not cover expenses to put out a fire.

3.  **Leases, Licenses, Contracts, or Orders** -- "We" do not cover any increase in loss due to the suspension, lapse, or cancellation of leases, licenses, contracts, or orders.

    However, "we" do cover loss during the "restoration period" if the suspension, lapse, or cancellation results directly from the interruption of "your" "business".

"We" do not cover any extra expense caused by the suspension, lapse, or cancellation of leases, licenses, contracts, or orders beyond the "restoration period".

4.  **Strikes, Protests, and Other Interference** -- "We" do not cover any increase in loss due to interference by strikers or other persons at "covered locations". This applies to interference with rebuilding, repairing, or replacing the property or with resuming "your" "business".

5.  **Unnecessary Expenses** -- "We" do not cover any expenses that are not necessary during the "restoration period".

## ADDITIONAL COVERAGES

1.  **Alterations and New Buildings** -- "We" extend "your" coverage for earnings and extra expense to include loss caused by damage to:

    a.  additions or alterations;

    b.  new buildings or structures, completed or under construction; and

    c.  machinery, equipment, supplies, or building materials located on or within 1,000 feet of "covered locations" used in the construction, alterations, or additions; or incidental to the occupancy of new buildings or structures

    at "covered locations" caused by a covered peril.

    If such loss delays the start of "your" "business", the "restoration period" starts from the time "your" "business" would have begun had no loss occurred. This does not increase the "limit".

AAIS
COP-101  Ed 2.0
Page 3 of 4

2. **Interruption by Civil Authority** -- "We" extend "your" coverage for earnings and extra expense to include loss while access to "covered locations" is specifically denied by an order of civil authority. This order must be a result of damage to property other than at "covered locations" and caused by a covered peril. This extension is limited to two consecutive weeks from the date of the order. This does not increase the "limit".

3. **Newly Acquired Locations** -- When the Locations and Scheduled Locations Endorsements are attached to this Coverage Part, "we" extend "your" coverage for earnings and extra expense to include loss caused by damage to covered property at locations, other than at fairs or exhibitions, that "you" acquire. The damage must be caused by a covered peril. The most "we" pay is 10% of the highest "limit" shown on the "declarations" for this Coverage Part, but not exceeding $250,000.

   This coverage applies for 90 days after "you" acquire the location or until "you" report the newly acquired location to "us", whichever occurs first. This coverage does not go beyond the expiration of this policy.

   "You" must pay any additional premium due from the date "you" acquire the location.

   This is an additional amount of insurance and is not subject to and not considered in applying coinsurance.

4. **Period of Loss Extension** -- "We" extend "your" coverage for earnings to cover loss from the date the covered property that incurred the loss is rebuilt, repaired, or replaced until:

   a. the end of 30 consecutive days (unless otherwise shown on the "declarations"); or

   b. the date "you" could reasonably resume "your" "business" to the conditions that would have existed had no loss occurred,

   whichever is earlier.

   This does not increase the "limit".

## PERILS COVERED

See the Commercial Output Program -- Property Coverage Part.

## WHAT MUST BE DONE IN CASE OF LOSS

Other "terms" relating to What Must Be Done In Case Of Loss may also apply. These are shown in the Property Coverage Part.

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **Proof of Loss** -- "You" must send "us" proof of loss (under oath, if requested) within 60 days after the loss. This must include the time, place, and circumstances of the loss; and other information "we" request to investigate the loss.

3. **Intent to Continue Business** -- If "you" intend to continue "your" "business", "you" must resume all or part of "your" "business" as soon as possible.

AAIS
COP-101  Ed 2.0
Page 4 of 4

## VALUATION

In determining a loss, "we" consider the experience of "your" "business" before the loss and the probable experience had no loss occurred.

The salvage value of any property bought for temporary use shall be deducted from the amount of loss determined for extra expense.

"We" do not pay for any increase in loss due to "your" failure to use reasonable efforts to resume all or part of "your" "business". This includes making use of other locations and property to reduce the loss.

If "your" "business" is not resumed as soon as possible, or if it is not resumed at all, the value of loss payment is based on the period of time it would have otherwise taken to resume "your" "business" as soon as possible.

