LAW OFFICES

# GENNET, KALLMANN, ANTIN & ROBINSON

A PROFESSIONAL CORPORATION

Stanley W. Kallmann * †
Mark L. Antin ◇ †
Richard S. Nichols †
Donald G. Sweetman ○

Samuel A. Gennet
(1936-1998)

✧ Member NY Bar
* Member NJ & NY Bars
□ Member NJ & PA Bars
◇ Member NJ, NY & FL Bars
○ Member NJ, NY & CT Bars
† Certified by the Supreme Court of
   New Jersey as a Civil Trial Attorney

6 Campus Drive
Parsippany NJ 07054-4406

(973) 285-1919
FAX (973) 285-1177
gkar@nac.net

Litman Suite
45 Broadway Atrium
New York NY 10006
(212) 406-1919

101 East Lancaster Avenue Suite 304
Wayne PA 19087
(610) 902-0150
FAX (610) 902-0152
bridgelaw@msn.com

William G. Hanft ◇
Brian J. Bolan *
Michael S. Leavy ✧
William E. Marsala *

Harry Robinson, III
(1973-2000)

Mark M. Bridge □
Of Counsel
(PA managing attorney)

February 10, 2004

**Please Reply to Parsippany**

**VIA FEDERAL EXPRESS**
Mr. Gerald Scheer
Public Adjustment Bureau
World Plaza
141-07 20th Avenue
Whitestone, NY 11357

Re:  Insured:         Amerex Group, Inc.
     D/O/L:           8/3/01
     Loss Location:   1500 Rahway Ave., Avenel, NJ
     Our File No:     02-5703:47/30-A

Dear Mr. Scheer:

We are attorneys for Lexington Insurance Company and ACE-Westchester Specialty Group with regard to the above-captioned claim.

The information and documentation provided by Amerex to the insurers does not allow the insurers to make a determination, based upon acceptable methodologies, adequately supported by original entry records, as to the amount of any financial loss related to the August 3, 2001 rack collapse.

Accordingly, the insurers' investigation into the Amerex claim has not been completed and until the insured fulfills its policy obligations, the underwriters will be unable to respond to the insured's claim or any Proof of Loss submitted in connection therewith. In an effort to obtain the necessary information, and pursuant to the terms and conditions of the insurers'

February 10, 2004

Mr. Gerald Scheer
Public Adjustment Bureau

Page Number 2

---

policies, we enclose and serve upon you a Notice of Examination under Oath. It is hoped that the documents requested in the notice (some of which have been previously requested but not provided, and others of which are new requests upon review of the information produced by the insured), along with the sworn testimony of the insured's representatives identified in the notice, will enable the underwriters to determine the extent of any indemnity obligation they may have to the insured.

The date set forth in the Notice of Examination represents the first of several dates which will be needed to question the identified witnesses. If the date is inconvenient, we will be glad to discuss alternative dates. If, upon review of the document requests, there are any questions or if you need clarification as to the documents requested, please contact me and we will provide that information.

It is our understanding that the insured has requested and the insurers have granted a number of extensions of time for the insured to file any legal action. Until the insured has fulfilled its cooperation obligations under the policy, any such legal action would be premature and, in any event, we hope that after testimony under oath and the production of the additional documents, any dispute between the parties as to the amount of the claim can be resolved without the necessity of litigation. In regard to the time for institution of any such legal action, your attention is directed to Peloso v. Hartford Insurance Co.,56 N.J. 514 (1970), pursuant to which the time to file any such legal action is tolled while the claim is still under investigation. If, nevertheless, the insured wishes to discuss a further extension of time to file suit, please contact me immediately.

All actions by and on behalf of the insurers are without prejudice. All rights and defenses under the insurance policies are specifically reserved, none having been waived.

                Very truly yours,

                GENNET, KALLMANN, ANTIN & ROBINSON
                By:
                MARK L. ANTIN

MLA:dbb
cc: Cliff Arbes, General Adjuster
    York Claims Service, Inc.

## NOTICE OF EXAMINATION UNDER OATH

**VIA FEDERAL EXPRESS**

TO:   AMEREX GROUP, INC.
      c/o Gerald Scheer
      Public Adjustment Bureau
      World Plaza
      141-07 20th Avenue
      Whitestone, NY 11357

SIR:

**TAKE NOTICE**, that Lexington Insurance Company, in connection with a claim under Policy No. 8525713, and ACE-Westchester Specialty Group, in connection with a claim under Policy No. WXA-0662980-0, hereby demand an Examination Under Oath of the insured and others in connection with a loss said to have occurred on August 3, 2001 at 1500 Rahway Avenue, Avenel, New Jersey 07001; and

**TAKE FURTHER NOTICE**, that you are to produce for examination the following persons:

(a)   Robert Amerini (and such other person, if not Mr. Amerini, in the employ of Amerex responsible for preparation of the insurance claim).

