# GENNET, KALLMANN, ANTIN & ROBINSON, P.C.

Stanley W. Kallmann * †
Mark L. Antin ◊ †
Richard S. Nichols †
Donald G. Sweetman ○

Samuel A. Gennet
(1936-1998)

✧ Member NY Bar
* Member NJ & NY Bars
□ Member NJ & PA Bars
◊ Member NJ, NY & FL Bars
○ Member NJ, NY & CT Bars
† Certified by the Supreme Court of
  New Jersey as a Civil Trial Attorney

6 Campus Drive
Parsippany NJ 07054-4406

(973) 285-1919
FAX (973) 285-1177
gkar@gkar-law.com

Litman Suite
45 Broadway Atrium
New York NY 10006
(212) 406-1919

101 East Lancaster Avenue Suite 304
Wayne PA 19087
(610) 902-0150
FAX (610) 902-0152
bridgelaw@msn.com

William G. Hanft ◊
Brian J. Bolan *
Michael S. Leavy ✧
Thomas R. King *
Brian A. Scotti *

Harry Robinson, III
(1973-2000)

PA Managing Attorney
Mark M. Bridge (Of Counsel)
Nancy E. Longo

**www.gkar-law.com**

**Please Reply to Parsippany**

February 21, 2006

<u>VIA FAX (212) 349-6702</u>
<u>VIA LAWYERS SERVICE</u>
Dennis D'Antonio, Esq.
Weg and Myers, P.C.
Federal Plaza
52 Duane Street
New York, NY 10007

   Re: Insured:     Amerex Group, Inc.
      D/O/L:      8/3/01
      Loss Location:   1500 Rahway Ave., Avenel, NJ
      Westchester Claim No: 233P255727X
      Lexington Claim No:  135347
      Our File No:    02-5703:110.0429-A

Dear Mr. D'Antonio:

  We write to you, as attorneys for the insured, on behalf of Westchester Surplus Lines Insurance Company, issuer of policy number WXA-662980-0/000, and Lexington Insurance Company, issuer of policy number 8525713, (hereafter collectively "the excess insurers"), to advise regarding the results of the excess insurers' claim investigation.

  While we acknowledge receipt of your letter dated February 14, 2006, we believe it is factually erroneous, self-serving and posturing. Accordingly, we do not specifically respond to your assertions at this time, except to deny them.

February 21, 2005

Dennis D'Antonio, Esq.
Weg and Myers, P.C.

Page Number 2
_____

On or about June 12, 2003, Amerex presented the excess insurers with a proof of loss submitted by Amerex to its primary insurer, Fireman's Fund Insurance Company, stating that the Amerex claim and loss exceeded the primary limits of the Fireman's Fund policy. Subsequently, Lexington was advised by submission of an undated report of Held, Kranzler, McCosker & Pulice, LLP, Certified Public Accountants, that the Amerex loss was in the amount of $8,812,000.00. An investigation into the Amerex claim has been ongoing, having been delayed for several years during which time Amerex refused to deal with its excess insurers.

Based upon the documentation, testimony and information which the excess insurers have been able to obtain through their investigation to this point, they are unable to conclude that Amerex's covered financial losses due to the August 3, 2001 rack collapse, exceed the limit of Amerex's primary insurance coverage. Accordingly, Amerex's claim for benefits under the excess insurers' policies is hereby respectfully declined. More specifically, by way of example only, the information provided by Amerex and its consultant does not establish the alleged declines in sales in the claimed divisions, nor that the extent of any alleged decline commenced only after and due to the rack collapse of August 3, 2001. Evidence produced by Amerex also indicates some sales declines began before the collapse. Further, as to Amerex's claim that increased discount sales occurred, the financial information provided by the insured does not establish that all of the increased discounts occurred only as a result of the rack collapse and its aftermath. Other circumstances probably impacting upon Amerex's actual 2001 sales include, but are not necessarily limited to, economic trends in the United States which began prior to the accident, the impact on sales of the terrorist attacks on September 11, 2001, and other marketplace considerations. The excess insurers also believe that some of the claimed extra expenses do not fall within the loss period identified by the insured, and others do not appear to be collapse related.

The nature of the claims submitted and the analysis of it by the excess insurers' consultants does not lend itself to a more detailed discussion of every basis for the conclusion that the insured has failed to demonstrate covered losses in excess of primary limits. For these and other reasons, the excess insurers seek the opportunity to meet with the insured and its representatives to explain their determination in more detail. This would also afford the insured an opportunity to respond to the claim analysis, and, should it so choose, to provide or highlight any information which it claims has not been properly considered or not given sufficient weight. If you are interested in such an offer, please contact me to arrange a meeting. We will take no further action with respect to the claim, pending a reasonable time to explore a meeting to discuss the claim and the excess insurers' findings with respect thereto.

February 21, 2005

Dennis D'Antonio, Esq.
Weg and Myers, P.C.

Page Number 3
=====================================

       Please refer in the insurance policies to the time for suit provisions regarding what an insured must do before it may file a legal action, and the time therefor. Per our discussions, the calculation of the time for suit does not resume until the insured has received this letter. Moreover, should the insured notify the undersigned in writing within two (2) weeks of the date hereof of its interest in a meeting, as suggested herein, such time for suit will be further extended by the excess insurers. In that event, the insured will be notified in writing when the time for filing an action resumes.

       Should you wish to take this matter up with the New Jersey Banking and Insurance Section of the New Jersey Department of State, you may write to 4 Station Plaza, P.O. Box 117, Trenton, New Jersey 08625.

       All actions by and on behalf of Westchester Surplus Lines Insurance Company and Lexington Insurance Company have been and continue to be without prejudice. All rights and defenses under their policies are specifically reserved and none has been waived.

       Very truly yours,

       GENNET, KALLMANN, ANTIN & ROBINSON

       *Mark L. Antin*
By:
       MARK L. ANTIN

MLA:dbb
cc: Foa & Son Corporation