04-109
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMEREX GROUP, INC. and ) <br> AMEREX USA INC, ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> - against - ) <br> ) <br> LEXINGTON INSURANCE COMPANY AND ) <br> WESTCHESTER SURPLUS LINES ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendants. ) | CASE NUMBER: <br> 07 CV 3259 (HB) |

## DECLARATION OF JANESE N. THOMPSON

Janese N. Thompson, declares under the penalty of perjury the following:

1.  I am an Associate of the law firm of Weg and Myers, P.C., attorneys for AMEREX GROUP, INC., and AMEREX USA INC (collectively, "Plaintiffs"). I submit this declaration in support of (i) Plaintiffs Motion for an Order for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(c), which seeks partial summary judgment dismissing Defendants Second Affirmative Defense which demand appraisal proceedings to determine the amount of the loss; and (ii) in opposition to Defendants Motion for Partial Summary Judgment seeking to compel enforcement of the appraisal clauses of the policies of LEXINGTON INSURANCE COMPANY ("LEXINGTON") and WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("WESTCHESTER SURPLUS LINES") (collectively "Defendants"); and (iii) for such other and further relief as this Court deems just and proper.

2. A copy of Plaintiffs Amended Complaint is annexed hereto at Exhibit "A" ("Ex.") "A". Plaintiffs AMEREX GROUP and AMEREX USA are collectively referred to herein as "AMEREX" of Plaintiffs.

3. AMEREX is a garment distributor of mens', ladies', and childrens' outwear, distributing garments in the United States manufactured in Italy, Asia and Europe. Ex. "A".

4. The merchandise shipped to Plaintiffs from manufacturers arrive on either hangers or ropes. These garments are then placed on Plaintiffs' rack system and are organized by style color and size. At the time that the merchandise is ready to be shipped, the garments on hangers are removed from different locations on the rack system and are boxed. Ex. "A".

5. On August 3, 2001, merchandise in AMEREX's Avenel warehouse was stored on racks. This merchandise constituted orders that had been placed by customers. Once an order for merchandise was received from a customer a start and end date for shipment would be established in order to ensure that the merchandise would arrive within the proper season. Ex. "A".

6. On August 3, 2001, a significant portion of Plaintiffs' racks collapsed. The collapsed racks were approximately 28 feet in height, 30-40 feet long and contained approximately 46 layers. The rack collapse activated the warehouse's sprinkler system which resulted in flooding of the warehouse causing damage to garments scheduled to be shipped to customers. Ex. "A".

7. The activated sprinkler system also caused an electrical power outage in the Avenel warehouse, which consequently rendered the computer systems at the Avenel and Mercer Island warehouses inoperable for approximately one to three weeks, crippling the operations of Plaintiffs business until after the computer systems were up and running. When

the computer system became inoperable it was virtually impossible to locate and identify the merchandise to be shipped. Ex. "A".

8.  Heretofore and prior to on or about August 3, 2001, Fireman's Fund Insurance Company ("Fireman's fund") issued to AMEREX GROUP a certain policy of insurance bearing the policy numbered OC-95272000 (hereinafter referred to as the "Fireman's Policy"), with limits of liability in the amount of $2,500,000.00 with effective dates of coverage from June 15, 2001 to June 15, 2002 wherein and whereby Fireman's Fund insured AMEREX GROUP for building, business personal property, business income, and extra expense located in Avenel, New Jersey against all risks of loss. See Mark Antin Declaration ("Antin Decl."). at Ex. "1".

9.  On August 3, 2001, LEXINGTON, for good and valuable consideration, made and issued to AMEREX USA an excess commercial property policy of insurance bearing the policy numbered 8525713 ("Lexington Policy"), with limits of liability of $5,000,000.00 in excess of the $2,500,000.00 policy written by Fireman's Fund, with effective dates June 15, 2001 to June 15, 2002, wherein and whereby LEXINGTON insured AMEREX GROUP for buildings, business personal property, contents, business income and extra expense against all risks of loss, including rack collapse. See Antin Decl. at Ex. "2".

10. On August 3, 2001, WESTCHESTER, for good and valuable consideration, made and issued to AMEREX GROUP an excess commercial property policy of insurance bearing the policy numbered WXA-662980-0/000 ("Westchester Policy"), with limits of $5,000,000.00 in excess of the $2,500,000.00 policy written by Fireman's Fund, with effective dates June 15, 2001 to June 15, 2002, wherein and whereby WESTCHESTER did insure

AMEREX GROUP buildings, business personal property, contents, business income and extra expense against all risks of loss, including rack collapse. See Antin Decl. at Ex. "3".

11. Plaintiffs' Insurance Broker that placed the LEXINGTON and WESTCHESTER Policies was FOA & Son, Corp., with principal place of business in at 60 East 42nd Street, New York, New York 10165-2399. See Ex. "B" annexed hereto as correspondence from FOA & Son, Corp.

12. Plaintiffs submitted a claim to Fireman's Fund as well as Defendants LEXINGTON and WESTCHESTER for property damage and business income loss in the amount of $7,851,000.00 and an extra expense claim in the amount of $961,000.00, for a total loss of $8,812,000.00. Ex. "A".

