04-109

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMEREX GROUP, INC. and | ) | CIVIL ACTION NO. |
| AMEREX USA INC, | ) | 07 CV 3259 (HB) |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| - against - | ) | |
| | ) | |
| LEXINGTON INSURANCE COMPANY AND | ) | |
| WESTCHESTER SURPLUS LINES | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION SEEKING PARTIAL SUMMARY
JUDGMENT COMPELLING APPRAISAL AND IN SUPPORT
OF PLAINTIFFS' CROSS-MOTION SEEKING PARTIAL
SUMMARY JUDGMENT STRIKING DEFENDANTS'
<u>SECOND AFFIRMATIVE DEFENSE</u>**

WEG and MYERS, P.C.
Attorneys for Plaintiff
52 Duane Street
New York, New York 10007
(212) 227-4210

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ……………………………………………..2

ARGUMENT ...........................................................................................4

POINT I

THE PARTIES DISPUTES EMANTE FROM COVERAGE
ISSUES FOR WHICH APPRAISAL IS NOT A REMEDY……………..4

POINT II

LEXINGTON AND WESTCHESTER FAILED TO ACT
IN GOOD FAITH WITH RESPECT TO APPRAISAL AND
FAILED TO DEMAND APPRAISAL WITHIN A REASONABLE
TIME, THEREBY WAIVING THEIR RIGHTS TO THE
PROVISION……………………………………………………….14

CONCLUSION…………………………………………………...……..19

## PRELIMINARY STATEMENT

Plaintiffs AMEREX GROUP, INC., and AMEREX USA, INC., ("Plaintiffs" or "AMEREX") submit this memorandum of law in opposition to the Defendants' motion seeking partial summary judgment compelling appraisal and in support of Plaintiffs' cross-motion for striking defendants LEXINGTON INSURANCE COMPANY ("LEXINGTON") and WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("WESTCHESTER") (collectively "Defendants") Second Affirmative Defense.

In their motion, Defendants contend that Plaintiffs failed to comply with the appraisal provision of the Policy prior to litigation and, as a result, essentially seek a stay of this action as it relates to the amount of damages Defendants owe Plaintiffs, and an Order that such damage determination be accomplished through appraisal. Defendant's motion however, overlooks well-settled case law in New York that dictates that if an insurer denies coverage--which Defendant has indisputably done here-- then enforcement of the "appraisal" provisions contained in an insurance policy is entirely inappropriate.[1] By arguing that Plaintiffs' claims are excluded from coverage and by raising the Affirmative Defenses in its Answer, i.e., Plaintiffs failure to comply with applicable policy terms and conditions, spoliation of evidence and Plaintiffs failure to cooperate, Defendants concede that it does not concede liability with respect to its coverage obligations.

Although Defendants conducted a lengthy investigation in connection with the AMEREX loss, requesting numerous documents and conducting numerous Examinations Under Oath, they never requested an appraisal of the loss when it appeared that the parties could not resolve their differences. Nor would appraisal have been effecacious or warranted

---

[1] Jurisdiction in this matter is based upon diversity of citizenship. As set forth in Point I, supra, New York law should be applied to this coverage dispute.

given the fact that the parties engaged in a mediation which did not resolve the dispute as to the amount of loss. (Janese Thompson Declaration ("Thompson Decl.") at ¶¶'s 15 through 22, and 24.) Because of the coverage positions advanced by Defendants, Plaintiffs commenced suit on or about April 23, 2007 and amended suit on or about May 18, 2007. Thompson Decl. at Exhibit ("Ex.") "A". Notwithstanding the above, after litigation was commenced, Defendants by way of the instant motion, seek to now compel appraisal. (Antin Decl. at ¶ 21.)

As set forth in detail below, to grant an appraisal would be an inappropriate remedy in this case, as the underlying dispute between the parties is not one solely concerning the amount of loss, but also involves a dispute as to coverage.

Furthermore, the opportunity for an appraisal has been waived or in the very least raises factual questions in connection with the doctrine of waiver, thus making a summary determination inappropriate. Accordingly, the Court should deny Defendants motion for partial summary judgment which seeks to compel appraisal and grant Plaintiff's cross-motion striking Plaintiff's Second Affirmative Defense wherein it claims that Plaintiff's have violated the provisions of the policy requiring appraisal.

