UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
AMEREX GROUP, INC. and                              07 cv 3259 (HB)
AMEREX USA, INC.,

                Plaintiffs,

       -against-                                          **REPLY DECLARATION OF**
                                                                      **MARK L. ANTIN**
LEXINGTON INSURANCE COMPANY and                     **IN SUPPORT OF MOTION**
WESTCHESTER SURPLUS LINES                           **FOR PARTIAL**
INSURANCE COMPANY,                                  **SUMMARY JUDGMENT**

                Defendants.
---------------------------------------------------------------X

    Mark L. Antin states under penalty of perjury that the following is true and correct:

    1.    I am a member of the law firm Gennet, Kallmann, Antin & Robinson, P.C., attorneys in the within action for Lexington Insurance Company and Westchester Surplus Lines Insurance Company (the "Excess Insurers"). I make this declaration based on my personal knowledge.

    2.    Plaintiffs Amerex Group, Inc. and Amerex USA, Inc. (collectively "Amerex"), assert, in the Declaration of Janese Thompson Esq. dated July 27, 2007 ("Thompson Decl.") that "in April 2007 AMEREX rejected [the settlement] offer" made by defendants.

    3.    The Thompson Decl. is not made on personal knowledge, as are this Declaration and my July 6, 2007 Declaration.

    4.    The Thompson Decl. is devoid of any details of this purported "rejection." It does not state to whom the "rejection" was made, or when it was made, or in what form, whether through conversation or correspondence.

5. I personally handled this matter for the defendants. Mr. Dennis D'Antonio, a partner at Weg and Myers, P.C., handled the case on behalf of plaintiffs. I had no dealings with Ms. Thompson, and indeed never met her or heard her name, before this suit was commenced. It is thus unclear what knowledge she might have, or when she gained it, concerning the purported "rejection," as the allegation provided to the Court is completely free of detail. *See,* Thompson Decl. at ¶ 28.

6. No "rejection" was received from any source, at any time, by defendants through me, until commencement of the instant suit, which was perceived to be such a rejection.

7. Plaintiffs argue that the dispute over the amount of the claim constitutes a coverage dispute. However, like the contention that there was a rejection of defendants' settlement offer, the argument is devoid of any details. In fact, the dispute has, from its inception, been almost entirely a dispute about the amount of damages payable under the Lexington and Westchester policies, exactly the kind of dispute which the appraisal provisions of the policies are designed to address.

8. There are essentially two categories of damages in dispute. The first is the amount, if any, of business income loss plaintiffs suffered as a result of the rack collapse on August 3, 2001. This issue involves determining what income plaintiffs were likely to have generated in the months following the rack collapse had the accident not occurred. Complex accounting analysis is required to project the income loss. This projection is made even more complicated by a number of factors, including a then-ongoing national and regional decline in sales of the type of garments sold by plaintiffs, and the impact of the events of September 11, 2001 on retail sales. Analysis of this part of the plaintiffs' claim necessarily involved obtaining

their contemporaneous business records, and developing sales trend and other analyses. As to this category of damages dispute, the parties were exchanging information, data and analyses, either directly, through their accounting experts or through the mediator up through 2007. This dispute did not involve "coverage issues", except to the extent that any damages analysis must apply the indemnity provisions of the policy to determine the amount payable thereunder, which is inherent in every single appraisal conducted pursuant to the terms of an insurance policy. However, the meaning of the indemnity provisions has never been in dispute.

9.  The second main category of damages claimed by plaintiffs relates to extra expenses they allegedly incurred as a result of the rack collapse. Here, again, there is an issue regarding the quantum of damages, a dispute which perfectly falls within the appraisal provisions of the policy. Plaintiffs have made claim for some extra expenses which pre-date the accident, and some which long post-date the accident, far beyond the duration of the business income loss claimed. There are also issues of whether some of the extra expenses claimed were incurred to reduce the business income loss, a criteria under the policy. No coverage issues are raised with respect to these aspects of the plaintiffs' extra expense claim. There is no known dispute regarding of the meaning of the insurance provisions at issue, and it should, therefore, also be submitted to appraisal.

10. The defendants have always acknowledged that there is coverage under their policies for the occurrence on August 3, 2001, provided their insureds can establish that losses incurred as a result of that occurrence, for which indemnity is provided under the policies, exceed the limit of the primary coverage. If, as defendants assert, the plaintiffs' losses do not exceed the primary limit threshold, it will be entirely unnecessary to address the defenses raised in their Answers.

Dated: New York, New York
       August 2, 2007

By: _____
    MARK L. ANTIN (MA0427)