UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
AMEREX GROUP, INC. and                          07 cv 3259 (HB)
AMEREX USA, INC.,

                Plaintiffs,

        -against-

LEXINGTON INSURANCE COMPANY and
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

                Defendants.
------------------------------------------------------------------X

**REPLY BRIEF OF DEFENDANTS IN FURTHER SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT COMPELLING APPRAISAL
AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION**

                                Gennet, Kallmann, Antin & Robinson, P.C.
                                Attorneys for Defendants
                                45 Broadway Atrium
                                Litman Suite
                                New York, New York 10006
                                (212) 406-1919

Mark L. Antin (MA0427)
Michael S. Leavy (ML6150)
On the Brief

## PRELIMINARY STATEMENT

This Reply Brief is respectfully submitted on behalf of the defendants in further support of their motion pursuant to Fed. R. Civ. P. 56(b) granting defendant partial summary judgment specifically enforcing the appraisal clause of the insurance policy and in opposition to the cross-motion[1] of plaintiffs to strike the affirmative defense related to appraisal.

Also submitted herewith in further support of the Motion and in opposition to the Cross-Motion of Plaintiffs are a Declaration of Mark L. Antin dated August 3, 2007, and a Reply Statement of Undisputed Material Facts.

## ARGUMENT

## POINT I

## DEFENDANTS ARE ENTITLED TO COMPEL APPRAISAL

**A.     Both of Defendants' Policies Contain Appraisal Provisions**

Plaintiffs erroneously state that the Westchester policy does not contain an appraisal clause. The 165 lines of the standard fire insurance policy, which are codified in New York at Insurance Law 3404(e) and in New Jersey at NJSA 17:36-5.20, state that every insurance policy issued in either state[2] contains the following provision:

---

[1] While plaintiffs have "cross-moved" to strike the affirmative defense, this "cross-motion" seeks the mirror image of the relief requested in the defendants' motion. It is respectfully submitted that the cross-motion is a procedural feint designed solely to give plaintiffs the last word in opposing this motion, and that their "reply" due August 10, 2007 should be completely disregarded.

[2] Although it is argued by plaintiffs that the applicable law under New York's choice of law rule is New York law, this is far from clear in that the property insured, and loss thereto,

> Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, by any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

Moreover, the Westchester policy contains a clause which adopts the policy terms and conditions from the primary policy to which it is excess, i.e. the Fireman's Fund policy, which in turn contains an appraisal provision. Particularly, the Westchester Policy states:

> In respect of the perils hereby insured against, this Policy is subject to the same warranties, terms and conditions (except are regards the premium, the amount and limits of liability, and the renewal agreement, if any, and except as otherwise provided herein) as are contained in or as may be added to the Policy(ies) of the Primary Insurer(s) prior to the happening of a loss for which claim is made hereunder . . .

Exhibit "3" to Antin Decl., Excess Manuscript Form ACE092 (05-99). In turn, the Fireman's Fund policy states:

> Appraisal – if "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.
>
> If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of the receipt of the written demand. The two

---

occurred in New Jersey. However, since there is no conflict in the laws of the two states, such a distinction is immaterial to the question at bar.

appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us."

Exhibit "1" to Antin Decl., form AAIS COP-100 Ed. 2.0, page 19.

Accordingly, plaintiffs' failure to heed the statutory language applied to all policies, and their failure to closely read the language of their policies, lead them to an incorrect conclusion.

### B. The Coverage Disputes Between the Parties Can be Resolved After Appraisal in This Plenary Action Since They Are Not Connected With Issues of Determination of Damages

Plaintiffs claim that "THE PARTIES [sic] DISPUTES EMANTE [sic] FROM COVERAGE ISSUES FOR WHICH APPRAISAL IS NOT A REMEDY." Br. at 5, heading II. It is agreed that coverage disputes exist, and that they emanate from (1) whether plaintiffs preserved and retained records necessary to support their claim, or alternatively whether such records were spoliated, and from (2) whether plaintiffs furnished such records as they actually had, or alternatively wrongfully refused to provide such records. Such are the bases of

4

defendants' fourth and fifth affirmative defenses in its Answer at ¶¶ 50-52. However, the existence of those coverage issues does not mean that the entirely separate issue of the amount of damages cannot be resolved by appraisal, reserving the coverage issues for this plenary action, if necessary. Any appraisal determination of an income loss below $2.5 million would moot all other issues. Indeed, it is submitted that only where some coverage dispute is inextricably intertwined with the amount of damages that appraisal ought not occur before judicial resolution of the coverage issues.

