UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMEREX GROUP, INC. and
AMEREX USA INC.,

                      Plaintiffs,

     - against -

LEXINGTON INSURANCE COMPANY AND
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

                      Defendants.

CIVIL ACTION NO.
07 CV 3259 (HB)

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION SEEKING PARTIAL SUMMARY
JUDGMENT COMPELLING APPRAISAL AND IN SUPPORT
OF PLAINTIFFS' CROSS-MOTION SEEKING PARTIAL
SUMMARY JUDGMENT STRIKING DEFENDANTS
SECOND AFFIRMATIVE DEFENSE

*Weg and Myers, P.C.*

ATTORNEYS FOR   Plaintiffs

FEDERAL PLAZA
52 DUANE STREET, NEW YORK, NEW YORK 10007
(212) 227-4210

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ...............................................................................................2

POINT I

    COVERAGE ISSUES EXIST FOR WHICH APPRAISAL
    IS NOT A REMEDY..............................................................................2

        A. Spoliation of Evidence..............................................................3

        B. Defendants allegation that the Loss was
           a Result of Alternate Causes......................................................4

        C. Period of Restoration Issue........................................................5

POINT II

    LEXINGTON AND WESTCHESTER HAS WAIVED THEIR
    RIGHTS TO THE APPRAISAL PROVISIONS OF THE POLICIES .....8

CONCLUSION...........................................................................................10

## PRELIMINARY STATEMENT

Plaintiffs AMEREX GROUP, INC., and AMEREX USA, INC., ("Plaintiffs" or "AMEREX") submit this reply brief in further support of Plaintiffs' cross-motion striking defendants LEXINGTON INSURANCE COMPANY ("LEXINGTON") and WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("WESTCHESTER") (collectively "Defendants") Second Affirmative Defense demanding appraisal.

Assuming that there is an appraisal provision continued in both policies by explicit statements or by implication, Defendants have done very little, except by way of a footnote to address the choice of law issue which could very well affect the outcome of this motion. Accordingly, there is basis to conclude that New York law would not apply to this action.

Notwithstanding that Defendants concede that coverage issues exist, they still seek to demand an appraisal and reserve the coverage issues for a plenary action, overlooking well-settled case law in New York that dictates that if an insurer denies coverage-- which Defendant has indisputably done here—then "appraisal" is an inappropriate remedy. Furthermore, in their papers, Defendants accept that "[i]ndeed, it is submitted that only where some coverage dispute is inextricably intertwined with the amount of damages that appraisal ought not to occur before judicial resolution." See Defendants' Reply Brief at p. 5. Defendants go on to allege, that at bar, valuation and coverage determination are separate and do not implicate one another. However, the position taken by the Defendants during mediation belie their claim that the calculation of damages is separate and apart from coverage issues.

Consequently, appraisal would be an inappropriate remedy in this case, as the underlying dispute between the parties is not one solely concerning the amount of loss, but also involves a dispute as to coverage which is intertwined with the amount of damages.

Defendants also skirt around the consequence of waiver, in connection with its appraisal demand by suggesting that the path that it chose to pursue dictated against demanding an appraisal until an actual impasse was recognized. However, as reflected in the case law cited by Plaintiffs, the failure to demand appraisal cannot be vitiated by the silent subjective intent of one of the parties. Rather, absent any evidence by the carrier that manifested at least its contemplation of utilizing the appraisal subsequent to the filing of the instant complaint is disingenuous at best and too late in the game to be effectual without prejudicing the insureds.

Finally, in Defendants' footnote number 1, it complains that Plaintiffs "cross-motion" seeks the mirror image of the relief requested in the defendants' motion" and that therefore it should not be entitled to a reply. Defendants, however, fails to acknowledge the fact that it consented to the Motion/Cross-Motion format and subsequent briefing schedule when they executed a letter agreement which has since been endorsed by this Court. A copy of the letter is annexed to the D'Antonio Decl. at Exhibit "A". Moreover, if Defendants had objected to this format, then Plaintiffs would have insisted on both parties filing their initial motions and their replies jointly. However, since Defendants agreed to the previously mentioned arrangement this alternative method became moot. Consequently, Defendants are estopped from now challenging Plaintiffs' right to submit reply papers.

