USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-28-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

AMEREX GROUP, INC,
AMEREX USA INC.
         Plaintiffs,

    - against -

LEXINGTON INSURANCE COMPANY AND
WESTCHESTER SURPLUS LINES INSURANCE
COMPANY,

         Defendants.

------------------------------------------------------------------x

07 Civ. 3259 (HB)

OPINION &
ORDER

**Hon. Harold Baer, Jr., U.S.D.J.:**

    The story behind this case began on August 3, 2001, when a rack system collapsed in the New Jersey warehouse of a clothing importer, causing serious damage to the storage facility and the merchandise inside. The clothing importer is comprised of two related entities, Amerex Group, Inc. and Amerex USA Inc. (together, "Amerex"), who commenced this action in 2007 to recover damages from their excess insurers, Defendants Lexington Insurance Company ("Lexington") and Westchester Surplus Lines Insurance Company ("Westchester"). Before the Court is Defendants' Motion for Partial Summary Judgment to Confirm the Appraisal Award. For the reasons that follow, Defendants' motion is granted.

### I. Procedural History

    Plaintiffs commenced this breach of contract case on April 23, 2007, seeking $6,312,000 from Defendants. On July 9, 2007, Defendants moved for partial summary judgment to enforce the appraisal clause of the insurance policy that governs the relationship between the parties in this action. By Order dated September 20, 2007, I

granted Defendants' motion to enforce the appraisal clauses in the insurance policies at issue.[1] Plaintiffs and Defendants each selected an appraiser to represent them in the appraisal proceedings, but could not agree upon the selection of an umpire. In accordance with the terms set forth in the insurance policies, and in consultation with the parties, I appointed Michael Hess as umpire of the appraisal panel, and directed the appraisers and umpire to arrange for swift resolution of this appraisal. *See* Order of Oct. 10, 2007 (Docket No. 28).

As it turns out, the appraisal process was hardly expeditious – in fact, the lengthy nature of the proceedings is the key reason why Plaintiffs believe that the appraisal process was unfair and the appraisal award should not be confirmed. On June 30, 2010, nearly three years after the appraisal process began, the Court received the Appraisal Report from Mr. Hess, the umpire. The appraiser for Defendants, Peter Fogarty, stated in the report that he agreed with the umpire's conclusions. The appraiser for Plaintiffs, Edwin Hochberg, abstained from stating his agreement or disagreement with the final decision of the umpire. Defendants subsequently moved for Partial Summary Judgment to Confirm the Appraisal Award. The motion was fully briefed on August 17, 2010.

## II. Factual Background

Amerex is a clothing distributor specializing in outerwear, and sells in the U.S. market garments manufactured in Asia and Europe. In August 2001, Amerex received shipments of merchandise in response to orders that had been placed by U.S. customers. When the merchandise arrived at Amerex's warehouse in Avenel, New Jersey, it was organized by style, color and size, and placed in Amerex's rack system to await shipment. On August 3, 2001, a significant portion of Amerex's rack system collapsed. The collapse activated the warehouse sprinkler system, which caused the flooding of the

---

[1] When Plaintiffs filed their brief in opposition to Defendants' motion to compel appraisal, they also filed a cross-motion to strike Defendants' second affirmative defense, which reads, "Defendants have duly demanded appraisal proceedings to determine the amount of loss, which would resolve all issues in controversy, and bar this suit." Answer ¶ 57 (Docket No. 7). When I granted Defendants' motion to compel appraisal, I also denied Plaintiff's cross-motion to strike.

warehouse, and also led to an electrical outage that rendered Amerex's computer systems inoperable. *See* Pl. Opp. Br. 2-3; Mallin Decl., Ex. B. The merchandise awaiting shipment was ruined, and Amerex fell behind on orders because of its downed computer systems and unuseable warehouse.

At the time of the collapse, Amerex was covered by an insurance policy from Firemen's Fund Insurance Company, which provided primary coverage of up to $2,500,000 for the warehouse building, the personal property of the business, business income, and extra expense losses. 56.1 Stmt. ¶ 1. To protect against losses that exceeded the $2.5 million in primary coverage, Amerex purchased excess insurance policies from Defendants Lexington and Westchester, each of which had a liability limit of $5,000,000, for a total excess insurance layer of $10,000,000 in coverage. *Id.* ¶ 3. After the collapse, Amerex submitted a proof of loss to Firemen's Fund for property damage, business income loss, and extra expenses in the amount of $8,812,000. Pl. Opp. Br. 3. Firemen's Fund paid the $2,500,000 limit of its policy, at which point Amerex sought reimbursement from its excess insurers, the Defendants, which led to the instant action and my eventual order that the parties proceed with appraisal. 56.1 Stmt. ¶¶ 2-8.