## HOW MUCH WE PAY

Other "terms" relating to How Much We Pay may also apply. These are shown in the Property Coverage Part.

"We" pay only the loss of earnings and extra expenses incurred within 12 consecutive months after the loss to covered property. Payment for earnings and extra expense combined does not exceed the "limit".

## LOSS PAYMENT

See the Commercial Output Program -- Property Coverage Part.

## OTHER CONDITIONS

The following condition applies as it relates to this Coverage Part. Other "terms" may also apply. These are shown in the Property Coverage Part.

Appraisal -- If "you" and "we" do not agree on the amount of net income (net profit or loss before income taxes), payroll expense, interest, and operating expenses, or the amount of loss, either party may demand that these amounts be determined by appraisal.

If either makes a written demand for appraisal, each selects a competent, independent appraiser and notifies the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record of the state in which the appraisal is pending to make the selection.

The appraisers then determine and state separately the amount of loss.

A written agreement is binding on all parties. If the appraisers fail to agree within a reasonable time, they submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three is binding on all parties.

Each appraiser is paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire is paid equally by "you" and "us".

If there is an appraisal, "we" retain "our" right to deny the claim.

COP-101  Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

This endorsement changes
the policy
- PLEASE READ THIS CAREFULLY -

## AMENDATORY ENDORSEMENT
### NEW JERSEY

**Under Common Policy Conditions, the Cancellation condition is deleted and replaced by:**

**Cancellation and Nonrenewal --** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious, or unfairly discriminatory, or without adequate prior notice to "you". The underwriting reasons or guidelines that "we" can use to cancel or nonrenew this policy are maintained by "us" in writing and will be furnished to "you" and/or "your" lawful representative upon written request.

This provision does not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

"You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

"We" may cancel or not renew this policy by written notice to "you" at the address shown on the "declarations" by certified mail or first class mail evidenced by a Post Office Department proof of mailing. Proof of delivery or mailing is sufficient proof of notice.

During the first 60 days this policy is in effect, "we" may cancel for any reason. If "we" cancel this policy for nonpayment of premium or moral hazard as defined in the New Jersey Insurance Regulations, "we" will give "you" notice at least ten days before cancellation is effective. If "wc" cancel this policy for any other reason, "we" will give "you" notice at least 30 days before cancellation is effective.

After this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us", "we" may cancel or not renew only at the anniversary date unless:

a.    the premium has not been paid when due;

b.    the policy was obtained through material misrepresentation, or omission of fact, which, if known by "us", would have caused "us" not to issue the policy; or

c.    "you" or "your" representative obtained the policy through fraudulent acts;

d.    there has been a material change or increase in hazard of the risk;

e.    there has been substantial breaches of contractual duties, conditions or warranties;

f.    "you" have not cooperated in loss control matters that materially affect the insurability of the risk; or

g.    **the Commissioner has approved any other reason.**

If "we" cancel this policy for nonpayment of premium or moral hazard as defined in the New Jersey Insurance Regulations, "we" will give "you" notice at least ten days before cancellation is effective.

If "we" cancel this policy for any other reason after it has been in effect for 60 days or more, or if "we" decide not to renew this policy, "we" will give "you" written notice at least 30 days but not more than 120 days before cancellation is effective. "Our" notice will state the reasons for cancellation or nonrenewal.

"We" will mail or deliver to "you" notice of the amount of the renewal premium and any change in contract "terms" at least 30 days, but not more than 120 days, prior to the due date of the premium.

Notices are not required if "you" have replaced coverage or have otherwise specifically requested termination.

AAIS
CL 0146 10 98
Page 2 of 2

"Your" return premium, if any, will be refunded within a
reasonable time not to exceed 60 days of cancellation of
notice, whichever is later.  Payment or tender of the
unearned premium is not a condition of cancellation

COP-323 Ed 2.0

Copyright MCMXCIII
American Association of Insurance Services

AAIS
COP-220  Ed 2.0
Page 1 of 1

# SCHEDULED EARTHQUAKE ENDORSEMENT

## OCCURRENCE SCHEDULE

| Location | Covered Property/ Coverage Provided | Masonry Veneer | Deductible | Occurrence Limit |
|---|---|---|---|---|
| See COP-226 | See COP-226 | X | $50,000. | $2.500,000. |

## AGGREGATE SCHEDULE

| Location | Aggregate Limit |
|---|---|
| See COP-226 | $2,500,000. |

Catastrophe Limit $2,500,000.