(b)   Robert McDonald;

(c)   Person(s) with the most knowledge regarding sales of garments in the lines of products involved in this claim;

(d)   Person(s) with the most knowledge regarding shipping of the garments in the lines of products involved in this claim; and

(e)   Person(s) with the most knowledge regarding the coordinated agreements with Dynamic and Apex, including any supervision, monitoring and performance of the services rendered pursuant to those agreements.

**TAKE FURTHER NOTICE,** that you are to produce, not less that five (5) days prior to the first examination date, **original** documents (or if originals are not available, true copies) related to the claim referred to above, including but not limited to:

(1) Monthly profit and loss statements from August, 1999 through April, 2002, including supporting documentation to arrive at claimed gross profit and variable expenses for each division;

(2) Annual financial statements for 2001;

(3) A monthly breakout of the claimed sales losses, by each division, and all supporting documentation used to prepare the claim calculation;

(4) List of all orders on hand with corresponding expected delivery dates at the beginning of each month from August to December, 2000 and 2001;

(5) Any and all documentation related to canceled orders, by customer, on a monthly basis during the claimed suspension period;

(6) Any and all documentation specifying which customers were expected to make reorders and did not reorder product specifically as a result of the rack collapse on August 3, 2001;

(7) A monthly breakdown of the specific claimed markdowns on closeouts, by each division, and all supporting documentation used, relied on, or which relates to (whether supporting or not) the determination that the rack collapse caused the subsequent markdown;

(8) Pre and post loss detailed customer orders for which markdowns were given, and any documents which note or identify the specific reasons for markdowns from August, 2000 through December, 2001;

(9) Any correspondence or documentation that establishes that claimed markdowns were directly related to the rack collapse or subsequent late shipment allegedly caused by the rack collapse;

(10) Any correspondence or documentation as to the reasons markdowns were given both before and after the rack collapse;

(11) Original sales orders for all styles claimed to have been canceled as a result of the rack collapse, to include customers, and expected delivery dates;

(12) A list of all orders on hand with corresponding expected delivery dates at the beginning of each month from August to December, 2000 and 2001;

(13) A list of all orders that were delivered late in 2000 and 2001 to include the amount of the initial order, any changes to the order, and the required and actual delivery dates;

(14) Documentation containing the names of customers, the date delivery was required, when the actual delivery was made, the location from which shipment was made including who made the delivery; i.e., Amerex, Dynamic Delivery, Apex Apparel, UPS, etc., and the direct relationship to any subsequent orders claimed to have been canceled as a result of the rack collapse;

(15) A listing of the quantity and value of the daily shipments made by Amerex, Apex Apparel, and Dynamic Delivery from date of loss through December 31, 2001;

(16) Copies of outside warehousing and shipping agreements, monthly billings and summary of daily units shipped and received;

(17) Any "on time delivery" reports showing monthly orders versus shipments;

(18) Any and all cancellation paperwork associated with claimed canceled orders;

3

(19) Detailed monthly documentation for expenses incurred in 2000 and 2001, including detailed documentation of expenses for sales catalogues, advertising, promotions, and sales commissions;

(20) Proof of payment of the $447,470 in late delivery charges claimed;

(21) Detailed monthly supporting documentation for chargebacks and late fees incurred before and after the loss for August to December, 2000 and 2001;

(22) Copies of sales orders showing specific products that were included in each shipment, and date and location of shipments from Amerex;

(23) Documentation related to the basis for negotiating the agreement with Sears;

(24) Supporting documentation for late buyer charge;

(25) Documentation showing causal relationship of any claimed loss or expense to rack collapse;

(26) Shipping agreements between Amerex, Apex Apparel and Dynamic Delivery; and

(27) Any other relevant or similar documentation to the documents requested and any additional documentation the insured would like to present in support of its claim.

**TAKE FURTHER NOTICE**, that your failure to appear and/or produce the above documentation so far as it is within your control to do so will constitute a breach of the conditions of the policies and result in a denial of your claim; and

**TAKE FURTHER NOTICE**, that this Notice of Examination shall not constitute a waiver of any provisions, stipulations or forfeiture, because of the requirement of proceedings of the above-named Company relating to the examination; and

**TAKE FURTHER NOTICE**, that said examination will take place at the offices of GENNET, KALLMANN, ANTIN & ROBINSON, P.C., 6 Campus Drive, Parsippany, New Jersey, on **March 11, 2004 at 10:00 a.m.**, and on any adjourned dates, by **MARK L. ANTIN, ESQ.**, or anyone connected with the firm of **GENNET, KALLMANN, ANTIN & ROBINSON**.

GENNET, KALLMANN, ANTIN & ROBINSON
Attorneys for Lexington Insurance Company and
ACE-Westchester Specialty Group

By: _____
MARK L. ANTIN, ESQ.

DATED: February 10, 2004

cc: Waxman & Schaffer Reporting