13. After investigation of the claim, Fireman's Fund paid its entire policy limits of $2,500,000.00. Since the policy exceeded the policy limits Fireman's Fund issued a Proof of Loss which was given to the Defendants, the excess carriers by AMEREX's public adjuster, Gerald Scheer. However, to date neither LEXINGTON nor WESTCHESTER has paid AMEREX any money in connection with its claim and thus failed to compensate Plaintiffs fully for their losses, Plaintiffs filed a breach of contract action against the insurers. Ex. "A".

14. Defendants conducted a lengthy investigation of this loss and requested numerous documents and at all times AMEREX produced the documents requested that was within its possession, custody and/or control, including the addresses of Plaintiffs' former employees. See Ex. "C" annexed hereto as a copy of a letter dated May 7, 2004 from Weg and Myers on behalf of AMEREX regarding inspection of AMEREX's documents. See Ex. "D" annexed which is a copy of a letter dated July 22, 2004 from Defendant's counsel confirming a scheduled inspection of AMEREX's documents.

15. Defendants demanded numerous Examinations Under Oath which were taken from December 2004 until October 2005.

16. A copy of the first and last pages of an Examination Under Oath of Robert Almerini conducted on December 6, 2004 is annexed hereto at Ex. "E".

17. A copy of the first and last pages of the continuing Examination Under Oath of Robert Almerini conducted on October 11, 2005 is annexed hereto at Ex. "F".

18. A copy of the first and last pages of an Examination Under Oath of Steven McDonald conducted on December 7, 2004 is annexed hereto at Ex. "G".

19. A copy of the first and last pages of an Examination Under Oath of Russell Kranzler conducted on January 26, 2005 is annexed hereto at Ex. "H".

20. A copy of the first and last pages of a continuing Examination Under Oath of Russell Kranzler conducted on February 28, 2005 is annexed hereto at Ex. "I".

21. A copy of the first and last pages of an Examination Under Oath of Alex Solis conducted on August 23, 2005 is annexed hereto at Ex. "J".

22. A copy of the first and last pages of an Examination Under Oath of Stuart Cohen conducted on October 24, 2005 is annexed hereto at Ex. "K".

23. Although Fireman's Fund paid the entire amount of the primary policy, Defendants denied the claim by letter dated February 21, 2006. See Antin Decl. at Ex. "7". The denial letter offered "AMEREX the opportunity to listen to a presentation by the insurers consultants, critique their conclusions and provide different or additional analyses for consideration of the insurers". Antin Decl. at ¶ 14 and at Ex. "7".

24. Pursuant to the February 21, 2006 letter, on April 19, 2006 a meeting was held wherein the parties discussed their views about the claim, factual basis, documentation and

methodology used in calculation of the claim with their respective experts and counsel. At the April 19, 2006 meeting Defendants never raised the issue of proceeding by appraisal and no demand for appraisal was made.

25. Subsequent to the April 19, 2006 meeting, the parties agreed to mediate the claim. Thereafter the parties agreed to appoint John Kerns as their mediator.

26. Prior to the mediation, the parties submitted a mediation statement, documents utilized by the accountants in arriving at its calculations, the methodology of that the parties respective experts used in their calculations, a factual analysis and relevant portions of the Examinations under Oath conducted herein.

27. Subsequent to the parties' submission of a mediation statement, they held several separate meetings with the mediator and their accounting experts from November 2006 through March 2007. At the meetings, the parties presented facts about the loss, facts about the business, supporting documentation and claim calculation methodology. The Mediator even met with the parties expert accountants without anyone else present. At this point Defendants still had not demanded an appraisal or even had any discussions regarding appraisal.

28. About March 2007 the Defendants made an offer in the amount of $1,000,000.00 to settle the claim. Based upon Plaintiffs claim of $8,812,000.00, less $2,500,000.00 paid by Fireman's Fund this offer was not substantial and not made in good faith. In April 2007 AMEREX rejected this offer. Again no appraisal was demanded at this time. This lawsuit was commenced on April 23, 2007 and an Amended Complaint was filed May 18, 2007. At that time, Defendants still had not served a written demand for an appraisal.

29. The Plaintiffs have always made its position known to the Defendants, especially that it did not agree with the Defendants coverage analysis and that it expected the sum of $8,812,000.00 for its loss.

30. The first time Defendants ever raised proceeding by appraisal was only after litigation commenced concerning a loss which took place almost six years ago and almost three years since the claim for coverage to Defendants, the excess carriers was made.

31. By letter dated June 22, 2007, WEG and MYERS, P.C. on behalf of Plaintiffs, rejected defendants demand for an appraisal of the amount of the loss. Antin Decl. at Ex. "12".

32. No appraisal has commenced to date.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 27, 2007

_____
JANESE N. THOMPSON

Docket No. 07 CV 3259 (HB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMEREX GROUP, INC, and
AMEREX USA INC.,

                Plaintiffs,

- against -

LEXINGTON INSURANCE COMPANY AND
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

                Defendants.

DECLARATON OF JANESE N. THOMPSON

*Weg and Myers, P.C.*
Attorney for Plaintiffs
Office and Post Office Address, Telephone
Federal Plaza
52 Duane Street
NEW YORK, N.Y. 10007
(212) 227-4210