## ARGUMENT

### I.

### NEW YORK LAW SHOULD APPLY TO THIS COVERAGE DISPUTE

Where diversity jurisdiction exists, a district court must apply the choice of law rules of the state in which that court sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020 (1941); Olin Corp. v. Ins. Co. of North America, 743 F. Supp. 1044, 1048 (S.D.N.Y. 1990). Accordingly, New York law requires courts to apply the law of the "jurisdiction which has the most significant contacts with the matter in dispute". Olin Corp.,

743 F. Supp. 1044, 1048 (S.D.N.Y. 1990) (quoting <u>Auten v. Auten</u>, 308 N.Y. 155, 160

(1954)). As the Second Circuit has noted:

> In contract cases, New York courts now apply a "center of gravity" or
> "grouping of contacts" approach. … Under this approach, courts may
> consider a spectrum of significant contacts, including the place of
> contracting, the places of negotiation and performance, the location
> of the subject matter, and the domicile or place of business of the
> contracting parties.

<u>Brink's Ltd. v. South African Airways</u>, 93 F.3d 1022, 1030-1031 (2d Cir. 1996) (citing <u>In re</u>

<u>Allstate Ins. Co. and Stolarz</u>, 81 N.Y. 2d 219, 227, 597 N.Y.S. 2d 904, 908 (1993)).  In the

context of insurance contracts, the principal factors considered by New York courts have been:

"the location of the insured risk; the insured's principal place of business; where the policy was

issued and delivered; the location of the broker or agent placing the policy; where the

premiums were paid; and the insurer's place of business." <u>Olin Corp</u>. 743 F. Supp. at 1049

(citing cases).

These factors are not to be applied formulaically, however; rather "courts must

evaluate how much weight should be allotted to these factors given the specific facts of each

case." <u>In re Payroll Express Corp.</u>, 216 B.R. 344, 354 n.5 (S.D.N.Y. 1997).  " '[T]he law of

the jurisdiction having the greatest interest in the litigation will be applied and … the [only]

facts or contacts which obtain significance in defining State interests are those which relate to

the purpose of the particular law in conflict.' " <u>Northwestern Mut. Life Ins. Co. v. Wender</u>,

940 F. Supp. 62, 65 (S.D.N.Y. 1996) (brackets in original, quotation omitted).

Applying these factors to the case at bar, it is clear that the application of New York

law is mandated with respect to this coverage dispute. There is no dispute that Plaintiffs' are

New York corporations with their principal places of business also located in New York. See

Thompson Decl. Ex.'s "A" and "B". In addition, the Agent for Defendant WESTCHESTER

who issued the policy has its offices in New York; see Antin Decl., Ex. "3" as well as the

insurance broker for the insureds. See Thompson Decl. Ex. "B". Accordingly,

notwithstanding the fact that the loss in question took place in New Jersey, the New York

contacts evidence that the "center of gravity" as it relates to the subject insurance policies

issued to the Plaintiffs is located in New York.

## II.

## THE PARTIES DISPUTES EMANTE FROM COVERAGE ISSUES FOR WHICH APPRAISAL IS NOT A REMEDY

LEXINGTON and WESTCHESTER's basis for disputing the amount to be awarded

under the present claim can only be fairly categorized as a disagreement, at least in part, as to

the applicable coverages afforded and not solely a dispute as to the amount of loss, thereby

making appraisal an inappropriate remedy in this case. See, Kawa v. Nationwide Mutual Fire

Insurance Co., 174 Misc.2d 407, 664 N.Y.S.2d 430 (1997). Specifically, LEXINGTON and

WESTCHESTER declined coverage and make unsubstantiated claims that AMEREX loss of

business income, business interruption and extra expense is caused in part by circumstances

having nothing to do with the loss, i.e, the September 11, 2001 terrorist attacks and economic

and specific market declines. Defendants also contend that Plaintiffs losses are limited as a

result of (1) Plaintiffs failure to comply with applicable policy terms and conditions, (2)

spoliation of evidence caused by Plaintiffs; and (3) Plaintiffs general failure to cooperate.