Plaintiffs' attempt to distinguish the cases cited by defendants falls short of the mark. Plaintiffs protest that *Buchholz v. United States Fire Ins. Co.*, 293 N.Y. 82, 56 N.E.2d 43 (1944) and *Matter of Delmar Box Co. (Aetna Ins. Co.)*, 309 N.Y.60, 127 N.E.2d 808 (1955) are not on all fours with the fact pattern at issue here. While that point is true, it is irrelevant because the cases were not offered for their facts. Rather, the import of the Court of Appeals' language as cited in the cases, which cannot be disputed by plaintiffs, is that appraisal is appropriate as to those issues involving damages, reserving all other issues.

The Court of Appeals stated in *Buchholz*, 293 N.Y. at 85, that "the defendant insurer was justified in insisting that the value of the property be fixed by the appraisers prior to litigation of the issues". What those "issues" were which remained to be litigated is not entirely clear from the Court's decision, but clearly there were other issues, or the Court would not have taken note of them, and accordingly it cannot be truthfully said that "*Buchholz* raised no coverage issues", Br. at 7. Indeed, a review of the points of counsel in the headnotes reveals that the plaintiff insured raised issues concerning the good faith of the defendant insurer, and the defendant insurer raised the issue of whether the suit was prematurely instituted as conditions precedent to

suit – presumably submission to appraisal – had not been satisfied. These are certainly coverage issues. The point is that the issue of the amount of damages was required to be appraised before resolution of these other issues.

In the *Delmar Box* case, 309 N.Y. at 63, the Court stated that the defendant insurer "claimed that petitioner had misrepresented and concealed material facts, had sworn falsely in relation to the subject matter of the loss and, in addition, had no insurable interest in the building since it was situated on land leased from the New York Central Railroad under a lease which had expired." Notwithstanding these coverage issues, the Court in discussing appraisal indicated that "the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action." This discussion clearly considers the role of appraisal in the context of coverage disputes, all in accord with defendants' position herein. That one aspect of the holding of the case centered on an issue of statutory interpretation between the meanings of arbitration and appraisal is irrelevant here. *Delmar*'s holding on appraisal is clearly on point.

Similarly, the issues in *Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F.Supp.2d 235, 241-242 (S.D.N.Y. 2003) are apposite here, and plaintiffs' attempt to distinguish the case is ineffective. It is agreed that the Court there did not compel appraisal until the coverage issue concerning the **meaning** of the term "restoration period[3]" was resolved, and thereafter left the issue of the **duration** of the "restoration period" as within the purview of the appraisers to determine. However, in *Duane Reade* the coverage dispute about the meaning of

---

[3] The "restoration period" was the measure of the duration of the business interruption period for which lost profits and extra expenses could be recovered.

the "restoration period" was inextricably intertwined with the damage issues to be resolved on appraisal: the meaning of the term restoration period – which period the appraisers were to measure – was in dispute. There is no such disagreement here concerning the application of the policy terms sought to be applied in appraisal.[4] Here, the issues of spoliation and non-cooperation are completely separate and independent of the appraisable issue of the amount of damages, and do not stand in the way of the appraisal. Indeed, plaintiffs do not argue that the coverage issues here are in any way related to the calculus of damages.

Plaintiffs spend further ammunition attacking defendants' "*see, also*" citation to *Clark v. Kraftco Corp.*, 323 F.Supp. 359, 361 (S.D.N.Y. 1971), particularly citation to the language "the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for a plenary action." They further argue that in defendants' "*see, also*" citation to *Matter of Penn. Cent. Corp. (Consolidated Rail Corp.)*, 56 N.Y.2d 120, 451 N.Y.S.2d 62 (1982), "[d]efendants attempt to mislead the Court", Br. at 8. However, plaintiffs do not and cannot dispute the citation, or principle, that "appraisal resolves only a valuation question leaving all other issues for resolution at a plenary trial". Neither case was offered for more than the propositions directly quoted, that appraisal concerns valuation issues, preserving all other issues for the plenary action. Such is the law, and cannot be not disputed.