## ARGUMENT

### I.

### COVERAGE ISSUES EXIST FOR WHICH APPRAISAL IS NOT A REMEDY

LEXINGTON and WESTCHESTER, in their opposition papers, claim that although there exist coverage issues, the damages should be resolved by appraisal and the coverage issues should be reserved for this plenary action. See Defendants' Reply Brief at p.'s 4-5. Furthermore,

Defendants, in their opposition papers, have accepted that "[i]ndeed, it is submitted that only where some coverage dispute is inextricably intertwined with the amount of damages that appraisal ought not occur before judicial resolution." Defendants' Reply Brief at p. 5. Yet Defendants fail to recognize that the coverage issues in this matter are intertwined in the calculation of damages and consequently the resolution these coverage issues will materially dictate how the claim is calculated and the amount of Plaintiffs' claim. Dennis D'Antonio, in his Declaration, based upon his interaction with Defendants' counsel prior to, during, and after the failed mediation, identifies these issues as: (a) regarding whether the Plaintiffs could substantiate every segment of their claim, absent the documents that the Defendants claim was spoliated, (b) whether business income lost was a direct and sole result of the rack collapse or was caused in part by the 9/11/01 terrorist attack, alleged bankruptcies by major customers and/or overall economic and specific market declines; and (c) the proper period of restoration to be utilized in calculating the business interruption claim.   Dennis D'Antonio Declaration (D'Antonio Decl. at ¶¶'s 10-15.

A.

Spoliation of Evidence

After Plaintiffs submitted a claim to Defendants, they produced all documents requested by Defendant that was within their possession, custody and/or control. Dennis D'Antonio Decl. at ¶ 11. The Defendants subsequently requested documents that had not been produced. Plaintiffs explained to Defendants that they produced all available documents and the documents that were not produced were unavailable, due to the Plaintiffs transition of their computer systems. Id. Accordingly, Plaintiffs were unable to reproduce open order reports by division, which defendants claim would have shown open orders at the time of the rack collapse

3

versus open orders in the prior year at the same time, monthly backlog reports, records of lost reorders, monthly breakdown of claim, specific information regarding markdowns, late shipment reports as they relate to the claim, cancelled order reports as it relates to the claim and pre and post event on time shipping reports. D'Antonio Decl. at ¶ 11.

In discussions during mediation and prior thereto, Defendants contended the issue that due to spoliation of documents, Plaintiffs cannot substantiate the direct causal link between the loss and any claimed reduction in sales or increase in off-price sales or discounts without the documentation that they now claim cannot now be produced. D'Antonio Decl. at ¶¶'s 11-12. Plaintiffs have rejected that rejected and rely upon historical trends which establish a causal link between any claimed reduction in sales or increase in off-price sales of discounts to calculate the segment of damages that relates to off-price sales. Since Defendants maintain that the Plaintiffs failure to produce these said documents impacted their calculations and that the unavailability of these documents prevent Defendants from establishing a causal link between the rack collapse and the increase off-price sales, the damages are intertwined with spoliation dispute and appraisal is not an appropriate remedy. Kawa v. Nationwide Mutual Fire Insurance Co., 174 Misc.2d 407, 664 N.Y.S.2d 430 (1997).

B.

Defendants allegation that the Loss was a Result of Alternate Causes

Defendants further contend that the Plaintiffs loss was a result of alternate causes, such as, the 9/11 terrorist attack, bankruptcies by major customers, overall economic and market declines within Plaintiffs. D'Antonio Decl. at ¶ 14. There is no question that this determination as to the proximate cause of the loss directly impacts upon coverage and subsequently damages, given policy exclusions for "loss of market". See Antin Decl. at Ex. "1" at COP-100 p. 12 of

4

21, exclusion "j".[1] Defendants, in their own papers, admit that the issue of alternate causation could very well determine the amount of the loss. It states that "[C]omplex accounting analysis is required to project the income loss. This projection is made even more complicated by a number of factors, including a then-ongoing national and regional decline in sales of the type of garments sold by [P]laintiffs, and the impact of the events of September 11, 2001 on retail sales." Antin Reply Decl. at ¶ 8. This claim goes directly to the issue of whether all the loss claimed by the Plaintiffs is covered under the Policy. Thus, appraisal is inappropriate. Kawa v. Nationwide Mutual Fire Insurance Co., supra.

C.

Period of Restoration Issue

Defendants have indicated that the period of restoration claimed by the Plaintiffs is questionable. Thus, there is dispute as to whether there is a basis to include all of the loss incurred based upon the appropriate restoration period to be utilized. D'Antonio Decl. at ¶ 15. This is clearly a coverage issue as explicitly recognized by the Court in Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co., 279 F.Supp.2d 235 (S.D.N.Y. 2003).

In Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co., supra, there was a dispute between the parties as to the correct way to measure the "restoration period". After the Court, within the same opinion, declined the restoration period to be utilized, the Court then held that an appraiser could calculate that "time period" into actual days and months. Id. at 241-242.

At bar, Defendants during the course of the mediation have put the "restoration period" into question. D'Antonio Decl. at ¶ 15. Consequently, because there are issues as to the theoretical cut-off point Plaintiffs are entitled to extend their business interruption claim for, this is an issue that must initially be resolved by the Court.