The parties agree that the appraisal award was to state Amerex's gross loss, without taking into account the $2,500,000 payment made by Firemen's Fund. *Id.* at ¶ 12. The Agreement to Appraise, which governed the appraisal proceedings, dictated that the Appraisal Panel, led by the umpire, would determine the gross amount of Amerex's claim, and that this Court would then determine the net claim, if any, payable under the excess policies issued by Defendants. *Id.* at ¶ 13; Agreement to Appraise at ¶ 12, Leavy Decl. Ex. 10. The Appraisal Award states that Amerex's loss of income was $389,137, while the amount of extra expenses was $848,661.68, for a total of $1,237,798.[2] 56.1

---

[2] The Appraisal Award provided a total in boldface type of $1,287,798.68, a figure which included the agreed-upon $50,000 appraisal fee. As I am concerned for the purposes of this motion with the Appraisal Panel's determination of the amount of Amerex's losses in income and extra expenses, I have excluded the $50,000 fee here. *See* Def's 56.1 Stmt. ¶ 15-16. Plaintiffs do not address whether

3

Stmt. ¶ 13. Thus, the losses calculated by the Appraisal Panel amount to significantly less than the $2.5 million that Amerex has already received from Firemen's Fund, the primary insurer. Accordingly, the effect of the appraisal on this litigation is that Plaintiffs are not entitled to any award of damages for loss of income or extra expenses.

### III. Discussion

Pursuant to Fed. R. Civ. P. 56(c), a district court must grant summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986). On this motion for summary judgment, the material dispute involves not the facts of the case, but rather, the law surrounding the approval of appraisal awards.[3] The critical question is whether the lengthy and contentious appraisal proceedings conducted in this case so exceeded the purview of the appraisal panel that I should refuse to confirm the panel's decision.

"New York courts have long recognized the role of appraisals in resolving disputes between an insurer and insured where the disagreement is [only] over the value or the amount of the loss." *Indian Chef, Inc. v. Fire and Cas. Ins. Co. of Connecticut*, 2003 WL 329054 at *2 (S.D.N.Y. Feb. 13, 2003). Appraisal is a "comprehensive proceeding" which has the purpose of determining the losses at issue. *S.R. Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Prop., LLC*, 2004 WL 2979790 at *1 (S.D.N.Y. Dec. 1, 2004). Indeed, the appraisal panel here evaluated only the amount of loss of income suffered by Amerex, and the amount of extra expenses that it incurred. The appraisers did not evaluate, for example, the "scope of coverage provided by [the] insurance policy, a purely legal issue that cannot be determined by an appraisal." *Duane Reade, Inc. v. St. Paul Fire and*

---

the $50,000 should be evaluated separately from the balance of the award, but either way, the total awarded by the appraisers is far less than the $2.5 million that Plaintiffs received from their primary insurers.

[3] Subject-matter jurisdiction over this dispute exists pursuant to the diversity statute, 28 U.S.C. § 1332. Therefore, I apply New York law, which the parties appear to agree governs this dispute. *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009).

4

*Marine Ins. Co.*, 503 F.Supp.2d 699, 704 (S.D.N.Y. 2007). Nor did they address liability of any party, another topic that is outside the ambit of an appraisal. *Indian Chef* at *3.

Despite the fact that the appraisal panel answered *only* the question of valuation, Plaintiffs contend that the appraisal "morphed into an arbitration," because it involved the submission of thousands of pages of documentary proofs, the taking of three days of testimony of seven witnesses, 718 pages of transcript, and the submission of several rounds of legal briefs. The parties do not dispute the facts of the appraisal proceeding. In fact, Plaintiff's description of the proceeding, intended to bolster Plaintiff's argument that the proceeding was inappropriate, borrows a quote from the Defendants' argument that the appraisal was conducted with great care and attention, and should therefore be confirmed. *Compare* Pl. Opp. Br. 1 *with* Def. Mem. Law 3. Plaintiffs are simply mistaken that the appraisal process was improper. By limiting the inquiry—however complex—to the "factual disputes over the amount of loss," the appraisal panel remained within the scope of its assignment. *Duane Reade*, 503 F.Supp. at 704.

Furthermore, even if the appraisal proceeding here bore some resemblance to an arbitration, the mechanism to confirm the award would be the same. "Section 7601 of the New York Civil Practice Law and Rules provides in substance that appraisal agreements are to be enforced by the same methods as arbitration agreements." *Questrom v. Federated Department Stores*, 41 F.Supp.2d 294, 302 (S.D.N.Y. 1999); *see* N.Y. C.P.L.R. § 7601 (McKinney 2010). Both state and federal courts have held that judicial review of an appraisal award is limited, "except where one of the grounds in C.P.L.R. § 7511 is met." *Questrom*, 41 F.Supp.2d. at 302; *see also Penn Central Corp. v. Consol. Rail Corp.*, 56 N.Y.2d 120, 128-30.

Amerex does not even cite section 7511, and does not adduce any evidence in opposition to summary judgment to show that the appraisal here was affected by corruption, fraud, the impartiality of an appraiser, the lack of a final and definite award,

5

or any other ground upon which a court could rely, pursuant to section 7511, to decline to confirm an appraisal award. *See* N.Y. C.P.L.R. § 7511 (McKinney 2010).

### IV. Conclusion

Accordingly, Defendants' Motion to Confirm the Appraisal Award is hereby GRANTED. The amount of Amerex's losses and expenses is significantly less than the amount of the insurance payment already received by Amerex; therefore, there is no further relief for Plaintiff to seek, and the case must be closed. The Clerk of Court is instructed to remove this matter from my docket.

**SO ORDERED.**

**New York, New York
September 27, 2010**

                                            **Hon. Harold Baer, Jr.
U.S.D.J.**