Copyright MCMXCV, American Association of Insurance Services

AAIS
COP-221  Ed 2.0
Page 1 of 2

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# EARTHQUAKE ENDORSEMENT

Provisions under this endorsement do not apply to "mobile equipment" and the Supplemental Marine Coverages. Unless described on the Scheduled Earthquake Endorsement, this endorsement does not apply to "computers".

## ADDITIONAL DEFINITIONS

1. "Aggregate limit" means the amount of coverage that applies to loss at each location during each separate 12 month period of this policy, this is limited to the expiration or anniversary date.

2. "Occurrence limit" means the amount of coverage that applies to loss in any one occurrence at each location.

3. "Catastrophe limit" means the amount of coverage that applies to all losses at all locations during each separate 12 month period of this policy. This is limited to the expiration or anniversary date.

## PERILS COVERED

When a location is shown on the Scheduled Earthquake Endorsement, covered perils for that location include:

1. **Earthquake**; and

2. **Volcanic Eruption** -- This means the eruption, explosion, or effusion of a volcano.

All earthquakes or volcanic eruptions that occur within a 168 hour period shall be considered a single loss. This 168 hour period is not limited by the policy expiration.

## PERILS EXCLUDED

Under Perils Excluded, Earth Movement or Volcanic Eruption is replaced by the following:

Earth Movement or Volcanic Eruption -- "We" do not pay for:

1. loss caused by earthquake or the eruption, explosion, or effusion of a volcano that begins before the inception date of this coverage.

2. loss caused by blasting (other than volcanic explosion), landslide, mine subsidence, mudflow, or mudslide even if caused by earthquake or volcanic eruption.

## ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS

**Masonry Veneer** -- "We" do not pay for loss to exterior masonry veneer (other than stucco) on wood frame walls caused by earthquake or volcanic eruption. The value of masonry veneer will not be included in the value of covered property or the amount of loss when applying:

1. the deductible that applies to this endorsement; or

2. the coinsurance, if applicable, to the Commercial Output Program Coverages.

However, "we" will cover masonry veneer when described as included on the Scheduled Earthquake Endorsement or when it is less than 10% of the exterior wall area.

AAIS
COP-221  Ed 2.0
Page 2 of 2

## HOW MUCH WE PAY

The following are added to How Much We Pay:

1. **Deductible** -- "We" pay only that part of "your" loss over the deductible shown on the Scheduled Earthquake Endorsement in any one occurrence. The deductible may be shown as either an amount or a percentage. When shown as a percentage, the deductible is that percentage of the value of the covered property at the time of the loss.

   This deductible applies separately to:

   a. each building or structure;

   b. business personal property in each building or structure; and

   c. business personal property in the open (or in vehicles) on or within 1,000 feet of a "covered location".

   This deductible replaces any other deductible for the perils of earthquake and volcanic eruption.

2. **Limits That Apply To Covered Property --** Subject to the Loss Settlement Terms provision, the following "limits" apply to loss to covered property caused by earthquake or volcanic eruption.

   a. The most "we" pay for loss caused by earthquake or volcanic eruption in any one occurrence at a location described on the Scheduled Earthquake Endorsement is the "occurrence limit" shown on the schedule.

   b. The most "we" pay for loss caused by earthquake or volcanic eruption at a location described on the Scheduled Earthquake Endorsement during a 12 month period is the "aggregate limit" shown on the schedule.

   c. The most "we" pay for all losses caused by earthquake or volcanic eruption at all locations described on the Scheduled Earthquake Endorsement during a 12 month period is the "catastrophe limit" shown on the schedule.

## OTHER CONDITIONS

**Excess Insurance** -- "You" may purchase insurance in excess of the amount(s) stated in the Scheduled Earthquake Endorsement. Such excess insurance shall not be considered in applying Insurance Under More Than One Policy nor shall it be considered in the application of any pro rata or apportionment provision.