Antin Decl. at Ex."8" and Ex. "10". By asserting these positions there can be no doubt that a

dispute as to coverage exists.    Moreover, while the LEXINGTON Policy contains an

appraisal clause, the WESTCHESTER Policy does not.

The appraisal clause contained in the LEXINGTON Policy provides in pertinent part:

.  .  .

5

**Appraisal.**
**In case the insured and this Company shall fail to agree as to the cash value or the amount of loss, then, on written demand either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days to agree upon such umpire, than, on request of the Insured or this Company such umpire shall be selected by a judge of a court of record in the state in which the covered property is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and failing, to agree, shall submit their differences, only to the umpire. An award in writing, so itemized, of any two (2) when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. LEXINGTON POLICY at COP0121 (Ed. 07/88) at page 3 of 4, para's 123 to 138 and page 4 of 4, para's 139-140. (Antin Decl. at Ex. "2");**

. . .

Clearly the intent of such a provision triggers this procedure when the sole issue is the determination of the amount of loss. That is not the case at bar.

Essentially conceding that they do not intend to waive coverage defenses, Defendants nonetheless contend that the mandatory nature of an appraisal procedure is inapplicable even when coverage is at issue. However a review of the cases cited by Defendants in support of this proposition reveals that when a dispute as to coverage exists, Courts have rarely enforced the appraisal provisions of an insurance policy.

Defendants first cite <u>Buchholz v. United States Fire Ins. Co.</u>, 293 N.Y. 82, 85-86, 56 N.E.2d 43 (1944). In, <u>Buchholz</u>, <u>supra</u>, there existed a dispute as to whether the loss inventory being claimed was sold at the time of the loss but not delivered and whether the amount of the

loss should be calculated based upon a selling price. Accordingly, as distinguished from the case at bar, <u>Buchholz</u> raised no coverage issues.

Defendants also rely on <u>Matter of Delmar Box Co</u>. (Aetna Ins. Co.), 309 N.Y.2d 60, 127 N.E.2d 808 (1955). In <u>Matter of Delmar Box Co</u>., <u>supra</u>, the insured initiated an action to compel appraisal under the policy. <u>Id</u>. at 63. The Appellate Division reversed the court at Special Term and dismissed the petition based upon the ground that "that the provisions for appraisal 'do not constitute enforcible agreements to arbitrate controversies arising thereunder'". <u>Id</u>. In affirming the Appellate Division, the Court of Appeals dealt with these issues concerning the use of an arbitration statute to an insurance policy created appraisal provision, which it ultimately rejected. At no point in time did the issue of whether appraisal is appropriate when coverage is still at issue.

Defendants also rely on <u>Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co</u>., 279 F. Supp.2d 235, 241-242 (S.D.N.Y. 2003) in support of their position. In <u>Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co</u>., <u>supra</u>, there was a dispute regarding whether the calculation of the length of restoration period falls within the "appraisers' purview" and not whether appraisal is appropriate when coverage dispute exists. The Court in <u>Duane Reade Inc</u>. held that "although defining what was meant by the Restoration Period was a coverage issue", <u>see</u> <u>Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co</u>. 261 F. Supp.2d 293 (S.D.N.Y.) 2003), "now that that has been accomplished, the estimation of that [restoration] period in order to help value the loss is a matter of valuation, not coverage". <u>Id</u>. at 242. Accordingly, the Court decided that the calculation of the restoration period should proceed to appraisal only after the court decided that the coverage issue "defining what was meant by the Restoration Period was accomplished". <u>Id</u>. at 242. Thus, no coverage issues were outstanding at the time the Court

held that the <u>Duane Reade Inc</u>. calculation of the restoration period falls within the "appraisers' purview". <u>Id</u>. at 241.

Defendants also seek to rely upon <u>Clark v. Kraftco Corp</u>., 323 F. Supp. 359, 361 (S.D.N.Y. 1971), a case which pertains specifically to arbitration and discusses appraisal solely for the purposes of illustrating a distinction between arbitration and appraisal. The Court in <u>Clark v. Kraftco Corp</u>., <u>supra</u>, reasoned that "an agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, upon which judgment may be entered after judicial confirmation of the arbitration award, Civ. Prac. Act, § 1464, while the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action". <u>Clark</u>, <u>supra</u> at 361, citing <u>Matter of American Ins. Co</u>., 208 App. Div. 168, 170-171, 203 N.Y.S.206, 207-208.