Plaintiffs ignore, and thus admit the import of: *Hala Cleaners, Inc. v. Sussex Mut. Ins. Co.*, 115 N.J.Super. 11, 277 A.2d 897 (N.J.Super.Ch. 1971); *Drescher v. Excelsior Insurance Co.*

---

[4] It is of course conceivable that such a dispute might arise, in which case the parties would need to apply to this Court for future guidance. Even so, such a dispute would not nullify the appraisability of this claim. Such is the factual context in *Duane Reade*.

*of New York*, 188 F.Supp. 158, 159 (D.C.N.J. 1960), and; *Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.*, 77 N.J. 1, 389 A.2d 439 (1978).

Finally, after attempting to factually distinguish some of the precedent offered by defendants, plaintiffs rely upon an Erie County Supreme Court case[5] and three unreported Southern district cases in support of their position that appraisal is inappropriate here, and that the coverage issues concerning plaintiffs' conduct during the claim investigation cannot be reserved for this plenary action following an appraisal to determine the amount of damages. That reliance is misplaced.

Plaintiffs first cite *Kawa v. Nationwide Mut. Fire Ins. Co.*, 174 Misc.2d 407, 664 N.Y.S.2d 430 (Supr. Ct. Erie Cty. 1997), yet undermine their position by incorrectly stating that "the Court found compelling the fact that coverage determinations would invariable [sic] affect the quantification of the loss . . .", Br. at 10. In *Kawa*, however, the very determination of the amount of damages was dependent upon and linked to the scope of the existing coverage and its applicability to the causation mechanism. The windstorm-damaged property at issue was aluminum siding, and defendant insurer's claim representative opined that the siding was deteriorated as a result of age, wear and tear, and improper maintenance, and its attachment to the house by "face nailing" was an attempt at repair before the loss, not an emergency measure during the storm. Accordingly, the insurer maintained that, to place the house in its pre-loss condition, replacement of a portion of the siding was all that was required. The insured

---

[5] Decisions of New York's trial courts are only "some evidence of New York's substantive law." *Competex, S.A. v. Labow*, 788 F.2d 333, 341 at fn. 16 (2d Cir. 1986).

homeowner, on the other, hand, demanded that the house siding be replaced entirely. Thus, the Court held,

> Defendant contends that this dispute goes to coverage under the policy and can only be resolved by analysis and application of the policy. This Court agrees.

*Kawa*, 664 NY.S.2d at 431. Just as this Court had initially held in *Duane Reade* before the meaning of the term "restoration period" was resolved, the *Kawa* Court held that appraisal was not appropriate where the coverage issues, **which were bound with the amount of damages**, were unresolved. Had *Kawa* progressed to the point of a determination on liability, that case would also have been ripe for appraisal. The *Kawa* Court concluded with a statement of the law:

> appraisal extends merely to the specific issues of cash value and the amount of loss, leaving all other issues for determination in a plenary action [citing *Delmar Box*].

Following the discussion of *Kawa*, plaintiffs make a revealing comment, seemingly in passing, which goes to the crux of the matter.

> Similarly, at bar are issues involving alternative causations [sic] affecting the insureds' loss, together with contentions concerning spoliation of evidence. The issues naturally bleed into the proper quantification of loss, thus making appraisal inappropriate herein.