---

[1] The excess policies issued by Defendants follow the format of the primary policy issued by Fireman's Fund.

In its opposition, Defendants aver that <u>Buchholz v. United States Fire Ins. Co.</u>, 293 N.Y. 82, 85-86, 56 N.E.2d 43 (1944) is not distinguishable from the instant case. Defendant based its contention on the fact that Court of Appeals held that "the defendant insurer was justified in insisting that the value of the property be fixed by the appraisers prior to litigation of the issues" <u>Buchholz</u>, <u>supra</u>, 293 N.Y. at 82, however, <u>Bucholz</u>, did not discuss what the issues were which remained to be litigated. Defendants claim that "it cannot be truthfully said that "Bucholz raised no coverage issues", see, Defendants Reply Brief at p. 5. In, <u>Buchholz</u>, unlike, the instant matter, after the loss the parties entered into a written agreement for appraisal and the appointment of appraisers. Furthermore, the Court in <u>Buchholz</u>, <u>supra</u>, dealt with the issue of whether there existed a dispute as to whether the loss inventory being claimed was sold at the time of the loss delivered and whether the amount of the loss should be calculated based upon a selling price. <u>Bucholz</u>, 293 N.Y. at 82. Accordingly, as distinguished from the case at bar, <u>Buchholz</u> raised no coverage issues.

Defendants also rely on <u>Matter of Delmar Box Co</u>. (Aetna Ins. Co.), 309 N.Y.2d 60, 127 N.E.2d 808 (1955). In <u>Matter of Delmar Box Co.</u>, <u>supra</u>, the insured initiated an action to compel appraisal under the policy. <u>Id</u>. at 63. Contrary to Defendants contention, <u>Matter of Delmar Box Co.</u>, <u>supra</u>, is not "all in accord with [D]efendants' position". In that case, the insured sought to compel appraisal after the insurer refused to consent to an appraisal. The insurer, in opposition to the insured's petition for appraisal, raised coverage issues of misrepresentation, concealment of material facts, false swearing and that the insured had no insurable interest in the building. <u>Id</u>. at 63. The Appellate Division reversed the court at Special Term which ordered that the parties proceed to arbitration and appraisal of a fire loss under fire insurance polices and dismissed the petition for appraisal based upon the ground that "that the

provisions for appraisal 'do not constitute enforcible agreements to arbitrate controversies arising thereunder'". Id. In fact, this case is in accord with the Plaintiffs position and not the Defendants position. Here, as in Matter of Delmar Box Co., supra, coverage issues exist and as such appraisal should is unwarranted as it is not intended to resolve coverage issues, such as, spoliation, failure to cooperate, alternate causes of loss, and loss of market exclusion.

Defendants attack upon Plaintiffs for their discussion of two cases cited by Defendants in its Brief, Clark v. Kraftco Corp., 323 F. Supp. 359, 361 (S.D.N.Y. 1971) and Matter of Penn. Central Corp., 56 N.Y.2d 120, 451 N.Y.S.2d 62 (1982). Clark v. Kraftco Corp. supra, did not address the issue of whether a matter should proceed to appraisal. It dealt with whether the Court could review an appraisal award for reasonableness and vitiated the appraisal award. Id. at 363. Matter of Penn. Central Corp., Likewise, in Matter of Penn. Central Corp., supra, the dispute between the parties related to the valuation of their rights in the property at issue which is not the issue here. Matter of Penn. Central Corp., supra, 26 N.Y.2d 120 at 121. Plaintiffs do not dispute Defendants citation to the language in Clark that "the agreement for appraisal extends merely to the resolution of the issues of actual cash value and the amount of the loss, all other issues reserved for a plenary action." Clark v. Kraftco Corp., 323 F. Supp. at 361. Plaintiffs further agree with Defendants citation of the language in Matter of Penn. Central Corp., supra, that "appraisal resolves only a valuation question leaving all other issues for resolution at a plenary trial". Matter of Penn. Central Corp., supra, 56 N.Y.2d at N.Y.2d at 127, 451 N.Y.S.2d at 66. Here, the issues of spoliation, alternate causation/proximate cause, loss of market, as well as the period of restoration are intertwined in determining, if not dictating, the amount of the damages owed to Plaintiffs. As such, appraisal is unwarranted[2].