COP-221  Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

AAIS
COP-222  Ed 2.0
Page 1 of 1

# SCHEDULED FLOOD ENDORSEMENT

## OCCURRENCE SCHEDULE

| Location | Covered Property/ Coverage Provided | Deductible | Occurrence Limit |
|---|---|---|---|
| See COP-226 | See COP-226 | $50,000. | $2,500,000. |

## AGGREGATE SCHEDULE

| Location | Aggregate Limit |
|---|---|
| See COP-226 | $2,500,000. |

Catastrophe Limit $2,500,000.

COP-222  Ed 2.0

Copyright MCMXCV, American Association of Insurance Services

AAIS
COP-223  Ed 2.0
Page 1 of 2

This endorsement changes
the policy
-- *PLEASE READ THIS CAREFULLY* --

# FLOOD ENDORSEMENT

Provisions under this endorsement do not apply to "mobile equipment" and the Supplemental Marine Coverages. Unless described on the Scheduled Flood Endorsement, this endorsement does not apply to "computers".

## ADDITIONAL DEFINITIONS

1. "Aggregate limit" means the amount of coverage that applies to all losses at each location during each separate 12 month period of this policy, this is limited to the expiration or anniversary date.

2. "Occurrence limit" means the amount of coverage that applies to loss in any one occurrence at each location.

3. "Catastrophe limit" means the amount of coverage that applies to all losses at all locations during each separate 12 month period of this policy. This is limited to the expiration or anniversary date.

## PERILS COVERED

When a location is shown on the Scheduled Flood Endorsement, covered perils for that location include:

1. **Flood** -- This means flood, surface water, waves, tidal water or the overflow of a body of water all whether driven by wind or not. This includes spray that results from any of these whether driven by wind or not.

2. **Water That Backs Up** -- This means water that backs up through a sewer or drain.

3. **Water Below The Surface Of The Ground** -- This means water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building or structure, sidewalk, driveway, foundation, swimming pool, or other structure.

## PERILS EXCLUDED

Under Perils Excluded the exclusion for Water is deleted.

## HOW MUCH WE PAY

The following are added to How Much We Pay:

1. **Deductible** -- "We" pay only that part of "your" loss over the deductible shown on the Scheduled Flood Endorsement in any one occurrence.

   This deductible replaces any other deductible for the perils of flood, water that backs up, and water below the surface of the ground.

2. **Limits That Apply To Covered Property** -- Subject to the Loss Settlement Terms provision, the following "limits" apply to loss to covered property caused by flood, water that backs up, and water below the surface of the ground:

   a. the most "we" pay for loss caused by flood, water that backs up, and water below the surface of the ground in any one occurrence at a location described on the Scheduled Flood Endorsement is the "occurrence limit" shown on the schedule.

AAIS
COP-223  Ed 2.0
Page 2 of 2

b. the most "we" pay for loss caused by flood, water that backs up, and water below the surface of the ground at a location described on the Scheduled Flood Endorsement during a 12 month period is the "aggregate limit" shown on the schedule.

c. the most "we" pay for all losses caused by flood, water that backs up, and water below the surface of the ground at all locations described on the Scheduled Flood Endorsement during a 12 month period is the "catastrophe limit" shown on the schedule.

3. **Excess Insurance And Other Insurance --** "You" may purchase insurance in excess of the amount(s) stated in the Scheduled Flood Endorsement. "You" may also use insurance under this endorsement as excess insurance over another policy. Such excess or other insurance shall not be considered in applying Insurance Under More Than One Policy nor shall it be considered in the application of any pro rata or apportionment provision.

COP-223  Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

AAIS
COP-226  Ed 2.0
Page 1 of 1

# SCHEDULED LOCATIONS ENDORSEMENT

Coverage provided by the Commercial Output Program Coverages applies only to the
"covered locations" shown below.

| Location No. | Covered Locations | Covered Property/ Coverage Provided | Limit |
|---|---|---|---|
| 1. | 1500 Rahway Avenue Avenel, NJ 07001 | Business Personal Property (Stock excluded), Building, Business Income & Extra Expense | $2,500,000. (Blanket) |

| Location No. | Coinsurance | Automatic Increase | Replacement Cost |
|---|---|---|---|
| 1. | Does Not Applies | Does Not Applies | Applies to Building & Business Personal Property, except: Business Income & Extra Expense at Actual Loss Sustained |

COP-226  Ed 2.0

Copyright MCMXCV, American Association of Insurance Services

AAIS
COP-227  Ed 2.0
Page 1 of 2

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# LOCATIONS ENDORSEMENT

## PROPERTY COVERED

The following provision is added to Property Covered.