Defendants attempt to mislead the Court by relying on <u>Matter of Penn. Central Corp</u>., 56 N.Y.2d 120, 451 N.Y.S.2d 62 (1982). In <u>Matter of Penn. Central Corp</u>., the dispute between the parties related to the valuation of their rights in the property at issue. Unlike, the case at hand, the parties agreed to submit their dispute to an appraisal proceeding. After a determination was made by the appraisers, the Petitioner commenced an action to confirm the determination that was made by the appraisers, the Trial Court dismissed the proceeding, concluding that it lacked jurisdiction to enter judgment on the determination of an appraisal. The Appellate Court reversed and confirmed the appraisal award as an arbitration award. The Court reasoned that "the plain meaning of the agreement was to submit the entire controversy between the parties impartial; third parties for final resolution. In all respects, except for the use of the word 'appraisal', this [agreement] constituted an arbitration agreement". <u>Id</u> at 127.

The Court of Appeals affirmed the Appellate Court's ruling, holding, that "the only dispute between the parties concerns a question of valuation which they [the parties] have agreed to submit to a panel of appraisers for a nonjudicial and expeditious determination; that such an award is not subject to challenge for failure to observe the formalities suited only for arbitration." Id. at 121. Consequently, this decision does nothing to advance the arguments advocated by the Defendants.

While Defendants seek to also rely on cases outside this jurisdiction that are facially appealing, since New York case law is firm on the issue that the appraisal provisions of an insurance policy should not be enforced where there is a dispute as to coverage, see Kawa v. Nationwide Mut. Fire Ins. Co., 174 Misc.2d 407, 408, 664 N.Y.S.2d 430, 431 (Sup. Ct., Erie County 1997), Zar Realty Mgmt. Corp. v. Allianz Ins. Co., No. 02 Civ. 6471, 2003 WL 1744288, at *4 (S.D.N.Y. March 31, 2003); Indian Chief, Inc. v. Fire and Cas. Ins. Co. of Connecticut, No. 02 Civ. 3401, 2003 WL 329054, at *3 (S.D.N.Y. February 13, 2003); GBC & A. Richardson v. Merrimack Mut. Fire Ins. Co., No. 98 Civ. 5967, 2000 WL 297171, at *2 (S.D.N.Y. March 21, 2000), this Court cannot rely upon law from outside of this jurisdiction in making its determination on the enforcement of the appraisal provisions at issue.[2]

Notwithstanding the foregoing, it is basic insurance law that an appraiser's function is not to resolve questions of coverage or to interpret provisions of the policy itself. Kawa v. Nationwide Mut. Fire Ins. Co., 174 Misc.2d 407, 664 N.Y.S.2d 430 (Sup. Ct., Erie County 1997). In Kawa, the plaintiff's home was damaged by a windstorm in February of 1997.

---

[2] Even one of these out of jurisdiction cases cited by Defendants underscores New York's view on the scenario in which mandatory appraisal is applicable. In Drescher v. Excelsior Insurance Company of New York, 188 F.Supp. 158, 159 (D.C. N.J. 1960), the Court noted that "the first hurdle to be surmounted is the propriety of this Court's enforcing the appraisal clause in the policy as against the insurer. Ohio favors such enforcement, *while New York does not*". (emphasis added) Id. at 159. The Court in that case chose to adopt Ohio law because "the [insurance c]ompanies having drawn the clause and being in a position to derive benefits therefrom, must reciprocally have such clause enforced against them." Id.