Br. at 10. Indeed, this is the only mention of **facts** which purportedly bar appraisal, and the only argument that the issues to be appraised are wrapped up somehow in coverage disputes. The issue of whether plaintiffs spoliated their business records does not, however, affect the determination of the damages. Should **this Court**, after an appraisal award, decide to set aside some part of a damages award[6] as a result of spoliation, such would be separate and apart from an

---

[6] Assuming that an appraisal does not determine that the amount of loss suffered is $2,500,000 or less, in which case these defendants would owe nothing.

appraisal award. Defendants do not propose to submit the spoliation or non-cooperation issues to the appraisers, and certainly plaintiffs would not undermine their own claim by claiming their own records were destroyed or withheld, whether intentionally or negligently.[7]

Thus, the only issue raised by plaintiffs concerning the quanta of damages is "alternative causations [sic] affecting the insureds' loss." Br.at 10. No hint is given as to what this might mean, but the only congruent facts are that during the ongoing settlement discussion the parties had from April 2006 through the purported rejection of defendants' offer in April 2007, Thompson Decl. at ¶¶ 25-28, "the parties held several separate meetings [at which they] presented facts about the loss, facts about the business, supporting documentation and claim calculation methodology." Thompson Decl. at ¶ 27. Particularly, it is thought that this tangential allusion refers to the defendants' position that some of the "lost" sales of plaintiffs are not due to the rack collapse, but rather to the ongoing market downturn in the apparel industry, the additional economic impact of 9/11, and the issue of proximate causation of certain extra expenses claimed. *See*, Antin Reply Decl. at ¶¶ 7-10. This clearly involves a simple, appraisable loss calculation, not a coverage defense (indeed none is asserted in that regard), and plaintiffs do not point to some disputed language in the terms and conditions of the policy which would require this Court to interpret such provisions prior to the appraisal[8].

Plaintiffs cite to *Indian Chef, Inc. v. Fire and Cas. Ins. Co. of Conn.*, 2003 WL 329054 (S.D.N.Y. 2003). They correctly note that there, as here, appraisal was demanded after plaintiff

---

[7] Although certainly appraisers could find that any aspect of the claim for damages does not warrant recovery due to the paucity or absence of records supporting it.

[8] Although it is obvious that if such an issue were raised as to the meaning of a contract term, it could be resolved by this Court before appraisal, as in *Duane Reade.*


commenced suit. However, they fail to discuss the nuances of the Court's holding as to the two components of the claim, property damage and business interruption. First, as to property damage, the Court held that appraisal could not be performed because it was impracticable due to the interim destruction of the property sought to be appraised. *Indian Chef* at *2. However, here, the damaged property has long since been inspected and catalogued, and the issue of the amount of damages – economic loss – is based on plaintiffs' books and records, not its physical inventory. In other words, the quanta and value of the damaged property itself is not at issue here, but rather the economic impact of the occurrence on future income. Second, the *Indian Chef* Court held that appraisal of the outstanding business interruption claim could not be accomplished because the parties had differing interpretations as to whether such recovery was due under the Civil Authority or Extended Business Income provisions of the policy, or both. *Indian Chef* at *3. As to the latter issue, the Court reasoned that the coverage dispute as to which coverage applied precluded an appraisal under those provisions. Had those coverage issues subsequently been resolved by the Court, the business interruption claim could eventually have been appraised.

Plaintiffs elide certain facts and holdings from their discussion of *Zar Realty Management Corp. v. Allianz Ins. Co.*, 2003 WL 1744288 (S.D.N.Y. 2003), which is particularly surprising considering from whose bench the decision issued, and claim that this Court rejected the insurer's demand for appraisal. In fact, this Court compelled appraisal as to all of the issues

presented, except for three areas where the insurer had already clearly and unequivocally denied liability **on coverage grounds**[9]. This Court is certainly aware of its holding:

> Except for those losses and damages where coverage was rejected by defendant in its March 11, 2002 letter, plaintiffs are hereby ordered to comply with the appraisal conditions of the Fire Policy (including, but not limited to the time table therein) to evaluate the cost of the amount of loss claimed by plaintiffs under the policy.

*Zar* at *5.

Plaintiffs attempt to make hay of defendants' letter of February 2006 indicating that the loss sustained was less than the $2,500,000 value of the primary policy, claiming that the letter amounted to a "coverage denial." The letter on its face says otherwise. It states clearly that the sole issue is the amount of the loss:

> Based upon the documentation, testimony and information which the excess insurers have been able to obtain through their investigation to this point, they are unable to conclude that Amerex's covered financial losses due to the August 3, 2001 rack collapse, exceed the limit of Amerex's primary insurance coverage [of $2.5 million].