---

[2] While Plaintiffs have cited cases outside of New York which appear to allow for appraisal, notwithstanding issues of coverage, these cases do not address the "inextricably intertwined" scenario herein. Moreover, given

7

## III.

## LEXINGTON and WESTCHESTER HAS WAIVED THEIR RIGHTS TO THE APPRAISAL PROVISIONS OF THE POLICIES

In their Reply Brief Defendants make the naked assertion that "it is [P]laintiffs who have consumed nearly five years of those [six] years, and the sixth year was devoted to lengthy settlement negotiations and mediation". See, Defendants Reply Brief at p. 13. However, Defendants readily admit that it took 15 months for them to complete all of the Examinations Under Oaths that they demanded. See, Reply Brief at p. 14. Defendants further concede that they engaged in a lengthy investigation of the claim because of the complexity and the amount of the claim. Id. However, all of this really begs the question because at the end of the day there remains one undisputed fact -- at no time prior to the commencement of the instant action was appraisal even discussed, let alone demanded.

Defendants rely upon SR International Business Insurance Co. v. World Trade Center Properties, LLC, 2002 WL 1905968 (S.D.N.Y. 2002) for the proposition that the defendant did not waive its right to an appraisal. That case, however, is easily distinguishable from the instant action. As discussed in Plaintiffs' initial Brief, the Court in SR International Business Insurance Co., found that the parties had spent a substantial amount of time between the filing of the pleadings and motions attempting to negotiate an agreement as to an appraisal process with the various insurers and the insured. In this case, Defendants, although engaged in a lengthy investigation and subsequent negotiations, failed to raise the possibility of appraisal or demand an appraisal at any time prior to litigation.

---

Defendant's concession that "Indeed, it is submitted that only where some coverage dispute is inextricably intertwined with the amount of damages that appraisal ought not to occur before judicial resolution of coverage issues". Respondent's brief at p. 5, the holding of Court's in other jurisdictions has been rendered moot.

8

Contrary to Defendants contention, Saterson v. Planet Ins. Co. 1994 WL 689084 (S.D.N.Y. 1994) is "factually inapposite". Here, the parties not only disagreed on whether the offer was rejected, but also about whether there was any settlement dialogue at the time of the filing of action. D'antonio Decl. at ¶¶'s 16-18. Thus, as in Saterson, supra, the question of waiver should be for the trier of fact to determine.

Furthermore, while Defendants cite cases outside of this jurisdiction, McCord v. Horace Mann Inc. Co., 390 F.3d 138, 143-144 (1st Cir. 2004) (Massachusetts law), Terra Industries, Inc., v. Commonwealth Ins. Co. of America, 981 F. Supp. 581 (N.D. Iowa 1997), School Dist. No. 1 of Silver Bow County v. Globe & Republic Ins. Co. of America, 146 Mont. 208, 215-216, 404 P.2d 889, 893-894 (1965), Hanby v. Maryland Cas. Co., 265 A.2d 28 (Del. 1970), Keesling v. Western Fire Ins. Co. of Fort Scott, Kan., 10 Wash. App. 841, 520 P.2d 622 (Wash. App. 1974) and Monroe Guar. Ins. Co. v. Backstage, Inc., 537 N.E.2d 528 (Ind. App. 3 Dist. 1989) for the proposition that "appraisal cannot be waived", there are numerous cases from outside the jurisdiction, that, while holding against waiver in a particular scenario, acknowledge that appraisal *can be* waived if not demanded in a timely fashion. Lynch v. American Family Mut. Ins. Co., 163 Wis.2d 1003, 473 N.W.2d 515 (App. 1991) (Wisconsin law). Hodges v. Pennsylvania Millers Mut. Ins. Co., 449 Pa. Super 341, 673 A.2d 973 (Sup. Ct. 1996). Furthermore, Defendants continue to mischaracterize McCord v. Horace Mann Inc. Co., supra. In that case, the insurer had addressed the issue of appraisal in its correspondence to the insured and "mentioned the reference [synonymous to appraisal] condition several times, and specifically reserved its rights as to a dispute about the amount of the loss. Id. at 144. This was not done in the instant matter. Here, Defendants sent several letters to the Plaintiffs, including a denial letter, had several discussions with the Plaintiffs about resolving the matter and even

mediation, yet Defendants at no time mentioned "appraisal". D'Antonio Decl. at ¶¶'s 7 and 17-18. Thus, Defendants have now waived their ability to assert their appraisal right now.

## CONCLUSION

For the reasons set forth above, AMEREX, respectfully requests that (a) the Court grant AMEREX's Cross-Motion for partial summary judgment striking Defendants' Second Affirmative Defense, (b) deny Defendants' Motion seeking partial summary judgment compelling appraisal and (c) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
      August 10, 2007

                                        WEG and MYERS, P.C.
                                        Attorneys for Plaintiffs
                                        Federal Plaza
                                        52 Duane Street
                                        New York, New York 10007

                                        BY: _____
                                        DENNIS D'ANTONIO (DDA 0973)
                                        JANESE N. THOMPSON (JT 7714)