**Scheduled Locations** -- Coverage provided by the Commercial Output Program Coverages applies only to the "covered locations" described on the Scheduled Locations Endorsement.

## HOW MUCH WE PAY

The following provisions are added to How Much We Pay when a coinsurance percentage is shown on the Scheduled Locations Endorsement.

**Coinsurance, Property Coverage Part** -- "We" pay only a part of the loss if the "limit" is less than the value of the covered property at the time of the loss multiplied by the coinsurance percentage. "Our" part of the loss is determined using the following steps:

1. Multiply the value of the covered property at the time of the loss by the coinsurance percentage;

2. Divide the "limit" for covered property by the result determined in 1. above;

3. Multiply the total amount of loss, after the application of any deductible, by the result determined in 2. above.

"We" pay the amount determined in 3. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

If there is more than one "limit" shown on the schedule this procedure applies separately to each covered property for which a "limit" is shown.

If there is only one "limit" shown on the schedule this procedure applies to the total of all covered property to which the "limit" applies.

**Coinsurance, Income Coverage Part** -- "We" pay only a part of the loss if the "limit" is less than the coinsurance percentage multiplied by the sum of "your" net income (net profit or loss before income taxes), payroll expense, interest, and other continuing operating expenses projected for the 12 months following the inception, or last previous anniversary date of this policy (whichever is later), normally earned by "your" "business". "Our" part of the loss is determined using the following steps:

1. Multiply the coinsurance percentage by the sum of "your" net income (net profit or loss before income taxes), payroll expense, interest, and other continuing operating expenses projected for the 12 months following the inception, or last previous anniversary date of this policy;

2. Divide the "limit" by the figure determined in 1. above;

3. Multiply the total amount of loss by the figure determined in 2. above.

"We" pay the amount determined in 3. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

AAIS
COP-227  Ed 2.0
Page 2 of 2

If there is more than one "limit" shown on the "declarations" or the Scheduled Locations Endorsement for the Income Coverage Part, this procedure applies separately to each "limit".

Coinsurance does not apply to coverage for extra expense.

COP-227  Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

AAIS
COP-228  Ed 2.1
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# PROPERTY EXCLUDED

## PROPERTY NOT COVERED

"We" do not cover the property described below
(indicate by checking below):

☐ 1.   Buildings and structures

☐ 2.   Buildings and additions to buildings
under construction, alteration, or repair,
including materials and equipment used
for construction, alteration, or repair

☐ 3.   Building glass

☒ 4.   Radio and television towers antennas,
satellite dishes, masts, and related
property

☒ 5.   Signs

☐ 6.   "Computers"

☒ 7.   Personal property which will become a
part of "your" installation, fabrication, or
erection project

☒ 8.   "Mobile equipment"   *s/B included*

☐ 9.   Personal property of others

☒ 10.  "Fine arts"

☒ 11.  Property on exhibition

☒ 12.  Property in transit

☒ 13.  Sales representative samples

COP-228  Ed 2.1
Copyright MCMXCV
American Association of Insurance Services

| AAIS | This endorsement changes |
|------|--------------------------|
| COP-229  Ed 2.1 | the policy |
| Page 1 of 1 | -- PLEASE READ THIS CAREFULLY -- |

# SUPPLEMENTAL LIMITS ENDORSEMENT

If a "limit" is entered on this endorsement, then the "limit" shown will be the only "limit" that applies to the coverage indicated. If no "limit" is entered on this endorsement, then the $50,000 "limit" shown in Supplemental Coverages and Supplemental Marine Coverages applies.

| Supplemental Coverages | Limit |
|------------------------|-------|
| 1.  Brands or Labels Expense | $  50,000. |
| 2.  Inventory and Appraisals Expenses | $  50,000. |
| 3.  Ordinance or Law | $  50,000. |
| 4.  Trees, Shrubs, and Plants | $  50,000. |

| Supplemental Marine Coverages | |
|-------------------------------|--|
| 1.  Accounts Receivable | $100,000. |
| 2.  Fine Arts | $Not Covered |
| 3.  Property on Exhibition | $Not Covered |
| 4.  Property in Transit | $Not Covered |
| 5.  Sales Representative Samples | $Not Covered |
| 6.  Valuable Papers and Records | $100,000. |