Following an inspection of the subject premises the defendant tendered a settlement offer for repairs. Maintaining that the policy required defendant to replace all of their aluminum siding with new vinyl siding, plaintiffs rejected the offer and demanded that their loss be submitted to appraisal pursuant to the policy and New York Insurance Law Section 3404. Defendant denied plaintiffs' request to submit the matter to appraisal, maintaining that there was a legal dispute presented, not merely a question as to the value for the loss sustained. The defendant stated that the policy required it to indemnify the plaintiff in a manner, which would put their home to its pre-windstorm condition and asserted that it only needed to repair the damage done. The plaintiff disagreed and claimed that the policy required replacement of the entire damaged aluminum siding with new vinyl siding. A declaratory judgment action was commenced wherein the plaintiffs maintained that the dispute should be resolved via appraisal and the defendant maintained that it was not required to submit the dispute to appraisal. Both sides moved for summary judgment. In ruling that the carrier did not need to submit to appraisal, the Court found compelling the fact that the coverage determinations would invariable affect the quantification of the loss, thus making appraisal an inappropriate vehicle.

Similarly, at bar are issues involving alternative causations affecting the insureds' loss, together with contentions concerning spoliation of evidence. These issues naturally bleed into the proper quantification of the loss, thus making appraisal inappropriate herein.

In Indian Chef, Inc., v. Fire and Casualty Insurance Company of Connecticut, 2003 WL 329054, (S.D.N.Y. 2003), the issue at bar was litigated by these same law firm before Judge Cote. Plaintiff insured filed an action to recover insurance proceeds under a policy of insurance. Defendant Insurer filed a motion for partial summary judgment seeking to compel appraisal under its policy of insurance. In that case, the insurer through correspondence,

rejected the insured's amount of loss. The insured commenced a lawsuit. Neither the insured nor the insurer demanded an appraisal prior to the commencement of the lawsuit. After the insurer was served with a lawsuit, counsel for the insurer told counsel for Indian Chef that is desired to resolve the issue of damages by appraisal pursuant to the insurance policy. Defendant, in its Answer asserted the demand for appraisal as an affirmative defense. At the initial pretrial conference before the Court, the insurer asserted its right to an appraisal. Indian Chef objected to defendant's demand for an appraisal and motion practice ensued. In ruling against appraisal the Court in Indian Chef, based its reasons on the fact that an appraisal would not be fruitful and that the dispute as to the calculation of an amount of loss "goes to coverage under the policy and can only be resolved by analysis and application of the policy". Citing Kawa, 664 N.Y.S.2d at 431.

Likewise, in Zar Realty Management Corp., v. Allianz Insurance Company, No. 02 Civ. 6741 (HB) (S.D.N.Y 2003), defendant sought to compel plaintiffs to proceed with appraisal. In that case, the plaintiffs contended that the dispute involves a denial of coverage and as such the dispute cannot be resolved by appraisal. In rejecting appraisal, the Court reasoned that the portions of the controversy centered on the insurer's denial of liability under the policy and not on the valuation of the loss. Id. at *3. The Court reasoned that the dispute concerned the scope of defendant's policy coverage and not the computation of the amount of loss, thus, the Court further reasoned that an appraisal would not be appropriate to resolve the dispute with regard to coverage matters, citing Penn Central Corp., v. Consol. Rail Corp., 56 N.Y.2d 120, 27, 451 N.Y.S.2d 62, 66 (1982), and should not referred for appraisal. See Indian Chef, 2002 WL 329054, at *3; Kawa, 664 N.Y.S.2d at 431. The Court also held that defendant's repudiation of liability warrants the denial of defendant's motion to compel

appraisal as to those losses and damages rejected by the insurer's denial letter which concerns the scope of coverage, citing <u>Foreign Credit Corp., v. Aetna Casualty and surety Co.</u>, 276 F. Supp. 791, 793 (S.D.N.Y. 1967) ("a repudiation of liability by an insurance company excuses the insured from further performance on his part of the conditions of the policies." (quoting <u>Beckley v. Otsego County Farmers Corp., Fire Ins. Co.</u>, 159 N.Y.S.2d 270, 274 (3rd Dep't 1957). <u>Id</u> at. *4. The act of repudiation may result in numerous ways; among others, from the sending of a letter denying all liability and refusing to pay the loss. <u>Sherri v. National Sur. Co.</u>, 243 N.Y. 266, 273, 153 N.E. 70. (1926). Here, since Defendants, by letter dated February 21, 2006, Thompson Decl. at ¶ 24 denied liability based upon AMEREX's alleged failure to comply with the terms and conditions of the policy, failure to cooperate with the investigations of the claims and spoliation of evidence, and refused to pay the loss, their motion to compel appraisal should be denied. <u>Beckley v. Otsego County Farmers Corp., Fire Ins. Co.</u>, <u>supra</u>.