Moreover, the letter continued that:

> The nature of the claims submitted and the analysis of it by the excess insurers' consultants does not lend itself to a more detailed discussion of every basis for the conclusion that the insured has failed to demonstrate covered losses in excess of primary limits. For these and other reasons, the excess insurers seek the opportunity to meet with the insured and its representatives to explain their determination in more detail. This would also afford the insured an opportunity to respond to the claim analysis, and, should it so choose, to provide or highlight any information which it claims has not been properly considered or not given sufficient weight.

---

[9] Those are: (1) the loss of rent claim, as to which the insurer had "consistently denied having any further liability under the policy"; (2) the claim for asbestos contaminated carpet for which the insurer asserted there was "no coverage", and; (3) the claim for lead cleanup which the insurer asserted "preexisted" the loss. *Zar* at *4.

*See*, Exhibit "7" to Antin Decl. Indeed, plaintiffs concede that they availed themselves of this opportunity, and that discussions, presentations and mediations followed this letter **for a period of 14 months**, always centered on **the amount of damages suffered**, not on any coverage dispute. They further concede that considerable sums were offered to them.[10] Finally, they offer only a naked assertion, and no evidence, of the purported rejection of this offer. As is set forth in the Reply Antin Decl. at ¶¶ 3-6, this is not the case.

Given that no coverage denial ever issued here, citations are inapposite to *Foreign Credit Corp. v. Aetna Cas. and Sur. Co.*, 276 F.Supp. 791 (S.D.N.Y. 1967), *Beckley v. Otsego County Famers Corp. Fire Ins. Co.*, 159 N.Y.S.2d 270 (3rd Dep't 1957), and *Sherri v. National Sur. Co.*, 243 N.Y. 266 (1926).

Accordingly, it is respectfully submitted that the Court should compel an appraisal, limited to the valuation and amount of loss, in this matter.

## POINT II

### APPRAISAL HAS NOT BEEN WAIVED

Plaintiffs' "factual" argument as to some purported waiver of the appraisal provision in the policy is a litany of complaints about the amount of time that elapsed since the loss occurred, a period of six years. However, It is plaintiffs who have consumed nearly five of those years, and the sixth year was devoted to lengthy and detailed settlement negotiations and mediation.

---

[10] Plaintiffs state that the offer made to them was $1,000,000. While, pursuant to F.R.E. 408, defendants have offered no evidence of the amount of the settlement offer, it is strange that plaintiffs consider an offer of the amount they state to be "not substantial," Thompson Decl. at ¶ 28, even if they deem it to be inadequate. They also state in conclusory fashion that it was "not made in good faith."

13

It is undisputed that plaintiffs did not submit a claim to these defendants for nearly two years after the August 2001 loss, until June 2003. Antin Decl at ¶¶ 4-5, Exhibit "4" thereto. While they characterize the claim investigation as "lengthy" and involving "numerous" documents, they do not, and cannot, say that the June 2003 through February 2006 investigation of their multi-million dollar claim was excessive or unwarranted. Indeed, they admit that although claim was presented in June 2003, Antin Decl. at ¶¶ 4-5, they did not produce any documents for 13 months, until July 2004, Thompson Decl. at ¶ 14, and did not complete examinations under oath for another 15 months, until October 2005. Thompson Decl. at ¶¶ 16-22. The foregoing delays attributable to plaintiffs were compounded by plaintiffs' destruction and non-retention of records during the period August 2001 through June 2003, when they first submitted a claim to these defendants, and their delay through July 2004 in making any documents available to defendants. *See*, Antin Decl. at ¶¶ 8-12.

Had plaintiffs felt the investigation was excessive, they could have so protested, or commenced a declaratory judgment action to limit the investigation, at any time. They do not, however, argue, nor can they, that such investigation was unreasonable or unduly lengthy given the size of their claim and its complexity encompassing lost sales, lost re-orders as a result of lost sales, and lost profits which involve market conditions in 2001, all of which involve complex accounting issues, forecasting and projection of future economic activity.