COP-229  Ed 2.1

Copyright MCMXCV, American Association of Insurance Services

AAIS
COP-234  Ed 2.0
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# MULTIPLE DEDUCTIBLE
# SCHEDULED PERILS

## HOW MUCH WE PAY

The deductible provision is deleted and replaced by the following:

For covered perils listed below, "we" pay only that part of "your" loss over the deductible amount shown for that peril in any one occurrence.

| Covered Peril | Deductible Amount |
|---|---|
| Building | $25,000. |
| Flood | $50,000. |
| Earthquake | $50,000. |

For All Other Covered Perils                    $5,000.

COP-234  Ed 2.0

Copyright MCMXCV, American Association of Insurance Services

**AAIS**
**COP-243  Ed 1.0**
**Page 1 of 1**

# UTILITY INTERRUPTION SCHEDULE -- PROPERTY DAMAGE

| | | Utility Services | | |
| | | Water Supply | Communications Supply | Electricity Steam, or Gas Supply | Including Overhead Transmission Lines |
| Covered Location | Property Covered | | | | |
|---|---|---|---|---|---|
| See COP-226 | See COP-226 | X | X | X | |

The most the Company will pay for "loss" is $1,000,000. This limit is not in addition to policy limits.

This "loss" must occur within one statute mile of insured's premises.

**COP-243  Ed 1.0**

Copyright MCMXCV, American Association of Insurance Services

AAIS
COP-244  Ed 1.0
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# UTILITY INTERRUPTION -- PROPERTY DAMAGE

## PROPERTY COVERED

"We" cover loss to covered property caused by the interruption of a utility service to the "covered location" described on the Utility Interruption Schedule -- Property Damage. The interruption must result from direct physical loss or damage. The loss or damage must be caused by a covered peril to the utilities indicated by an X on the Utility Interruption Schedule -- Property Damage. The utilities indicated on the schedule must not be located on a "covered location".

COP-244  Ed 1.0

Copyright MCMXCV, American Association of Insurance Services

# SECTION III: STORAGE COVERAGE

## 1. INTEREST

This Policy is extended to cover, subject to its terms and conditions, all goods held in storage (whether or not insured elsewhere in this Policy) by the Assured for their account as principals or as Agents for others, or for account of others with orders to insure, provided such orders are given in writing prior to the attachment of risk hereunder and prior to any known loss or damage.

## 2. GEOGRAPHIC LIMITS

Goods held in storage are insured worldwide at locations specified in this Section, except that there is no coverage for goods held in storage in countries which are the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

## 3. LIMITS OF LIABILITY

This Company is not liable for more than the amount set opposite each specified location in any one loss, disaster or casualty.

| Location Name and Address | Limit of Liability |
|---|---|
| 1500 Rahway Avenue<br>Avenel, NJ 07001 | $10,000,000<br>$5,000,000 Earthquake and Flood Annual Aggregate |
| M&L<br>1302 29th Street NW<br>Auburn, WA 98001 | $10,000,000<br>$5,000,000 Earthquake and Flood Annual Aggregate |
| Unnamed Domestic Locations | $3,000,000 for Locations with Central Station Burglary and Fire Alarms, Sprinklered, Masonry, Non-Combustible Locations, Reported within 60 days<br>$500,000 All other locations |
| Named Russian Locations<br>On File with Company | $500,00 per Occurrence<br>$250,000 Earthquake and Flood Annual Aggregate |
| Unnamed Foreign Locations | $250,000 per Occurrence<br>$125,000 Earthquake and Flood Annual Aggregate |

## 4. COINSURANCE

In the event of loss, if the total value at risk at any location exceeds the applicable limit of liability provided by this Section, this Company shall be liable for no greater proportion of such loss than the applicable limit of liability bears to the total value at risk at the time such loss occurs.

## 5. VALUATION

Valued at:   the Assured's selling price less unincurred expenses.

*Sold & Unsold*