In light of the foregoing, it is clear that in our present case the dispute between the parties is one of coverage and these issues require legal and factual analysis to be resolved by litigation. Consequently, appraisal is not an appropriate remedy in this case. As a result, Defendant's motion should be denied.

## III.

### <u>LEXINGTON and WESTCHESTER FAILED TO ACT IN GOOD FAITH WITH RESPECT TO APPRAISAL AND FAILED TO DEMAND APPRAISAL WITHIN A REASONABLE TIME, THEREBY WAIVING THEIR RIGHTS TO THE PROVISION</u>

Even assuming *arguendo* that Defendant had not denied coverage of Plaintiffs' appraisal is still unwarranted because any "demand" Defendant made was unequivocally untimely. *See* <u>Chainless Cycle Mfg. Co. v. Security Ins. Co.</u>, 169 N.Y. 304, 310 (1901) ("[t]he

right to require an appraisal 'is not indefinite as to time… but must be exercised within a reasonable period…"). Id. at 310.

The LEXINGTON Policy, supra, provides that either party may make a demand for an appraisal. Antin Decl. at Ex. "2". However, "that right is not indefinite as to time, but must be exercised within a reasonable period, depending upon the facts of the particular case.  Neither party can so use the right as to take undue advantage of the other, but both must act in good faith." Langsner v. German Alliance Ins. Co., 67 Misc. 411, 123 N.Y.S. 144 at 145 (N.Y. Sup. 1910) citing Uhrig v. Williamsburgh City Fire Ins. Co., 101 N.Y. 362, 4 N.E. 745 (1886), Bishop v. Agricultural Ins. Co., 130 N.Y. 488, 29 N.E. 844 (1892). If the insurer did not make a demand for appraisal within a reasonable time, the insured would have the right to assume that the insurer had waived its privilege under the appraisal clause.  Uhrig v. Williamsburgh City Fire Ins. Co., 101 N.Y. 362, 4 N.E. 745 (1886); Chainless Cycle Mfg. Co. v.  Security Co., 169 N.Y. 304, 62 N.E. 392 (Ct. of Appeals 1901). Here, Defendants conducted a long and extensive investigation of this claim requesting hundred of documents and demanded Examinations Under Oath of numerous witnesses employed by AMEREX or under its control, amassing 1071 pages of transcript. See Thompson Decl., at Ex.'s "E" through "K". Notwithstanding this rigorous investigation, at no time prior to the commencement of this lawsuit did they make a demand for appraisal or even raise the topic. Rather, only after litigation commenced concerning a loss which took place almost six years ago and almost three years since the claim for coverage to the excess carriers was made, did Defendants seek to invoke the appraisal provisions of the policy and strip away Plaintiffs' rights to have all issues resolved by this Court.

13

The history of the post Examinations Under Oath claims process also makes clear that Defendants current demand for an appraisal is disingenuous and furthermore distinguishes this case from other scenarios wherein the carrier timely made a demand for an appraisal. On February 21, 2006, Defendants denied AMEREX's claim. Antin Decl. at Ex. "7". The denial letter offered "AMEREX the opportunity to listen to a presentation by the insurers consultants, critique their conclusions and provide different or additional analyses for consideration of the insurers". Antin Decl. at Ex. "7". This letter did not discuss or demand appraisal. Pursuant to the February 21, 2006 letter, on April 19, 2006 the parties held a meeting to discuss their views about the claim, its factual basis, the documentation and calculation of the claim, all with their respective experts and counsels in attendance. At no time during the April 19, 2006, Defendants raise proceeding by appraisal and consequently, no demand for appraisal was made. Subsequent to the April 19, 2006 meeting, which proved futile in that the parties could not agree upon the methodology of calculation of the loss or the amount of the loss, the parties agreed to an alternative dispute remedy mechanism, namely, mediation, in an attempt to resolve this claim. Thompson Decl. at ¶ 25. Prior to the mediation, the parties submitted a mediation statement, documents utilized by the accountants in arriving at their calculations, the methodology that the parties respective experts used in their calculations, relevant facts surrounding the loss and pertinent Examination under Oath conducted transcripts. Thompson Decl. at ¶ 26. Subsequent to the parties' submission of a mediation statement, they participated, alone with their accountants, in several separate meetings with the mediator from November 2006 through April 2007. The Mediator even met with the parties expert accountants without anyone else present. At this point Defendants still had not demanded an appraisal or even had discussions regarding appraisal. Thompson Decl. at ¶ 27.