Following the investigation and declination, and for the next 14 months, from February 2006 through April 2007, plaintiffs willingly participated in ongoing discussions, presentations, and a mediation. Antin Decl. at ¶¶ 15-19, Thompson Decl. at ¶ 24-28. Had they rejected this approach, they could have sued in February 2006 after receiving the declination letter.

Plaintiffs claim that the "current demand for an appraisal is disingenuous." Br. at 14. They are apparently arguing that either (1) defendants ought to have asserted a demand for appraisal while the investigation was ongoing and before defendants reached any conclusions (which is ludicrous), or that (2) the declination letter should have "discuss[ed]" appraisal, Br. at 14., or that (3) appraisal ought to have been "mentioned" throughout the ongoing settlement negotiations thereafter, or that (4) they should have been reminded that the policy contained an appraisal clause (of which plaintiffs and their counsel ought to have been well aware), or that (5) too much time passed in the days between their purported "rejection" of the offer some indeterminate time in April 2007 and the time they commenced suit on April 23, 2007. None of these arguments are persuasive as to an alleged waiver, much less as to some unspecified bad faith.

The result here should be the same as in *SR International Bus. Ins. Co. Ltd., v. World Trade Center Properties LLC*, 2002 WL 1905968 (S.D.N.Y.), where appraisal was held not to have been waived despite ongoing litigation, where the insurer raised the appraisal issue in its Answer.

> [Defendant insurer] Allianz reserved its right to demand appraisal in its Reply to the Silverstein Parties' Counterclaim, and spent a substantial portion of the time between the filing of that pleading and the filing of its present motion attempting to negotiate an agreement for an appraisal process with the various insurers and the insured. Thus, by its conduct, Allianz did not waive its appraisal rights.

Here, defendants asserted in their Answer their entitlement to appraisal, and the only issue in the 3 months the case has been pending is defendants' entitlement to appraisal. It is unclear how plaintiffs find this case "easily distinguishable". Br. at 17.

None of the cases cited by plaintiffs are factually apposite. In *Saterson v. Planet Ins. Co.*, 1994 WL 689084 (S.D.N.Y. 1994), the insureds demanded appraisal in January 1993, which process had not been consummated by the time suit was filed in October 1993 due to allegations of repeated delay on both sides **after appraisal was invoked** as to naming appraisers and agreeing on appraisal procedures. Each party accused the other of delay and bad faith in the **conduct of the appraisal process itself**, and it was to these allegations that the Court held that there were issues of fact. *Saterson* at *4. The only factual disagreement here is that plaintiffs claim, without any corroborating details, that they rejected defendants' offer sometime during the three weeks in April 2007 before they commenced suit. That alone does not make an issue of fact, and is certainly not analogous.

The other cases plaintiffs cite are inapplicable here. In *Chainless Cycle Mfg. Co. v. Security Ins. Co.*, 169 N.Y. 304 (1901), a jury verdict was affirmed that appraisal had been waived where the insurer's agent rejected the plaintiff's demand for appraisal, and the damaged property was already sold, before defendant reversed its position and demanded appraisal. In *Langsner v. German Alliance Ins. Co.*, 67 Misc. 411, 123 N.Y.S. 144 (App. Term. N.Y. Cty. 1910), a grant of directed verdict was reversed, and it was held to be a jury question whether a request for appraisal was valid **after** plaintiff had disposed of the destroyed goods. In *Uhrig v. Williamsburg City Fire Ins. Co.*, 101 N.Y. 362 (1886), a jury verdict was affirmed that the defendant insurer had refused to permit its appraiser to name an umpire as the third appraiser, thus frustrating the appraisal provision. In *Bard's Apparel Mfg. v. Bituminous Fire and Marine Ins. Co.*, 849 F.2d 245 (6th Cir. 1988) (Tennessee law) summary judgment granting appraisal was refused where the insured property was long since destroyed by the time appraisal was sought.