In or about March 2007 the Defendants made a clearly inadequate offer to the Plaintiffs and in April 2007 AMEREX rejected this offer. Thompson Decl. at ¶ 28. Again, the Defendants never discussed or demanded appraisal. This lawsuit was then commenced on or about April 23, 2007 and amended on or about May 18, 2007. Thompson Decl. at Ex. "A". Defendants still had not served a written demand for an appraisal at the time litigation commenced. It was not until after Defendants were served with a lawsuit that they sent a written demand for an appraisal. Thompson Decl. at ¶ 30.

"Implicit in the appraisal clause is the duty of both sides to proceed in good faith." Saterson v. Planet Insurance Company, 1994 WL 689084 (S.D.N.Y. 1994) citing Mizrahi v. National Ben Franklin Fire Ins. Co., 37 N.Y.S.2d 698, 701 (Kings County 1942), Chainless Cycle Co. v. Security Ins. Co., 169 N.Y. 304, 310 (1901). In Saterson, the plaintiffs had insurance on their home and claimed a loss when their house suffered damage due to a fire. The plaintiff's insurance policy in Saterson contained a standard appraisal clause. There were disputes between the parties as to whether or not an appraisal was demanded and whether or not an appraisal was necessary before commencing suit, due to the factual confusion as to whether or not there was a delay or waiver of the right to appraisal in accordance with the appraisal provisions of the policy. The Court stated, "[B]ecause plaintiffs and defendants offer radically different perspectives on their alleged good faith efforts during the appraisal process, it is not proper for this court to grant either summary judgment on plaintiff's first claim, or partial summary judgment. It cannot be said, as is required under Fed. R. Civ. P. 56, that there are no material issues of fact in dispute. The parties disagree, for example, on whether phone calls were returned and appointments kept, and whether defendant made good faith efforts to proceed promptly with the appraisal process. Answers to such questions go far toward

assessing whether the parties proceeded in good faith, and such issues are best left to a jury, the only proper arbiter of conflicting testimony." <u>Saterson</u>, <u>supra</u>. at *5.

Clearly, an appraisal would be impracticable at this juncture of the claim. As outlined above, Defendants conducted an extensive investigation of this claim and at no time prior to the commencement of this lawsuit did they demand a written appraisal nor even had discussions regarding an appraisal. Such an extensive delay in making any purported "demand" is without question unreasonable. Such a protracted delay is undoubtedly unreasonable, and signifies that Plaintiffs should not be compelled to submit to an appraisal. <u>Uhrig v. Williamsburgh City Fire Insurance Co., 10 N.Y. 362 at 366, 4 N. E. 745 (1886)</u>. See also, <u>Bard's Apparel Manufacturing, Inc. v. Bituminous Fire and Marine Insurance Co.</u>, 849 F.2d 245 (6th Cir. 1988).

The Defendants cite to <u>SR International Business Insurance Co. v. World Trade Center Properties, LLC</u>, 2002 WL 1905968 (S.D.N.Y. 2002) for the proposition that the defendant did not waive its right to an appraisal. That case, however, is easily distinguishable from the instant action. The Court in <u>SR International Business Insurance Co.</u>, found that the parties had spent a substantial amount of time between the filing of the pleadings and motions attempting to negotiate an agreement as to an appraisal process with the various insurers and the insured. In that light, the Court stated that Allianz had not waived its right to an appraisal due to its conduct. Such a situation is definitely not present here. Rather, the case at bar is more analogous to <u>Saterson</u>, which requires that, at best, the question of waiver goes to the trier of fact.