In *McCord v. Horace Mann Ins. Co.*, 390 F.3d 138, 143-144 (1st Cir. 2004) (Massachusetts law), the Court found that even where the insurer denied any liability for the loss and rejected the insured's proof of loss, where it had consistently disputed the amount of damages, and had asserted the appraisal provision as an affirmative defense in its answer, it had not waived the provision. The Court mentioned in passing, but certainly did not "base[] its holding on"[11], the fact that appraisal had been mentioned in discussions between the parties, nor did the Court hold that the absence of such references would have mandated a different outcome. Here, it seems that plaintiffs would engraft onto the law a provision requiring that appraisal be "discussed" or "mentioned" in order to support a subsequent due demand for same. That is simply not the law in any jurisdiction surveyed here, and plaintiffs' urged requirement of "mention" of the appraisal demonstrates how far plaintiffs must reach to make their argument.

Similarly, in neither *Terra Industries, Inc. v. Commonwealth Ins. Co. of America*, 981 F.Supp. 581 (N.D. Iowa 1997), nor in *Keesling v. Western Fire Ins. Co. of Fort Scott, Kan.*, 10 Wash.App. 841, 520 P.2d 622 (Wash.App. 1974), did the Courts' holdings **turn on** some prior mention of appraisal, as opposed to a due demand. Moreover, plaintiffs do not dispute the import of *Society of St. Vincent De Paul in Archdiocese of Detroit v. Mt. Hawley Ins. Co.*, 49 F.Supp.2d 1011, (E.D.Mich. 1999), *School Dist. No. 1 of Silver Bow County v. Globe & Republic Ins. Co. of America*, 146 Mont. 208, 215-216, 404 P.2d 889, 893-894 (1965), *Hanby v. Maryland Cas. Co.*, 265 A.2d 28 (Del. 1970), or *Monroe Guar. Ins. Co. v. Backstage, Inc.*, 537 N.E.2d 528 (Ind.App. 3 Dist. 1989).

---

[11] Br. at 17.

In *Lynch v. American Family Mut. Ins. Co.*, 163 Wis.2d 1003, 473 N.W.2d 515 (1991), the insurer's final offer had been made, and had been rejected by the insured, for six months before suit was commenced, during which time the appraisal provision was not invoked by the insurer. Here, no rejection of the offer has been demonstrated by competent evidence. And even if the rejection occurred, it was only a matter of weeks before appraisal was demanded. Plaintiffs' reliance on *Hodges v. Pennsyvania Millers Mut. Ins. Co.*, 449 Pa.Super. 341, 673 A.2d 973 (1996) is even more misplaced. There, the defendant insurer did not demand appraisal until 23 months after the parties deadlocked on the issue of damages, 11 months after suit was filed, 2 months after an arbitration award in the insured's favor, and after a firm trial date had already been scheduled. Here, plaintiffs claim they rejected the insurers' offer sometime in the same month it was made, April 2007[12], the same month they precipitously commenced suit. Thus, the passage of time that the *Lynch* and *Hodges* Courts found to be dispositive is simply not present here.

Finally, it must be noted that, notwithstanding the parties' disagreement over whether the offer of defendants was rejected during April 2007, the month it was made, and before the Complaint was filed (and setting aside the suspicious dearth of detail and lack of any statement made upon personal knowledge of the alleged rejection), such disagreement does not present any triable issue of fact because however many days elapsed before suit was commenced are certainly *de minimis* in light of the case law.

---

[12] Although, as noted in the Antin Decl. at ¶ 20, no such rejection was ever received by defendants.

Therefore it is respectfully submitted that there has been no such waiver here, where the insured's commencement of suit was the first indication to the insurer that good faith negotiations had concluded, and no prejudice has been or can be shown.

**Conclusion**

Accordingly, defendants respectfully submit that all damages issues are required, by virtue of defendants' demand, to be resolved by appraisal under the terms and conditions of the policy, with any issues of the interpretation of or application of said determination, and any coverage issues, to be resolved thereafter in this plenary action.

Dated: New York, New York
August 2, 2007

Respectfully submitted,
Gennet, Kallmann, Antin & Robinson, P.C.

By: _____
Mark L. Antin (MA0427)
Michael S. Leavy (ML6150)