Except for <u>SR International Business Insurance Co. v. World Trade Center Properties, LLC</u>, Defendants rely on cases outside of the jurisdiction to support its contention that

although appraisal was not demanded until the Plaintiffs commenced the lawsuit they did not waive their right to seek appraisal. Defendants also in support of this proposition have cited the cases of <u>McCord v. Horace Mann Inc. Co.</u>, 390 F.3d 138, 143-144 (1st Cir. 2004) (Massachusetts law), <u>Terra Industries, Inc., v. Commonwealth Ins. Co. of America</u>, 981 F. Supp. 581 (N.D. Iowa 1997), <u>School Dist. No. 1 of Silver Bow County v. Globe & Republic Ins. Co. of America</u>, 146 Mont. 208, 215-216, 404 P.2d 889, 893-894 (1965), <u>Hanby v. Maryland Cas. Co.</u>, 265 A.2d 28 (Del. 1970), <u>Keesling v. Western Fire Ins. Co. of Fort Scott, Kan.</u>, 10 Wash. App. 841, 520 P.2d 622 (Wash. App. 1974) and <u>Monroe Guar. Ins. Co. v. Backstage, Inc.</u>, 537 N.E.2d 528 (Ind. App. 3 Dist. 1989).

Defendants have mischaracterized <u>McCord v. Horace Mann Inc. Co.</u>, <u>supra</u>. Although in that case the Court held that the "insurer did not waive the reference provision [synonymous to appraisal provision] by disputing liability", <u>Id</u>. at 138, the Court based its holding on the fact that insurer in its correspondence to the insured "mentioned the reference [synonymous to appraisal] condition several times, and specifically reserved its rights as to a dispute about the amount of loss." <u>Id</u>. at 144.

A similar fact pattern is found in both <u>Terra Industries, Inc. v. Commonwealth Insurance Company of America</u>, <u>supra</u> and <u>Keesling v. Western Fire Insurance</u>, <u>supra</u> the subject of appraisal was raised by the carriers prior to the initiation of a lawsuit, although not explicitly demanded under these circumstances, these Courts held that no waiver had occurred. <u>Terra Industries</u>, <u>supra</u> at 601; <u>Keesling</u> at 10 Wash. App. at 848; 520 P.2d at 627.

In the balance of the cases cited by Defendants, while they held against waiver, they all acknowledged that appraisal <u>could be</u> waived if not demanded in a timely fashion.

In contrast, other courts in other jurisdictions have refused to enforce untimely appraisal demands. In Lynch v. American Family Mut. Ins. Co., 163 Wis.2d 1003, 473 N.W.2d 515 (App. 1991) (Wisconsin law) the Court held that "absent a policy provision to the contrary, an insurance company may not demand an appraisal of a loss after the commencement of an action by the insured on that loss when the insurance company failed to demand the appraisal prior to the lawsuit even though it had an opportunity to do so". Lynch, supra. In Hodges v. Pennsylvania Millers Mut. Ins. Co., 449 Pa. Super 341, 673 A.2d 973 (Sup. Ct. 1996), the Pennsylvania Court held that "appraisal provision which is silent as to time in which appraisal request must be made does not permit request at any time but requires that request be made within reasonable time; thus homeowner's insurer's request for appraisal was untimely where it was made 23 months after notice of loss, after insureds were compelled to suit due to one year contractual statute of limitations, after submission of case to compulsory arbitration, after insurer's appeal..." Hodges v. Pennsylvania Millers Mut. Ins. Co., 449 Pa. Super at 345; 673 A.2d at 975.

## CONCLUSION

For the reasons set forth above, AMEREX, respectfully requests that (a) the Court grant AMEREX's Cross-Motion for partial summary judgment striking Defendants' Second Affirmative Defense, (b) deny Defendants' Motion seeking partial summary judgment compelling appraisal and (c) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 27, 2007

                                  WEG and MYERS, P.C.
                                  Attorneys for Plaintiffs
                                  Federal Plaza
                                  52 Duane Street
                                  New York, New York 10007

                                  BY: _____
                                      DENNIS D'ANTONIO (DDA 0973)
                                      JANESE N. THOMPSON (JT 7714)

19